## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ETE ADOTE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PLUG POWER INC., ANDREW MARSH, and PAUL B. MIDDLETON,<br><br>Defendants. | Case No. 1:24-cv-00406 (MAD/DJS) |
| DONGHO LEE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PLUG POWER INC., ANDREW MARSH, and PAUL B. MIDDLETON,<br><br>Defendants. | Case No. 1:24-cv-00598 (MAD/DJS) |

**LIBREX GROUP SAL'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ............................................................................................................................. 7

I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..................... 7

II.   LIBREX IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE
      CLASS ............................................................................................................................. 8

      A.   The PSLRA Standard For Appointing Lead Plaintiff ............................................. 8

      B.   Under the PSLRA, Librex Should be Appointed Lead Plaintiff ............................. 9

           1.   Librex Filed a Timely Motion .......................................................................... 9

           2.   Librex Has the Largest Financial Interest in the Relief Sought by the
                Class ................................................................................................................ 10

           3.   Librex Meets Rule 23's Typicality and Adequacy Requirements ............ 11

III.  LIBREX'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL
      SHOULD BE APPROVED ............................................................................................ 13

CONCLUSION ....................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Baughman v. Pall Corp.*,
    250 F.R.D. 121 (E.D.N.Y. 2008) ...................................................................................9, 10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................7, 11, 13

*Ferreria v. Funko, Inc.*,
    No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328 (C.D. Cal. June 11, 2020).......................2

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................................8

*In re Fuwei Films Sec. Litig.*,
    247 F.R.D. 432 (S.D.N.Y. 2008) ...............................................................................9, 10, 11

*In re GE Sec. Litig.*,
    No. 09 Civ. 1951(DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ....................7, 10, 11, 12

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.N.Y. 2012) ................................................................................................2

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ............................................................................................7, 8

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
    No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011).........................12

*Levine v. AtriCure, Inc.*,
    508 F. Supp. 2d 268 (S.D.N.Y. 2007)........................................................................................9

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993)........................................................................................................7

*In re Millennial Media, Inc. Sec. Litig.*,
    87 F. Supp. 3d 563 (S.D.N.Y. 2015)........................................................................................10

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) .........................................................................................10

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
    275 F.R.D. 187 (S.D.N.Y. 2011) ..............................................................................................12

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
    No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331 (E.D.N.Y. Sept. 29, 2010).......................11

*Quan v. Advanced Battery Techs., Inc.*,
No. 11 Civ. 2279(CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ....................................12

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014)......................................................................................13

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015)................................................................................10, 11

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ........................................................................................7, 9

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ...............................................................................................15

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4).........................................................................................................12

Fed. R. Civ. P. 42(a) ..........................................................................................................2, 7

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel,
Law360 (July 16, 2020) ........................................................................................................16

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation,
Bloomberg Law (July 30, 2020) ...........................................................................................16

Librex Group SAL ("Librex") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of its motion for the entry of an order: (1) consolidating the above-captioned, related actions ("Actions");[1] (2) appointing Librex as Lead Plaintiff; and (3) approving Librex's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[2]

**PRELIMINARY STATEMENT**

The Actions presently pending before this Court are brought on behalf of all persons and entities other than Defendants that purchased or otherwise acquired Plug Power Inc. ("Plug" or the "Company," together with Andrew Marsh and Paul B. Middleton, the "Defendants") securities between March 1, 2023 and January 16, 2024, inclusive (the "Class Period"), which seeks to recover damages caused by Defendants' violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.[3]

---

[1] The following two Actions are pending before this Court: (1) *Adote v. Plug Power Inc., et al.*, No. 1:24-cv-00406 (MAD/DJS) ("*Adote*"), which was filed on March 22, 2024; and (2) *Lee v. Plug Power Inc., et al.*, No. 1:24-cv-00598 (MAD/DJS) ("*Lee*"), which was filed on April 30, 2024. The *Adote* Action is brought on behalf of "all persons and entities other than Defendants that purchased or otherwise acquired Plug securities between May 9, 2023 and January 16, 2024, both dates inclusive . . . seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the [Exchange Act] and Rule 10b-5 promulgated thereunder . . . ." *Adote*, Class Action Complaint ¶ 1, ECF No. 1 ("*Adote* Complaint"). The *Lee* Action is brought on behalf of "all persons and entities other than Defendants that purchased or otherwise acquired Plug securities between March 1, 2023 and January 16, 2024, both dates inclusive . . . seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the [Exchange Act] and Rule 10b-5 promulgated thereunder . . . ." *Lee*, Class Action Complaint ¶ 1, ECF No. 1 ("*Lee* Complaint").

