**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ETE ADOTE, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  v.<br><br>PLUG POWER INC., ANDREW MARSH, and PAUL B. MIDDLETON,<br><br>  Defendants. | **Case No.: 1:24-cv-00406-MAD-DJS**<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS**<br><br>**CLASS ACTION** |
| DONGHO LEE, Individually and on Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>  v.<br><br>PLUG POWER INC., ANDREW MARSH, and PAUL B. MIDDLETON,<br><br>  Defendants. | **Case No. 1:24-cv-00598-MAD-DJS**<br><br>**CLASS ACTION** |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT.........................................................................................................................2

   I.    APPLICABLE STANDARD.................................................................................... 2

   II.   THE COMPETING MOVANTS ARE INADEQUATE ................................................. 3

      a.    The Martinez Group is an Improper Group; Scott Keenan's Options Trading Makes Him Inadequate and Atypical ............................................................. 3

      b.    The Bruder Group Is an Improper Group and is Otherwise Inadequate and Atypical ................................................................................................ 7

      c.    Group Members Should Not be Considered Individually ......................................... 9

   III.  THE VUONGS SHOULD BE APPOINTED LEAD PLAINTIFFS .......................... 10

   IV.  THE VUONG'S SELECTION OF COUNSEL SHOULD BE APPROVED............ 11

   V.   THE COMPETING MOTIONS SHOULD BE DENIED......................................... 11

CONCLUSION .....................................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abouzied v. Applied Optoelectronics, Inc.*,
  2018 WL 539362 (S.D. Tex. Jan. 22, 2018) ................................................................ 10

*Andrada v. Atherogenics, Inc.*,
  2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) .................................................................. 6

*Batter v. Hecla Mining Co.*,
  2020 WL 1444934 (S.D.N.Y. Mar. 25, 2020) ............................................................... 8

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) .................................................................................. 2

*Constance Sczesny Tr. v. KPMG LLP*,
  223 F.R.D. 319 (S.D.N.Y. 2004) ................................................................................ 10

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
  2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ............................................................... 6

*Eichenholtz v. Verifone Holdings, Inc.*,
  2008 WL 3925289 (N.D. Cal. 2008) .............................................................................. 8

*Elstein v. Net1 UEPS Techs., Inc.*,
  2014 WL 3687277 (S.D.N.Y. July 23, 2014) ................................................................ 4

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ........................................................................................ 2

*In re Elan Corp. Sec. Litig.*,
  2009 WL 1321167 (S.D.N.Y. May 11, 2009) ............................................................... 6

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) .................................................................................. 3

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*,
  2013 WL 6145114 (S.D.N.Y. Nov. 21, 2013) ............................................................... 6

*In re McDermott Int'l, Inc. Sec. Litig.*,
  2009 WL 579502 (S.D.N.Y. Mar. 6, 2009) ................................................................... 9

*In re Milestone Sci. Sec. Litig.*,
  183 F.R.D. 404 (D.N.J. 1998) ....................................................................................... 9

*In re Molson Coors Brewing Co. Sec. Litig.*,
   233 F.R.D. 147 (D. Del. 2005).................................................................................. 11

*In re Ply Gem Holdings, Inc., Securities Litigation*,
   2014 WL 12772081 (S.D.N.Y. Oct. 14, 2014) .......................................................... 5

*In re Razorfish, Inc. Sec. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001)....................................................................... 4

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999) ....................................................................... 9

*Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*,
   2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ........................................................... 3

*Jakobsen v. Aphria, Inc.*,
   2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) ....................................................... 4, 9

*Jonathan Tan v. NIO Inc.*,
   2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) ............................................................. 7

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)....................................................................... 3

*Kniffin v. Micron Tech., Inc.*,
   379 F. Supp. 3d 259 (S.D.N.Y. 2019)....................................................................... 4

*Koffsmon v. Green Dot Corp.*,
   2021 WL 3473975 (C.D. Cal. Aug. 6, 2021) ............................................................ 6

*Marcus v. J.C. Penney Co., Inc.*,
   2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ......................................................... 9

