**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ETE ADOTE, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No.: 1:24-cv-406 (MAD/DJS) |
| PLUG POWER INC., ANDREW MARSH, and PAUL B. MIDDLETON, | Hon. Mae A. D'Agostino |
| Defendants. | |
| DONGHO LEE, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | Case No.: 1:24-cv-598 (MAD/DJS) |
| PLUG POWER INC., ANDREW MARSH, and PAUL B. MIDDLETON, | Hon. Mae A. D'Agostino |
| Defendants. | |

**SCOTT KEENAN AND JOSE MARTINEZ'S MEMORANDUM OF LAW**
**IN REPLY  TO THE COMPETING LEAD PLAINTIFF MOTIONS**

## I.      INTRODUCTION

Movants Scott Keenan and Jose Martinez should be appointed lead plaintiff because they possess the largest financial interest in the outcome of this action and otherwise meet Rule 23's adequacy and typicality requirements. The competing movants do not submit proof capable of rebutting this conclusion but instead raise speculative arguments without any authoritative law in support. Without evidence showing Messrs. Keenan and Martinez are unfit to represent the interests of the class, the Court should reject the arguments from the competing movants and grant Messrs. Keenan and Martinez's motion in its entirety.

The PSLRA is the governing statute in this lead plaintiff proceeding. *See* 15 U.S.C. §78u-4. As previously described, the movants with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23" are the presumptive lead plaintiffs in the action. It then falls upon the other movants to rebut the presumption with "proof" that the presumptive lead plaintiff either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Messrs. Keenan and Martinez purchased 156,000 shares of Plug during the Class Period, retained 141,600 shares through the end of the Class Period, expended $1,102,645 purchasing those shares, and sustained an estimated loss of $669,447.67. Dkt. No. 18-1. By all accounts, Messrs. Keenan and Martinez possess the "largest financial interest" in the action.

The competing movants do not dispute this. Nor do they provide the Court with "proof" sufficient to rebut Messrs. Keenan and Martinez's statutory lead plaintiff presumption. Instead, they argue that the submission of an "errata" correcting a calculation error categorically disqualifies Messrs. Keenan and Martinez from serving as lead plaintiff. In addition, the Vuongs,

despite being a group themselves, argue that groups are generally impermissible and cannot serve as lead plaintiffs. Both arguments are meritless and unsupported by the law.

## II.    ARGUMENT

### A.    The "Errata" Does Not Disqualify Messrs. Keenan and Martinez from Serving as Lead Plaintiff.

Messrs. Keenan and Martinez's counsel filed an errata immediately after discovering a calculation error in the "loss chart" filed with their initial moving papers. Dkt. No. 14-4. The error concerned a formula within an Excel spreadsheet that inadvertently failed to account for the 90-day look-back price when calculating Mr. Martinez's losses pursuant to the Exchange Act. The error impacted only Mr. Martinez's loss calculation (not Mr. Keenan's) and counsel corrected it immediately upon noticing it. *See* Dkt. No. 18. Importantly, the corrected loss calculation did not *increase* anyone's losses and did not introduce any additional transactions or otherwise contradict the transaction history provided by Mr. Martinez with his initial motion papers. Moreover, the corrected loss calculation did *not* change the fact that Messrs. Keenan and Martinez *still* possess the "largest financial interest" in the action, as illustrated in the below table:

| Movant | Gross Shares Purchased | Net Shares Retained | Net Funds Expended | Recoverable Losses |
|---|---|---|---|---|
| Scott Keenan and Jose Martinez | 156,000 | 141,600 | $1,102,645 | $669,447.67 |
| Scott Keenan | 41,000 | 40,000 | $459,840 | $317,530.32 |
| Jose Martinez | 115,000 | 101,600 | $642,805 | $381,074.34 |
| David Bruder and Randy Slipher | 429,708 | 53,000 | $864,238.99 | $508,218.63 |
| David Bruder | 342,708 | 0 | $368,832.53 | $201,372.49 |
| Randy Slipher | 87,000 | 53,000 | $495,406.46 | $306,846.14 |
| Hoa Quoc Vuong and Nancy Vuong | 208,911 | 54,202 | $614,265.45 | $391,489.33 |
| Hoa Quoc Vuong | 192,861 | 44,452 | $506,809.31 | $319,098.18 |
| Nancy Vuong | 16,050 | 9,750 | $107,456.14 | $72,391.16 |

Dkt. Nos. 16-6 (Vuongs), 17-4 (Bruder and Slipher), and 18-1 (Keenan and Martinez).