[2] Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. filed herewith.

[3] For the purposes of "determining a lead plaintiff . . . the longer, most inclusive class

1

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the Court may consolidate the actions before it that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2). The Actions may be consolidated as they allege violations of §§ 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder. The Actions also allege claims involving substantially similar facts. As the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

With losses of $27,300.09, Librex, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. Librex also satisfies Rule 23's typicality and adequacy requirements. Librex's claims are typical of the Class's claims because it suffered losses on its Plug investment as a result of Defendants' false and misleading statements. Further, Librex has no conflict with the Class and will adequately protect the Class's interests given its

---

period . . . is proper[.]" *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see Ferreria v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *2 n. 2. (C.D. Cal. June 11, 2020) (quoting *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis. 2009) (finding the "use [of] the most inclusive class period" proper for the purpose of a lead plaintiff motion). Accordingly, the class period in the *Lee* Complaint governs the appointment of a Lead Plaintiff for determining which movant possesses the largest financial interest.

significant stake in the litigation and its conduct to date in prosecuting the litigation, including its submission of the requisite certification and selection of experienced class counsel. Accordingly, Librex is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Librex is entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Librex has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Librex's motion should be granted in its entirety.

## FACTUAL BACKGROUND[4]

Plug is a Delaware corporation with principal executive offices located at 968 Albany Shaker Road, Latham, New York 12110. ¶ 23. The Company's common stock trades in an efficient market on the Nasdaq Capital Market under the ticker symbol "PLUG". *Id.*

Plug provides hydrogen fuel cell turnkey solutions for the electric mobility and stationary power markets in North America and Europe, focusing on proton exchange membrane fuel cell and fuel processing technologies, fuel cell-battery hybrid technologies, and related hydrogen storage and dispensing infrastructure. ¶ 2. Plug offers its products to retail-distribution and manufacturing businesses through a direct product sales force, original equipment manufacturers, and dealer networks. *Id.*

---

[4]    Unless otherwise noted, references to "¶ __" are to paragraphs in the *Lee* Complaint.  The *Adote* Complaint contains substantially similar information.

Integral to Plug's business are the green hydrogen production plants that the Company operates in multiple locations throughout the U.S. and Europe. ¶ 3. These plants are at various stages of development, from operational to under construction. *Id.* Plug's strategy to maintain growth and profitability involves expanding production capabilities at the Company's already completed green hydrogen plants while finishing construction of new plants. *Id.* The Company has struggled to execute these hydrogen plant build-out and construction efforts on budget and on time and, as a result, is frequently tasked with identifying additional sources of capital to fund its operations. *Id.*

Despite the foregoing issues, Defendants assured investors throughout the Class Period that Plug was on a clear path to long-term growth and profitability, that the build-out and construction of its green hydrogen production plants remained "on track", and that the Company had identified multiple opportunities to continue to fund its operations. ¶ 4. Relatedly, Defendants assured investors that Plug had enacted a diversification strategy to mitigate the potential negative impacts that, *inter alia*, supply chain constraints and material shortages could have or were having on the Company's business. *Id.*

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects. ¶ 5. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Plug overstated its ability and/or efforts to mitigate the negative impacts that, *inter alia*, supply chain constraints and material shortages could have or were having on the Company's hydrogen business, as well as the sufficiency of its cash and capital to fund its operations; (ii) Plug continued to experience delays related to its green hydrogen production facility build-out plans, as well as in securing external funding sources to finance its growth plans; (iii) Plug downplayed

4

the true scope and severity of all the foregoing when these issues were eventually revealed; (iv) as a result of all the foregoing, Plug also overstated the near-term prospects of its hydrogen production operations, as well as the viability of expanding those operations; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times. *Id.*

On November 9, 2023, Plug announced its third quarter 2023 results, including third quarter GAAP[5] earnings-per-share ("EPS") of -$0.47, missing consensus estimates by $0.16, and third quarter revenue of $198.71 million, missing consensus estimates by $23.02 million. ¶ 6. In discussing these results, Plug disclosed that its "2023 overall financial performance has been negatively impacted by unprecedented supply challenges in the hydrogen network in North America", including, *inter alia*, "severe hydrogen shortages", prompting multiple analyst downgrades. *Id.*

On this news, Plug's stock price fell $2.40 per share, or ***40.47%***, to close at $3.53 per share on November 10, 2023. ¶ 7.

On November 16, 2023, Citi downgraded Plug's stock from a "Buy" to a "Neutral" rating, as well as slashed its price target on the stock from $12.50 to $5.00, noting, among other things, that Plug management's "subpar execution has led the company into liquidity challenges" and, accordingly, Plug will require $500 million of cash over the next six months. ¶ 8.