*Markette v. XOMA Corporation*,
   2016 WL 2902286 (N.D. Cal. 2016).......................................................................... 8

*Micholle v. Ophthotech Corp.*,
   2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ....................................................... 6, 7

*Patel v. Reata Pharms., Inc.*,
   549 F. Supp. 3d 559 (E.D. Tex. 2021) ...................................................................... 6

*Ross v. Abercrombie & Fitch Company*,
   2006 WL 8469668 (S.D. Ohio June 15, 2006).......................................................... 8

*Sofran v. LaBranche & Co.*,
   220 F.R.D. 398 (S.D.N.Y. 2004)............................................................................. 11

iii

*Stires v. Eco Science Solutions, Inc.*,
  2018 WL 5784817 (D.N.J. Feb. 14, 2018)................................................................................. 5

*Takata v. Riot Blockchain, Inc.*,
  2018 WL 5801379 (D.N.J. Nov. 6, 2018)............................................................................. 3, 5

*Tsirekidze v. Syntax-Brillian Corp.*,
  2008 WL 942273 (D.Az. Apr. 7, 2008) ................................................................................... 9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  589 F. Supp. 2d 388 (S.D.N.Y. 2008)................................................................................... 4, 8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................. 10, 11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................................................... 2

## **PRELIMINARY STATEMENT**

Before the Court are six competing lead plaintiff motions. No individual has a greater loss than Hoa Quoc Vuong and Nancy Vuong (the "Vuongs"). Only through the improper grouping of unrelated investors can competing movants claim a larger financial interest than the Vuongs. Scott Keenan & Jose Martinez (the "Martinez Group") and David Bruder & Randy Slipher (the "Bruder Group") claim to have suffered larger losses than the Vuongs.  However, they are improper lawyer-made groups of unrelated persons and cannot meet Rule 23's typicality and adequacy requirements. Therefore, these two movants cannot qualify as lead plaintiffs in this matter.

| Movant | Loss |
| --- | --- |
| 1. Martinez Group | $754,547.34 |
| 1a. Jose Martinez | $466,174.02 |
| 1b. Scott Keenan | $317,530.32 |
| 2. Bruder Group | $675,662 |
| 2a. David Bruder | $368,833 |
| 2b. Randy Slipher | $306,829 |
| 3. The Vuongs | $490,334.18 |
| 3a. Hoa Quoc Vuong | $417,710.39 |
| 3b. Nancy Vuong | $72,623.79 |
| 4. Jason Buchinger | $350,229 |
| 5. Fernando Gonzalez Penas | $85,729.40 |
| 6. Librex Group SAL | $27,300.09 |

Of the remaining movants, the Vuongs have the greatest losses. The Vuongs, who are sisters (and therefore a proper grouping under the PSLRA), satisfy the adequacy and typicality requirements of Rule 23. As such, the Vuongs are presumed to be the "most adequate plaintiff" under the PSLRA, and therefore should be appointed lead plaintiffs on behalf of the putative class. *See* 15 U.S.C. § 78u4(a)(3)(B)(iii)(I).

## ARGUMENT

### I.     APPLICABLE STANDARD

"In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). "Under the PSLRA, the Court must start with the rebuttable presumption that the most adequate plaintiff is the person or entity with the largest financial interest in the relief sought." *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 (E.D.N.Y. 2011) "The [next] criteria required by the PSLRA in evaluating the appropriateness of a proposed class representative requires that the moving plaintiff establish "a prima facie case of typicality and adequacy" under the traditional requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.*

Importantly, "[i]n determining adequacy of representation, the court considers whether "(1) class counsel is qualified, experienced, and generally able to conduct the litigation" and whether "(2) class members do not have interests that are antagonistic to one another."" *Id.* at 235. In addition, "[i]n determining whether the lead plaintiff's claims are typical of those of the class, the court must first determine if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."" *Id.*

"If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff" and "then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *In re Cendant Corp. Litig.*, 264 F.3d at 267.