Both the Vuongs and Messrs. Bruder and Slipher's "recoverable losses" are less than they represented in their initial moving papers. As previously explained, Messrs. Bruder and Slipher did not properly account for intra-class period gains. *See* Dkt. No. 29, pp. 7-8. Likewise, the Vuongs incorrectly calculated their losses using a FIFO (first-in-first-out) methodology instead of the routinely accepted LIFO (last-in-last-out) methodology. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019) (LIFO is "the 'overwhelming trend in this district and nationwide'"); *In re Paysafe Ltd.*, 2022 U.S. Dist. LEXIS 84546, at *13 n.6 (S.D.N.Y. May 10, 2022) ("LIFO is the preferred and most-widely-accepted methodology for calculating movants' losses"). Their loss chart shows that Hoa Quoc Vuong improperly matched 8,900 shares sold during the Class Period to a pre-Class Period position instead of shares purchased during the Class Period. *See* Dkt. No. 16-6, p. 1. When properly "matched" against Ms. Vong's most recent purchases (as is required by the LIFO methodology), the Vuongs' recoverable losses drop to $391,489.33. A loss analysis demonstrating the correct application of the LIFO methodology is attached hereto as Exhibit A.

Inadvertent errors are not material to adequacy or typicality. *See Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015) ("minor or inadvertent mistakes made in a [loss calculations] do not strike at the heart of Rule 23's adequacy requirement"); *see also Ferrari v. Gisch*, 225 F.R.D. 599, 605 (C.D. Cal. 2004) ("relatively minor miscalculations do not serve as a basis for disqualifying"). Indeed, "[c]ourts routinely reject criticisms based on errors in certifications, particularly where there is no evidence of bad faith or intent to deceive the court or the parties." *In re SLM Corp. Sec. Litig.*, 2012 U.S. Dist. LEXIS 8158, at *24 (S.D.N.Y. Jan. 24, 2012) (citing *In re IPO Sec. Litig.*, 227 F.R.D. 65, 98 (S.D.N.Y. 2004)). Neither of the competing movants have adduced anything remotely close to suggesting "bad faith or intent to deceive the

3

court." Given the immediacy with which Messrs. Keenan and Martinez's counsel corrected the error, any characterization other than an inadvertent clerical error simply does not make sense.

The cases cited by the competing movants on this point are entirely distinguishable. In *Rodriguez v. Draftkings Inc.*, 2021 U.S. Dist. LEXIS 219489 (S.D.N.Y. Nov. 12, 2021), the court disqualified a movant (Tim Kaintz) who was hopelessly inadequate given the multitude of issues he presented. While Mr. Kaintz appeared to have the largest financial stake, he was a "serial 'in-and-out' trader, trading in and out 64 times during the seven-month period in which Kaintz traded DraftKings common stock." *Id*. at *14. Adding to that were the numerous "inconsistencies between the PSLRA certification and loss chart Kaintz submitted . . . , as well as omissions in his PSLRA certification," which was only corrected after the issues were brought to his counsel's attention nearly three weeks after filing the initial motion papers. *Id*. at *15. Mr. Kaintz faced further hurdles stemming from the fact that his trading history exhibited day-trading conduct, short selling investment strategies, and high-volume option trading. *Id*. at *20-22.

While the court in *DraftKings* ultimately disqualified Mr. Kaintz, the number and severity of issues against him easily distinguish the case from the facts at bar. There were no inconsistencies between Mr. Martinez's PSLRA certification and loss chart, the cause of the error was due to a formula within an Excel spreadsheet (and not anything provided by Mr. Martinez), and counsel filed the errata immediately (within three days) as opposed to letting it sit on the docket waiting for opposing counsel to notice it (which, given the technicality of the error, may have very well gone unnoticed). *See Hansen v. Ferrellgas Partners, L.P.*, 2017 U.S. Dist. LEXIS 8145, at *19-20 (S.D.N.Y. Jan. 19, 2017) ("the Court would be extremely reluctant to impose a rule that would force lead plaintiff movants to choose between leaving mistakes in their filings uncorrected or correcting the mistake and being summarily disqualified.").

4

The other cases cited by the competing movants are also distinguishable. In *Camp v. Qualcomm Inc.*, 2019 U.S. Dist. LEXIS 10269 (S.D. Cal. Jan. 22, 2019), the court determined that a movant misrepresented certain facts in his PSLRA certification, including whether he had authorized a complaint to be filed in his name as well as the purchase prices of hundreds of shares supposedly purchased during the class period. *Id*. at *9-10. In *In re Vonage Initial Pub. Offering Sec. Litig.*, 2007 U.S. Dist. LEXIS 66258 (D.N.J. Sep. 6, 2007), the court similarly took issue with "misinformation" contained in the movant's certification, including discrepancies in the signature as well as misleading trading data. *Id*. at *27-28 n.8. In *Lako v. Loandepot, Inc.*, 2022 U.S. Dist. LEXIS 79063 (C.D. Cal. May 2, 2022), the court disqualified movants who proposed a "novel and controversial measure of relief—Section 16 of the 1933 Act—as a separate form of relief" in their reply brief, had zero alleged damages under Section 11 of the 1933 Act, and appeared to be a day trader. *Id*. at *13-15. And in *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409 (E.D. Pa. 2019), the court disqualified a movant because his sworn certification contained numerous discrepancies with his trade information, including not accurately reflecting the number of trades he made and/or at the prices and dates he initially claimed. *Id*. at 414.