On this news, Plug's stock price fell $0.17 per share, or 3.91%, to close at $4.18 per share on November 16, 2023. ¶ 9.

---

[5]     GAAP refers to generally accepted accounting principles, which are a set of accounting rules, standards, and procedures that U.S. public companies must follow when their accountants compile their financial statements. ¶ 6 n.1.

On December 6, 2023, Morgan Stanley downgraded Plug's stock from an "Equal Weight" to an "Underweight" rating, as well as slashed its price target on the stock from $3.50 to $3.00, citing liquidity concerns and worsening hydrogen economics. ¶ 10.

On this news, Plug's stock price fell $0.25 per share, or 5.9%, to close at $3.99 per share on December 6, 2023. ¶ 11.

On January 11, 2024, Susquehanna downgraded Plug's stock from a "Positive" to a "Neutral" rating, as well as cut its price target on the stock from $5.50 to $4.00, citing "delays related to both Plug's green hydrogen production facility build-out and securing external funding sources to finance its growth plans[.]" ¶ 12.

On this news, Plug's stock price fell $0.32 per share, or 7.92%, to close at $3.72 per share on January 11, 2024. ¶ 13.

On January 16, 2024, Plug announced that it would provide its annual business update on January 23, 2024. ¶ 14.

Then, on January 17, 2024, *Seeking Alpha* reported that "the market appears to have reset expectations ahead of [Plug]'s planned January 23 business update with CEO Andy Marsh and CFO Paul Middleton." ¶ 15. For example, *Seeking Alpha* noted that "Morgan Stanley analyst Andrew Percoco maintained his Underweight rating and $3 price target, anticipating downside to Plug's (PLUG) $2.1B revenue and 25% gross margin guidance for FY 2024 announced during its Q4 earnings call"; that "[t]he analyst thinks further delays at Plug's (PLUG) green hydrogen production facility in Georgia could be announced, which would add to pressure on the growth and profitability profile of the company's green hydrogen business model"; and that "Percoco also pointed to an increasing probability that Plug (PLUG) will need to raise $1B-$1.5B of equity and equity-like capital to fund its highly capital intensive business to provide itself

6

runway to improve its margin and cash flow profile, which is not fully baked into the current share price." *Id.*

On this news, Plug's stock price fell $0.30 per share, or 9.87%, to close at $2.74 per share on January 17, 2024. ¶ 16.

Through the Actions, Librex seeks to recover for itself and absent class members the substantial losses that were suffered as a result of Defendants' fraud.

## ARGUMENT

## I.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered[.]" *Id.*).

Consolidation is appropriate when the actions before the court involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact or law, and the differences do not outweigh the interest of judicial economy served by consolidation. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *see In re GE Sec. Litig.*, No. 09 Civ. 1951(DC),

7

2009 WL 2259502, at *2-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of fact and law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by the defendants. The Actions allege substantially the same wrongdoing, namely that the defendants issued materially false and misleading statements that artificially inflated the price of Plug Power securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Actions is therefore appropriate. *See Kaplan*, 240 F.R.D. at 91-92 (finding consolidation appropriate despite differing class periods where the actions are all "securities fraud claims that arise from a common course of conduct." (internal quotation marks omitted)).

## II.    LIBREX IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A.    The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of

8

adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the

person that:

> (aa) has either filed the complaint or made a motion in response to a notice
> [published by a complainant]; (bb) in the determination of the court, has the
> largest financial interest in the relief sought by the class; and (cc) otherwise
> satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77

(S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008)

(describing the PSLRA's process for determining the "most adequate plaintiff"); *In re Tronox,*

*Inc. Sec. Litig.*, 262 F.R.D. 338, 343-44 (S.D.N.Y. 2009) (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is

the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class

member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the

interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of

adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei*

*Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman*, 250 F.R.D. at 125.

**B.    Under the PSLRA, Librex Should be Appointed Lead Plaintiff**

As discussed below, Librex should be appointed Lead Plaintiff because all of the

PSLRA's procedural hurdles have been satisfied, Librex holds the largest financial interest of

any movant, and Librex otherwise satisfies Rule 23's typicality and adequacy requirements.