2

## II.    THE COMPETING MOVANTS ARE INADEQUATE

### a.  The Martinez Group is an Improper Group; Scott Keenan's Options Trading Makes Him Inadequate and Atypical

The Martinez Group, which presents a loss of $754,547.34, is wholly a creation of counsel. The "group" consists of two unrelated movants – Scott Keenan, an Iowan claiming $317,530.32 in losses, and Jose Martinez, a Texan claiming $466,174.02 in losses. The duo has no pre-litigation relationship; indeed, it is unclear whether they have ever communicated with each other, outside of one call orchestrated by counsel. (Dkt. No. 14-6) While some courts have permitted unrelated investors to aggregate their losses, the majority of courts in this Circuit and elsewhere reject unrelated groups of investors where the unrelated members individually have smaller losses than other individual movants or related groups. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533 (S.D.N.Y. 2015) (rejecting lead plaintiff group that was "plainly a creation of counsel" and appointing competing movant with the largest individual loss); *Takata v. Riot Blockchain, Inc.*, 2018 WL 5801379, at *5 (D.N.J. Nov. 6, 2018) (refusing to aggregate losses of lead plaintiff groups because each group failed to satisfy the adequacy requirement); *Int'l Union of Operating Engineers Loc. No. 478 Pension Fund v. FXCM Inc.*, 2015 WL 7018024, at *3 (S.D.N.Y. Nov. 12, 2015) (rejecting lead plaintiff group because "it has the highest financial losses only if it is allowed to aggregate the losses of its two unrelated members."); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (E.D.N.Y. 2012) (in rejecting a lead plaintiff group, writing that "the Court is particularly skeptical of the proposed amalgamation, because this is not the situation where there is a pre-existing relationship or where the incurred losses of the separate institutional investors individually exceed the losses of any other.")

Most disfavored are groups that are clearly a product of their attorney's machinations, rather than an organic grouping. *See Int'l Union,* 2015 WL 7018024, at *2–3 (rejecting group that

3

failed to provide evidence that their grouping was not the product of lawyer-driven litigation); *Elstein v. Net1 UEPS Techs., Inc.*, 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014) (rejecting group because it was "cobbled together" for the purpose of achieving lead plaintiff designation, and appointing the individual with the largest loss instead); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 308 (S.D.N.Y. 2001) (rejecting proposed group because it was "simply an artifice cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as lead plaintiff").

Courts require members of a group to make "an evidentiary showing that unrelated members of a group will be able to function cohesively and to effectively manage the litigation apart from their lawyers before its members will be designated as presumptive lead plaintiffs." *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 262 (S.D.N.Y. 2019). To determine whether such a showing has been made, courts evaluate evidence regarding:

> (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa.

*See id.*; *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008).

While the Martinez Group submitted a joint declaration (Dkt No. 14-6) in an effort to meet this burden, the boilerplate declaration is insufficient. The Group asserts that its members spoke with each other prior to the lead plaintiff motion being filed, but the Joint Declaration reveals that they did so solely through their counsel, who arranged their combination for the purposes of this litigation. Courts have routinely rejected similar joint declarations. *See Jakobsen v. Aphria, Inc.*, 2019 WL 1522598, at *2 (S.D.N.Y. Mar. 27, 2019) (vague plans for cooperation and "boilerplate assurances" are insufficient to show that unrelated investors will be able to manage the litigation efficiently); *Kniffin*, 379 F. Supp. 3d at 263  (court not persuaded by declaration that the group

4

would function cohesively); *In re Ply Gem Holdings, Inc., Securities Litigation*, 2014 WL 12772081, at *2 (S.D.N.Y. Oct. 14, 2014) (denying appointment of joint lead plaintiffs even though the group filed a joint declaration because "joint lead plaintiffs run counter to the purposes of the PSLRA, which seeks to avoid lawyer-driven litigation" (internal quotation marks omitted) and because "[a]llowing lawyers to combine otherwise unrelated entities as joint lead plaintiffs would encourage the lawyers to drive the litigation"); *Takata*, 2018 WL 5801379 (denying lead plaintiff status to a group of investors because the "joint declaration [did] not allay the [] court's concerns about appointing a loose, attorney-driven group of investors as lead plaintiff."); *Stires v. Eco Science Solutions, Inc.*, 2018 WL 5784817, at *5 (D.N.J. Feb. 14, 2018) (denying lead plaintiff status to an investor group despite their larger losses due, in part, to the group apparently being "precisely the type of lawyer-created group the Third Circuit cautioned about in *In re Cendant Corp.*" whose members "span[] the country's geography").