In all of the above cases, the defining feature is that the movant provided an incorrect account of his transaction history when, considered in conjunction with other potential flaws, was enough to convince the court that the movant would be unable to adequately represent the class. That is not the case here. Mr. Martinez's certification contains no errors and he presents no other issues with respect to his typicality or adequacy to serve as the lead plaintiff. *Compare* Dkt. No. 14-3 (Martinez Certification) *with* Dkt. No. 18-1 (Corrected Loss Analysis). Furthermore, unlike the above cases, counsel corrected the issue immediately upon noticing the Excel formula error. Issues like the one at bar are entirely distinguishable from the ones in the above cases and do not

5

amount to "proof" of inadequacy. *See Pampena v. Musk*, 2023 U.S. Dist. LEXIS 71169, at \*7 n.4 (N.D. Cal. Apr. 24, 2023) (appointing lead plaintiff who made "clerical error" in certification concerning number of shares sold); *In re Silver Wheaton Corp. Sec. Litig.*, 2017 U.S. Dist. LEXIS 72787, at \*28 (C.D. Cal. May 11, 2017) (finding that "the plaintiffs have offered reasonable explanations for what amount to clerical errors in their prior certifications"); *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 98 (S.D.N.Y. 2004) (omission of trades from certification did not render representative inadequate).[1]

### B.    The Law Allows Messrs. Keenan and Martinez to Serve as a Co-Lead Plaintiffs.

Unquestionably, the law within the Second Circuit and, indeed, across the country allows shareholders to move as a "group" lead plaintiff. *See, e.g.*, *Mersho v. United States Dist. Court*, 6 F.4th 891 (9th Cir. 2021) (endorsing group lead plaintiff applications); *Pampena*, 2023 U.S. Dist. LEXIS 71169, at \*11-12 (crediting "joint declaration" when rejecting Rule 23 challenge from competing movant); *Garnett v. RLX Tech. Inc.*, 2021 U.S. Dist. LEXIS 165393, at \*12-14 (S.D.N.Y. Aug. 31, 2021) (appointing group of three unrelated individuals); *Strougo v. Lannett Co.,* 2018 U.S. Dist. LEXIS 203050, at \*17 (E.D. Pa. Nov. 30, 2018) appointing two-member group where group members communicated "before moving for lead plaintiff"); *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (holding arguments against group unavailing).

Courts even routinely appoint group "lead plaintiffs" when represented by multiple counsel. In particular, counsel for the competing movants in this case were appointed co-lead

---

[1] The Vuongs' counsel knows this full-well given the position they adopted (successfully) in *Sunlight Financial* where, due to "an inadvertent clerical error," their client "understated his losses." A true and accurate copy of the Vuongs' counsel's brief in *Sunlight Financial* was previously filed on the docket. *See* Dkt. No. 34-1.

counsel for the "Blue Apron Investor Group" which was a group of four individuals (and supported only by a belated declaration submitted after the initial moving papers). *See In re Blue Apron Holdings, Inc. Sec. Litig.*, 2017 U.S. Dist. LEXIS 207531, at *10-14 (E.D.N.Y. Dec. 15, 2017). In short, there is no basis to disqualify Messrs. Keenan and Martinez simply for wanting to serve as co-lead plaintiffs. *See*, *e.g.*, *Pack v. LuxUrban Hotels Inc.*, 2024 U.S. Dist. LEXIS 108501, at *10-11 (S.D.N.Y. June 18, 2024) (appointing group comprised of institution and individual); *In re Paysafe Ltd.*, 2024 U.S. Dist. LEXIS 69230, at *15-16 (S.D.N.Y. Apr. 16, 2024) (approving report and recommendation in favor of group appointment).

## III.    CONCLUSION

For the foregoing reasons, Messrs. Keenan and Martinez respectfully request that the Court grant their Motion and enter an Order: (1) consolidating the Actions, (2) appointing Messrs. Keenan and Martinez as Co-Lead Plaintiffs, (3) approving their selection of Levi & Korsinsky as Lead Counsel for the Class, and (4) granting such other relief as the Court may deem just and proper.

Dated: June 26, 2024                                    Respectfully Submitted,


                                                        **LEVI & KORSINSKY, LLP**

                                                        By: */s/ Adam M. Apton*
                                                        Gregory M. Nespole
                                                        (Bar Roll Number: 520397)
                                                        Adam M. Apton (admitted *pro hac vice*)
                                                        33 Whitehall Street, 17th Floor
                                                        New York, NY 10004
                                                        Tel: (212) 363-7500
                                                        Fax: (212) 363-7171
                                                        Email: gnespole@zlk.com
                                                        Email: aapton@zlk.com

                                                        *Lead Counsel for Scott Keenan and Jose Martinez,*
                                                        *and [Proposed] Lead Counsel for the Class*