**1.    Librex Filed a Timely Motion**

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to

publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for

first-filed plaintiff Ete Adote published notice of the lead plaintiff deadline via *Globe Newswire*

9

on March 22, 2024. *See* Ex. A; *see also In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 567 (S.D.N.Y. 2015) (finding publication in *Globe Newswire* sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before May 21, 2024. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Librex's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Librex timely signed and submitted the requisite certification, identifying all of its relevant Plug trades during the Class Period, and detailing Librex's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met**.**

  2. **Librex Has the Largest Financial Interest in the Relief Sought by the Class**

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Fuwei*, 247 F.R.D. at 437; *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4. Courts have placed the most emphasis on the last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at

125; *In re GE*, 2009 WL 2259502, at *4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

Overall, during the Class Period, Librex purchased 14,000 net and 16,000 total Plug shares, expended $77,112.99 in net funds and suffered losses of $27,300.09 attributable to the fraud. *See* Ex. C. Librex is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.    Librex Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331, at *2 (E.D.N.Y. Sept. 29, 2010); *Fuwei*, 247 F.R.D. at 436; *see also Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Blackmoss*, 252 F.R.D. at 191 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "However, a lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Topping*, 95 F. Supp. 3d at 623; *Fuwei*, 247 F.R.D. at 436.

Librex's claims are clearly typical of the Class's claims.  Librex purchased Plug securities during the Class Period, suffered damages as a result of the Company's false and

misleading statements, and therefore can assert the Class's claims against Defendants under the federal securities laws. Because the factual and legal bases of Librex's claims are similar to those of the Class's claims, Librex necessarily satisfies the typicality requirement. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279(CM), 2011 WL 4343802, at \*3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE*, 2009 WL 2259502, at \*5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

As evidenced by the representations in its certification, *see* Ex. B, Librex's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at \*2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff);

12

*see also Blackmoss*, 252 F.R.D. at 191 (same). Contemporaneously with the filing of the instant motion, Sam Bachalani ("Bachalani"), Chairman and President of Librex has submitted a Declaration with additional information about himself and Librex and experience investing, clearly demonstrating Librex's adequacy to represent class members. Ex. D. Librex provides distribution and marketing services. *Id.* at ¶ 3. Bachalani has been investing in the stock market for approximately 20 years and manages his own investments. *Id*. at ¶ 4. The investment transactions in Plug securities that are the subject of this lawsuit were made by Librex under Bachalani's control and direction. *Id.*

Librex has also selected and retained highly competent counsel to litigate the claims on behalf of itself and the Class. As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. E. Consequently, Librex is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Librex respectfully submits that it is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## III. LIBREX'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Librex has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi

13

has extensive experience in the area of securities litigation and class actions.  The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.").

For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (where, as sole lead counsel, the firm obtained final approval of $19.5 million settlement); *Lowthorp v. Mesa Air Grp., Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Rudani v. Ideanomics, Inc.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, No. 1:19-cv-00980-JPO (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $2,083,333.33 settlement); *Sterrett v. Sonim Techs., Inc*., No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v.*

14

*Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtaining a recovery of more than $930 million for the benefit of the Company, and negotiating important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel and recovering a $5.5 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, acting as co-lead counsel, recovered $3 million for the class); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., Clifton v. Willis*, No. 1:22-cv-03161-DDD-JPO (D. Colo.) (appointed sole lead counsel for the class of NewAge, Inc. shareholders); *Lim v. Hightower*, No. 4:23-cv-01454-BYP (N.D.

15

Ohio) (appointed sole lead counsel for the class of Lordstown Motors Corp. shareholders); *Johnson v. Luminar Techs., Inc.*, No. 6:23-cv-982-PGB-LHP (M.D. Fla.) (appointed sole lead counsel for the class); *Kain v. Ampio Pharms., Inc.*, No. 22-cv-02105-WJM-MEH (D. Colo.) (appointed sole lead counsel for the class); *Murphy v. Argo Blockchain plc*, No. 1:23-cv-00572-NRM-SJB (E.D.N.Y.) (appointed sole lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class); *In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (S.D.N.Y.) (appointed sole lead counsel for the class); and *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[6] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[7] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, over 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com

---

[6]    *See* Ex. F (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business) (renewal pending).

[7]    *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

16

/our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

## CONCLUSION

For the foregoing reasons, Librex respectfully requests that the Court: (1) consolidate the above-captioned, related actions; (2) appoint it as Lead Plaintiff; (3) approve its selection of the Faruqi Firm as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated:  May 21, 2024                     Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:     /s/ James M. Wilson, Jr.
        James M. Wilson, Jr. (# 700194)

James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Librex Group SAL and [Proposed] Lead Counsel for the putative Class*

17

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed on May 21, 2024 with the Clerk of the Court using the CM/ECF system, which will effect electronic service on all parties and attorneys registered to receive notifications via the CM/ECF system.

By: */s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

18