The Martinez Group's supposed dispute resolution mechanism further illustrates the Group's incompatibility with the PSLRA. The Joint Declaration states that "in the unlikely event that [the group members] ever disagree on any issue, the group member with the larger financial interest will ultimately have discretion." (Dkt. No. 14-6) What this means, in practice, is that Martinez, who claims a greater loss than Keenan, would be able to out-vote Keenan on every issue. This state of affairs is disqualifying for two reasons. First, the dispute resolution system gives complete control to Martinez on all disputes—eviscerating the idea that this is a group in anything but name.

Second, this dispute resolution system transparently flies in the face of the PSLRA. Here, the Vuongs – a proper group with a pre-litigation relationship – have a financial interest of $490,334.18. However, if the Martinez Group were to be appointed Lead Plaintiffs, it would allow an individual with a smaller financial interest – namely, Jose Martinez, with a loss of $466,174.02

5

– to exert complete control over the case. Courts often view inequitable dispute resolution arrangements as evidence that a group is improper under the PSLRA. *See, e.g., In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *2 (S.D.N.Y. Nov. 21, 2013) (rejecting a lead plaintiff movant group on account of its dispute resolution system); *Koffsmon v. Green Dot Corp.,* 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021) (rejecting a lead plaintiff movant group for the same reason).

Third, the Martinez Group member Scott Keenan ("Keenan") traded primarily in options, which renders him an inadequate and atypical lead plaintiff (Dkt. No. 14-4). *See Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021) ("'appointing [an] options investor as lead plaintiff very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and ... could subject the class to unique defenses, causing unnecessary conflict.'") (citing *In re Elan Corp. Sec. Litig.,* 2009 WL 1321167, at *2 (S.D.N.Y. May 11, 2009)). *See also Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (finding option traders to be atypical plaintiffs); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (same).

Keenan sold two forms of options, both of which place him at odds with the rest of the class: (1) call options, through which Keenan effectively bet that the stock price would go down – thereby rendering him atypical of the rest of the class members, who bet that the price of Plug stock would rise; and (2) put options, which a court recently held rendered a movant inadequate and atypical. *See Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) ("Appointing Jin, whose losses overwhelmingly reflect his sale of put options, raises issues of his typicality and adequacy… undoubtedly, these questions raised at the lead plaintiff stage will remain, and are certain to become focal points at class certification. Accordingly, because factual issues unique to Jin 'would likely threaten to become the focus of

6

the litigation,' the Court declines to appoint Jin lead plaintiff.")

Moreover, nearly all of Keenan's losses are from the 40,000 shares that were assigned to him via these options, rather than through any shares that he directly purchased on the open market at a market price. It is evident from Keenan's loss chart, which reflects heavy dealing in (and losses from) options rather than stock, that he is wholly dissimilar from the rest of the putative class. Due to this atypicality, Keenan is an inadequate lead plaintiff, and is not qualified to represent the class under the PSLRA.

In sum, the Martinez Group is an improper lawyer-created group whose members have no pre-litigation relationship. Further, the Martinez Group's dispute resolution mechanism is exactly the kind rejected by courts across the country. Therefore, the Martinez Group is inadequate and their application for lead plaintiff appointment should be rejected. Indeed, lead plaintiff groupings put forth by the Martinez Group's counsel have recently been rejected by Courts in this Circuit for substantially similar reasons. *See*, *e.g.*, *Jonathan Tan v. NIO Inc.*, 2020 WL 1031489, at *4 (E.D.N.Y. Mar. 3, 2020) (rejecting an investor group created by the Martinez Group's counsel for the same reasons); *Micholle v. Ophthotech Corp.*, No. 17-CV-1758 (VSB), 2018 WL 1307285, at *8–9 (S.D.N.Y. Mar. 13, 2018) (rejecting an investor group created by the Martinez Group's counsel and writing that "[t]here is no evidence that the Bristol Group had any prior relationship or engaged in any cooperative efforts, and their only commonality is that each member of the plaintiff group invested in Ophthotech stock during the Class Period… the Bristol Group is not a proper plaintiff group.").

### b. The Bruder Group Is an Improper Group and is Otherwise Inadequate and Atypical

Preliminarily, like the Martinez Group, no member of the Bruder Group individually has a larger loss than the Vuongs. The Bruder group is also an improper lawyer-made group of

7

unrelated investors. The Bruder Group does not even attempt to explain how they came to be – indeed, it failed to file any form of joint declaration—not even a boilerplate one. Thus, as explained above, the Bruder Group has failed to meet its burden. *See Varghese,* 589 F. Supp. 2d at 392-93 (writing that "courts in this District do not hesitate to deny a proposed group's motion for lead-plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation" and collecting cases where movants submitted declarations); *see also*, *Markette v. XOMA Corporation*, 2016 WL 2902286, at *9 (N.D. Cal. 2016) ("Apart from these generalities, the declaration says nothing about their level of sophistication, the structure of decision-making in their group, or whether the investors are the true movants as opposed to their counsel. This kind of barebones declaration has been found insufficient in the past."); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *9 (N.D. Cal. 2008) ("In sum, the declaration does not [. . .] clarify how the group will tackle the massive coordination and strategic issues that are certain to arise in this litigation. Simply stated, this conclusory declaration has little or no substance.").

While the Bruder Group provides background information of its members in the memorandum of law, that is insufficient for an unrelated group. *See Ross v. Abercrombie & Fitch Company*, 2006 WL 8469668, at *3 (S.D. Ohio June 15, 2006) (holding an attorney's declaration was insufficient as evidence for the group's cohesion and finding "the absence of any declaration or affidavit from members of the Gianetti Group itself to be further evidence of the Group's inability to function as a cohesive unit.").

The Vuongs did not submit a joint declaration, but they did not need one: as sisters, they are a presumptively proper group under the PSLRA, and a joint declaration is not necessary to show that they can effectively manage the litigation. *See Batter v. Hecla Mining Co.*, 2020 WL 1444934, at *8 (S.D.N.Y. Mar. 25, 2020) ("[A]s the Glucks persuasively counter, they are not a group of "unrelated investors" and therefore do not have to proffer evidence of cohesiveness");

*In re McDermott Int'l, Inc. Sec. Litig.*, 2009 WL 579502, at *4 (S.D.N.Y. Mar. 6, 2009) (holding that, because the members of the Adams Family are not "unrelated investors," there is no need for them to "proffer an evidentiary showing that unrelated members of a group will be able to function cohesively.") (internal citations omitted); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 823 (N.D. Ohio 1999) (holding that separate certifications are sufficient for siblings, and writing that "as an initial matter, it is clear, under the Court's prior analysis, that the Hayman brothers appropriately can be considered a 'group' under the PSLRA. As brothers, the Haymans obviously have a pre-existing relationship and a basis for acting as a collective unit."); *see also In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998) (appointing group of family members and related trusts as lead plaintiffs).

In short, like the Martinez Group, the Bruder Group is an improper lawyer-made group of unrelated investors and should be rejected.

### c.   Group Members Should Not be Considered Individually

Finally, should a member of either group request to be considered individually, such a request should be rejected. Courts regularly decline to break up movant groups, refusing to break apart groups where there are no separate motions to appoint an individual group member. *See Jakobsen*, 2019 WL 1522598, at *4 ("There are no separate motions to appoint any member of the Wan Group as lead plaintiff on an individual basis. As such, this Court does not consider whether each individual member of the Wan Group could be appointed as lead plaintiff."); *see also  Marcus v. J.C. Penney Co., Inc.*, 2014 WL 11394911, at *6 (E.D. Tex. Feb. 28, 2014) ("Because [a group member] did not individually submit a motion for lead plaintiff, his consideration for appointment as lead plaintiff rises and falls with the group."); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D.Az. Apr. 7, 2008) ("The [movant group] moved for lead plaintiff as a group and will be evaluated as such. The willingness to abandon the group only suggests how loosely it was

9

put together."); *Abouzied v. Applied Optoelectronics, Inc.*, 2018 WL 539362, at \*5 (S.D. Tex. Jan. 22, 2018) ("[W]ithin the Fifth Circuit, courts view with suspicion the hand-picking of group members to serve as sole-lead plaintiff. [. . .] [T]he Court will not consider the suggestion that it select one member of the group. The Court will consider the motion of the collective group.")

In any event, even if the Court were to break the groups apart (it should not), it would be futile as none of the individual members of the groups have a larger financial interest than the Vuongs.

### III.  THE VUONGS SHOULD BE APPOINTED LEAD PLAINTIFFS

The Vuongs, with a loss of $490,334.18, are the presumptive Lead Plaintiffs as they have the largest financial interest remaining and satisfy the typicality and adequacy requirements of Rule 23. Unlike the Martinez and Bruder groups, the Vuongs have a pre-litigation relationship and therefore are not an improper attorney-created grouping. As such, the Vuongs should be selected as lead plaintiffs, and their selection of Lead Counsel should be approved.

To overcome the strong presumption entitling the Vuongs to be appointed Lead Plaintiffs, the PSLRA requires "proof" that the presumptive lead plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case, and any arguments to the contrary should be flatly rejected. Competing movants may attempt to conjure up speculative arguments to rebut the presumption in favor of the Vuongs. Any such speculative challenge does not satisfy the PSLRA's requirement that the presumptively most adequate plaintiff may only be rejected if a rival movant presents "proof" that the presumptive Lead Plaintiffs, here the Vuongs, will not adequately protect the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support

in evidence …"); *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 403-04 (S.D.N.Y. 2004) (emphasizing that the PSLRA requires proof of inadequacy and not mere "speculation").

As the Vuongs have made a *prima facie* demonstration of the typicality and adequacy and have the largest remaining financial interest, and no movant has rebutted the presumption with proof, they must be appointed Lead Plaintiffs.

## IV.      THE VUONG'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) (the Lead Plaintiff "is primarily responsible for selecting lead counsel.").

The Vuongs have selected The Rosen Law Firm, P.A., as Lead Counsel. The firm has the resources and expertise to litigate this action efficiently and aggressively. As the firm's resume reflects, it is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors (Dkt. No. 16-7). The Court may therefore be assured that by approving the Vuongs' selection of counsel, the members of the class will receive excellent legal representation.

## V.      THE COMPETING MOTIONS SHOULD BE DENIED

As to the remaining movants not specifically addressed in this brief, all competing motions put forth by those movants should be denied, as the Vuongs have the greatest financial interest in the litigation, and the Vuongs should therefore be appointed lead plaintiffs without further analysis. The Vuongs do not concede or acknowledge that the competing movants are adequate or that their claims are typical, and respectfully reserve their right to address the competing movants' adequacy or typicality, should the Court reach those motions.

11

## CONCLUSION

For the foregoing reasons, the Vuongs respectfully request that the Court issue an Order: (1) appointing the Vuongs as Lead Plaintiff of the Class; (2) approving the Vuongs' selection of The Rosen Law Firm, P.A. as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: June 11, 2024

Respectfully submitted,

**PAWAR LAW GROUP P.C.**

/s/ Vikrant Pawar
Vikrant Pawar
20 Vesey Street, Suite 1410
New York, NY 10007
Telephone: (212) 571-0805
Email: vikrantpawaresq@gmail.com

*Additional Counsel for Lead Plaintiffs*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiffs and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim