# Exhibit 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ETE ADOTE, Individually and on Behalf of All
Others Similarly Situated,

                                        Plaintiff,

                                                        1:24-CV-0406
            v.                                          (MAD/DJS)

PLUG POWER INC., ANDREW MARSH, and
PAUL B. MIDDLETON,

                                        Defendants.

_____

DONGHO LEE, Individually and on Behalf of All
Others Similarly Situated,

                                        Plaintiff,

                                                        1:24-CV-0598
            v.                                          (MAD/DJS)

PLUG POWER INC., ANDREW MARSH, and
PAUL B. MIDDLETON,

                                        Defendants.

_____

**APPEARANCES:**                        **OF COUNSEL:**

POMERANTZ LLP                           JEREMY A. LIEBERMAN, ESQ.
*Attorneys for Plaintiff Ete Adote,*    JOSEPH A. HOOD, II ESQ
*Attorneys for David Bruder and*
*Randy Slipher*                         .
600 Third Avenue, 20th Floor
New York, NY 10016


BRONSTEIN, GERWRTZ &                    PERETZ BRONSTEIN, ESQ.
GROSSMAN, LLC
*Attorneys for David Bruder and*

- 1 -

*Randy Slipher*
60 East 42nd Street, Suite 4600
New York, NY 10165

FARUQI & FARUQI, LLP                 JAMES M. WILSON, JR. ESQ.
*Attorneys for Librex Group SAL*
685 Third Avenue, 26th Floor
New York, NY 10017

GLANCY PRONGAY & MURRY LLP           BRIAN P. MURRAY, ESQ.
*Attorneys for Gonzalez Penas*
230 Park Ave., Suite 358
New York, NY 10169

HOLZER & HOLZER, LLC                 COREY D. HOLZER, ESQ.
*Attorneys for Gonzalez Penas*
211 Perimeter Center Parkway, Suite 1010
Atlanta Georgia 30346

LEVI & KORSINSKY, LLP                GREGORY M. NESPOLE, ESQ.
*Attorneys for Scott Keenan and Jose Martinez*
33 Whitehall Street, 17th Floor
New York, NY 10004

HAGENS BERMAN SOBOL                  NATHANIEL A. TARNOR, ESQ
SHAPIRO, LLP                         STEVE W. BERMAN, ESQ.
*Attorneys for Plaintiff Dongho Lee and*
*Attorneys for Jason Buchinger*
68 3rd Street, Suite 249
Brooklyn, NY 11231

PAWAR LAW GROUP P.C.                 VIKRANT PAWAR, ESQ.
*Attorneys for Hoa Quoc Vuong and*
*Nancy Vuong*
20 Vesey Street, Suite 1410
New York, NY 10007

THE ROSEN LAW FIRM, P.A.             PHILLIP KIM, ESQ.
*Attorneys for Hoa Quoc Vuong and*
*Nancy Vuong*
275 Madison Avenue, 40th Floor
New York, NY 10016

DLA PIPER LLP
*Attorneys for Plug Power Inc.*
1251 Avenue of the Americas
New York, NY 10020

JOHN H. CLARKE, JR. ESQ.
STEVEN M. ROSATO, ESQ.

BOIES, SCHILLER & FLEXNER LLP
*Attorneys for Andrew Marsh and*
*Paul D. Middleton*
30 South Pearl Street, 11th Floor
Albany, NY 12207

GEORGE F. CARPINELLO, ESQ.

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

Presently before the Court are five competing Motions, pursuant to Sections 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), requesting that the Court (1) consolidate two related securities class actions, (2) appoint the Movant(s) as lead plaintiff(s), and (3) approve each Movant's selection of lead counsel. Dkt. Nos. 11, 13, 14, 15, 16, & 17.[1] Oral argument on the Motions was held on October 29, 2024. For the reasons that follow, the Court consolidates the actions, selects David Bruder and Randy Slipher as co-lead Plaintiffs, and confirms their choice of counsel.

### I.    Procedural History

These two purported class actions were commenced, respectively, on March 22, 2024 and April 30, 2024. *See*, 24-CV-406, Dkt. No. 1 (*Adote* Complaint) and 24-CV-

---

[1] Unless otherwise noted, all references are to the docket in *Adote*, 24-CV-406. This decision also addresses the Motion to Consolidate and Appoint Lead Counsel (Dkt. No. 12) filed in *Lee*. That Motion is Denied.

598, Dkt. No. 1 (*Lee* Complaint).   Because the allegations are mostly identical, the Court references only the *Adote* Complaint.   The actions are brought as a federal securities class actions against Plug Power, Inc. and certain of its top officials, including CEO Andrew Marsh, and CFO Paul Middleton.   Compl.   The parties seek to recover damages allegedly caused by Defendants' violations of the federal securities laws during the period of May 9, 2023, until January 16, 2024 ("the Class Period").[2]   *Id.* at ¶ 1.   The Complaint alleges that the Defendants made false and misleading statements regarding Plug Power's business, operations, and prospects, and as a result of the Defendants' wrongful acts and omissions, there was a precipitous decline in the market value of the company's securities, which resulted in significant losses to the Plaintiff and other class members.   *Id.* at ¶¶ 5-17.   It was alleged that, among other things, Plug Power misrepresented information concerning the infrastructure that was necessary to build their green hydrogen production facilities.    *Id*. at ¶ 5.

## II.    Motions to Consolidate

Rule 42(a) of the Federal Rules of Civil Procedure provides that "[i]f actions before the court involve a common question of law or fact, the court may ... consolidate the actions; or ... issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). The district court has broad discretion to determine whether consolidation is appropriate. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990). In determining whether consolidation should be ordered, the court must consider:

---

[2] The class period for the *Lee* matter is slightly longer, beginning on March 1, 2023, and extending to January 16, 2024.

"[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." *Id.* In cases involving common questions of law or fact, court's generally favor consolidation to expedite a trial, to reduce unnecessary cost, and to avoid repetition and confusion. *Id.* at 1284. In the present case, all the moving parties have requested consolidation, and no opposition to this proposal has been filed. *See* Dkt. No. 23 ("The defendants agree that this action and the *Lee* action should be consolidated."). After considering the factors listed in *Johnson*, the Court grants the Motions to consolidate.

### III. Appointment of Lead Plaintiff

#### a. Standard

The PSLRA sets forth the following standard for selecting a lead plaintiff in a federal securities class action: "the court ... shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the 'most adequate plaintiff')." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes that courts shall adopt a presumption that the "most adequate plaintiff" is the class member or group that:

(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii).

The presumption can be rebutted "only upon proof" by a class member that the movant for appointment as lead plaintiff: (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.*

### b. Submissions

Turning to the submissions, Librex Group SAL was the first entity to file for lead plaintiff status. Dkt. No. 11. Salim Bichalini, Chairman and President of SAL, notes that during the class period, his group purchased and traded Plug Power securities and, as a result of the conduct alleged in the Complaint, suffered a substantial loss. Dkt. Nos. 11-4, 11-5, & 11-6. The number of shares purchased by the Librex Group SAL during the requisite time period was 16,000, with 2,000 shares being sold in June 2023. Dkt. Nos. 11-4, 11-5. The expected loss was $27,300.

Next, Fernando Gonzalez Penas moves for permission to be lead plaintiff. Dkt. No. 13. His counsel asserts that he has sustained the largest financial harm, which amounted to approximately $85,729. Dkt. No. 13-1 at p. 6. This is based upon the purchase and retention of 28,830 shares of common stock of Plug Power. Dkt. No. 13-6 at p. 2.

Scott Keenan and Jose Martinez (the "Martinez Group"), through counsel, also ask to be designated as co-lead plaintiffs. Dkt. No. 14. Keenan and Martinez are self-described as "diverse" and "highly motivated investors with substantial financial interests at stake." Dkt. No. 14-6, at ¶¶ 5, 9. Martinez purchased 115,000 shares of Plug Power stock and sold 13,400 shares during the class period. Dkt. No. 14-3. It is asserted that his losses amounting to $466,174. Dkt. No. 14-4 at p. 3. For his part, Mr. Keenan purchased 41,000 shares, and maintains that his LIFO and Dura LIFO loss is calculated at $317,530. *Id.* Accordingly, the total loss for this group was represented to be $754,547. *Id*.

Next up is the Motion by class member Jason Buchinger, a financial advisor who, through the firm of Hagans Berman Sobel Schapiro LLC, also asks to be designated as lead counsel. Dkt. No. 15. According to the information provided by the movement, he purchased 44,000 shares of Plug Power stock during the class period and calculated a loss of $350,229. Dkt. No 15-4 at p. 2.

Hoa Quoc Vuong and Nancy Vuong (the "Vuong sisters") then moved for co-lead plaintiff status. Dkt. No. 16. The various purchases and sales of Plug Power stock by the Vuong sisters are set forth at Dkt. No. 16-6. According to that spreadsheet, Hoa Quoc Vuong asserts a loss of $417,710, and Nancy My Vuong had losses of $72,623. *Id*. Thus, the total loss for the Vuongs amounted to $490,334. *Id.*; Dkt. No. 16-2 at p. 9.

The sixth and final group to file for lead plaintiff status is David Bruder and Randy Slipher (the "Bruder Group"), represented by Pomerantz LLP and Brownstein,

Gerwirtz & Grossman.  Dkt. No. 17.  According to the supplied spreadsheets, David Bruder purchased 342,708 shares of Plug Power stock during the class period and sustained a LIFO loss of $368,833.  Dkt. No. 17-4 at p. 2.  Randy Slipher purchased 87,000 shares of stock, with 73,000 of those shares being retained, and has a calculated LIFO loss of $306,829.  Thus, the total LIFO loss for the proposed co-lead plaintiffs was $675,662.  Dkt. No. 17-4.  Counsel therefore argues that, combined, Bruder and Slipher have the largest financial interest in the litigation, and that they could fairly and most adequately represent the class.  Dkt. No. 17-2, Mem of Law, at pp. 2-12.

After the last Motion seeking lead plaintiff status, the Court then received several additional filings. First, the Martinez Group submitted a corrected financial loss chart, which reduced their loss, calculated on a LIFO and Dura LIFO basis, from $754,547 to $669,447.  Dkt. No. 18.  Next, Librex Group SAL, Fernando Gonzalez Penas, and Jason Buchinger wrote in to advise the Court that they now recognize that they do not have the largest financial interests in the litigation and were therefore effectively withdrawing their Motions.  Dkt. Nos. 24, 26, & 27.   Those requests are granted.

Of the remaining Movants, additional memoranda were submitted in support of their respective positions. Bruder and Slipher note in their June 11, 2024, Memorandum of Law, that their total loss was $675,662, which therefore exceeds the Martinez-Keenan group's recalculated loss of $669,448, as well as the Vuong's loss of $490,334. Dkt. No. 28 at p. 2.  They also maintain that they satisfy the adequacy and typicality requirements of Rule 23, in that they purchased Plug Power securities at prices artificially inflated by Defendants' misrepresentations.  *Id.*   Included with the

- 8 -

submissions was a joint declaration from both investors detailing their background, and their readiness to be co-lead plaintiffs in an effective manner. *Id.* at p. 3. In addition to their status as possessing the largest financial interests, the Bruder Group also highlight the significant error in the loss calculations by the Martinez Group as a potential reason for the rejection of their request to lead the action. *Id.* at p. 4.

Despite the foregoing, Scott Keenan and José Martinez assert that they, in fact, have the largest financial interest, and are properly appointed as co-lead plaintiffs. Dkt. No. 29 at p. 2. While the Martinez Group acknowledges that the courts in this Circuit generally utilize the LIFO methodology, and also lists their clients combined LIFO loss as below that of the Bruder group, they note that the other *Olsten/Lax* factors weigh in their favor, and that the Court should consider what they deem "recoverable losses," which they calculate for themselves as $669,447, compared to $508,218 for the Bruder group, and $319,499 for the Vuongs. *Id.* at pp. 2-8. Martinez and Keenan have also submitted a joint affidavit indicating their willingness to serve in the lead plaintiff role, and outlining both their backgrounds in the decision-making process that will be employed, were they to be appointed. Dkt. No. 29-1.

The Vuong sisters submitted papers in opposition to the appointment of the Martinez Group, and the Bruder Group, and in further support of their Motion. Dkt. No. 30. Their primary argument is that, even though their loss is less than the aggravated loss of the other groups, those lead counsel Motions should be rejected because the Martinez Group and the Bruder Group have been cobbled together in an *ad hoc* fashion and are wholly lawyer-created, while the Vuong sisters represent a cohesive and organic

- 9 -

grouping, a fact that should be controlling. *Id.* at pp. 3-9. In support of that argument, they note that legal counsel apparently arranged for the Martinez and Bruder groupings, and that there was no prelitigation contact between the co-lead plaintiffs. As for loss, they note that the Vuongs' combined loss of $400,000 is more than any of the *individual* losses of any other person. *Id.* at p. 5. Finally, the Vuongs point out that Martinez Group member Scott Keenan traded mostly in options, which makes him a poor class representative. *Id.* at pp. 6-7.

At oral argument, counsel for the remaining Movants further clarified the various positions before the Court.

### c. Aggregation of Losses and Co-Lead Plaintiff Groupings

Turning first to the propriety of the co-lead plaintiff groupings, the Court notes that historically the PSLRA was designed to guard against so-called "professional plaintiffs" whose financial holdings were relatively insignificant. *See Siegel v. Bos. Beer Co., Inc.*, 2021 WL 5909133, at *3 (S.D.N.Y. Dec. 14, 2021). To do that, Congress encouraged class members with the largest loss to serve as lead plaintiff(s) in private securities litigation; limited individuals to no more than five class action cases in any three-year period; and barred any type of bonuses or referral fees for class representatives. *See* 15 U.S.C. § 77z-1 & § 78u-4(a)(3)(B). The statute, however, does contemplate and specifically provides that groups of individuals, with their collective losses, may be selected as lead plaintiffs. In particular the PSLRA states that "the court shall adopt a presumption that the most adequate plaintiff… *is the person or group of persons* that[,]… in the determination of the court, has the largest financial interest in

the relief sought by the class…"   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) (emphasis added).

The Second Circuit has routinely permitted the aggregation of claims for purposes of appointment of lead plaintiff.   As specially noted by Magistrate Judge Roanne Mann in *Cushman v. Fortress Biotech, Inc*., 2021 WL 7449182, at *6 (E.D.N.Y. Mar. 24, 2021), *aff'd,* 2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021):

> [M]any courts in this Circuit have appointed lead plaintiff groups comprised of individual investors assembled by their lawyers. *See, e.g., In re Sequans Commc'ns S.A. Sec. Litig., 289 F. Supp. 3d 416, 422-24 (E.D.N.Y. 2018)* (collecting cases in which unrelated investors and investors without preexisting relationships were approved as lead plaintiffs); *see also In re eSpeed, Inc. Sec. Litig*., 232 F.R.D. 95, 99 & n.18 (S.D.N.Y. 2005) (collecting cases and characterizing as "the majority view" the notion that "unrelated investors may aggregate under certain circumstances"). Courts approve these lead plaintiff groups upon finding other indicia that demonstrate the group's ability to effectively manage the demands of litigation. *Peters v. Jinkosolar Holding Co*., 2012 WL 946875, at *8 (S.D.N.Y. Mar. 19, 2012) (a lead plaintiff investor group that "was formed with the assistance (if not at the instigation) of counsel" was sufficiently cohesive where counsel provided a plan for communication and decision-making between plaintiffs, and three of the four investors' losses were greater than those of the next largest investor); *In re Sequans*, 289 F.Supp.3d at 424 (lead plaintiffs need not have "some pre-existing, pre-litigation relationship").

*Id*.

The Court has considered the concerns expressed by the Vuong sisters regarding *ad hoc* groupings but believes that both the Bruder group and the Martinez group have sufficiently established to the Court both a significant financial interest, as well as the workable methodology for proceeding forward in the best interests of the class.   In particular, the proposed small group of two sophisticated and substantial investors

- 11 -

represents a grouping that is both motivated and manageable.  Therefore, the argument to disqualify those two groupings is rejected.

### d.  Approximate Financial Loss

The next critical factor for the court to consider is the financial loss of each of the three groups.   As noted above, the PSLRA requires courts to presume that the plaintiff(s) with the largest financial interest should be the class representative, but the statute offers no specific guidance for making that determination.  Courts in the Second Circuit have adopted the four "*Olsten/Lax* factors" to determine which plaintiff has the largest financial interest: "(1) the [total] number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y.), *opinion adhered to on reconsideration sub nom. In re Olsten Corp.*, 181 F.R.D. 218 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)).  Courts agree that the most significant factor is factor 4; the approximate loss suffered.  As to that, the two primary accounting principles utilized to calculate the approximate loss sustained by a proposed lead plaintiff in an action are the First-In-First-Out ("FIFO") or the Last-In-First-Out ("LIFO").  The "LIFO [method] calculates losses by assuming that the first stocks to be sold are the stocks purchased most recently prior to that sale. The alternative, ... [FIFO], assumes that the first stocks to be sold are the stocks that were acquired first.  Courts in both the Second Circuit and nationwide prefer to use a LIFO calculation when assessing losses, rather than a FIFO

- 12 -

methodology. *Salim v. Mobile Telesys.* 2019 WL 11095253, at *3 n.5 (E.D.N.Y. Sept. 11, 2019); *Atanasio v. Tenaris S.A.,* 331 F.R.D. 21, 27 n.5 (E.D.N.Y. 2019) (noting courts' preference for the LIFO method, because FIFO "may exaggerate losses") (citation omitted).

Various spreadsheets have been provided to the Court in connection with these Motions. In sum, it appears that the agreed to figures are as follows:

|  | **Bruder/Slipher** | **Martinez/Keenan** | **Vuong Sisters** |
|---|---|---|---|
| Total # of Shares | 429,708 | 156,000 | 208,911 |
| Net Shares Purchased | 53,000 | 141,600 | 54,202 |
| Net Funds Expended | $864,238 | $1,102,645 | $614,265 |
| Financial Loss LIFO | $675,662 | $669,447 | $490,334 |

Utilizing the LIFO methodology, it is evident that the Bruder Group has sustained the highest financial loss, and therefore they are presumed to be the appropriate co-lead plaintiffs. Counsel for the Martinez Group, however, argues against that position, and asserts that a different methodology should be utilized in this case, one that would consider the actual recoverable loss based upon the date of the disclosure of the alleged misstatements of Defendant Plug Power. In this regard, the Court notes that the Martinez Group has changed their loss methodology throughout the course of Motion practice. Initially they asserted largest loss on a LIFO basis, but then recognize

that their financial calculations were an error and submitted a corrected loss sheet. Dkt. No. 18. Pursuant to that new submission, they did not sustain the largest loss.

In response, the Martinez Group maintained that the Bruder Group's loss was not as much as they stated, as they failed to account for profits they made for sales of stock during the class period. Counsel for the Bruder Group has established to the Court's satisfaction, however, that their loss calculations did in fact take into account any profits made during the relevant period, and their numbers were not in error.

It was this point that the Martinez group argued that the correct methodology should be based upon what they call "recoverable loss" which they now interpret to mean any loss occurred after November 9, 2023. The Court disagrees and believes that, in this particular case and for the reasons articulated at oral argument, the LIFO analysis is appropriate. As an initial point, the changing numbers and methodologies employed by the Martinez Group is a significant concern for the Court. As noted by Judge Mann "[p]resenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead Plaintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs" and "[t]his fact alone counsels in favor of adopting the LIFO methodology." *Marquez v. Bright Health Grp., Inc*, 2022 WL 1314812, at \*6 (E.D.N.Y. Apr. 26, 2022). Second, and as noted by counsel for both the Vuongs and the Bruder Group, there was not one, but four separate corrective notices that are at issue in this case, and that mitigates against the proposed Martinez Group methodology. *See, e.g. Pack v. LuxUrban Hotels Inc.,* 2024 WL 3046258, at \*6 (S.D.N.Y. June 18, 2024) (noting that

- 14 -

courts in the Second Circuit have often appointed lead plaintiffs who "purchased a corporation's securities before and after a partial corrective disclosure").

In sum, this Court concludes that the Bruder Group has the largest financial interest and, under the relevant factors, is presumed to be the most adequate co-lead Plaintiffs. In the Court's view that presumption has not been overcome, nor has there been a showing of any disqualifying factors.

### e. Rule 23 Requirements

Under the PSLRA, to serve as lead plaintiff, the movant with the largest financial interest must also satisfy the requirements of Rule 23 of the FRCP. *See* 15 U.S.C. §§ 77z-1(a)(3)(B)(iii)(cc), 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) specifies four requirements for certification of a class action: numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). The Bruder Group has made the requisite preliminary showing with respect to Rule 23(a)'s typicality requirement. Cases in the Second Circuit have held that the typicality requirement is met where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brady v. Top Ships Inc.,* 324 F.Supp.3d 335, 350 (E.D.N.Y. 2018) (quoting *In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285, 291 (2d Cir. 1992)). Similar to potential class members, the Bruder Group asserts that they "(1) purchased Plug Power stock during the Class Period; (2) in reliance on Defendants' alleged misrepresentations or omissions; and (3) suffered harm. Dkt. No. 28, Bruder and Slipher Mem. of Law, at pp. 1-2. The Bruder Group, as the movants

- 15 -

with the largest financial interest in this litigation, have therefore preliminarily demonstrated typicality under Rule 23(a).

## IV.    APPOINTMENT OF LEAD COUNSEL

The PSLRA also specifies the procedure to be followed for approving lead counsel in putative class actions brought pursuant to federal securities laws. Under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §§ 77z-1(a)(3)(B)(v), 78u-4(a)(3)(B)(v).  While the selection is not absolute, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice ... if necessary to protect the interests of the class." *Marquez v. Bright Health Grp., Inc.*, 2022 WL 1314812, at *10 (E.D.N.Y. Apr. 26, 2022) (quoting *Rauch v. Vale S.A.*, 378 F.Supp.3d 198, 211 (E.D.N.Y. 2019)).  Here, the Court is persuaded of the competency and skill of Pomerantz LLP by their firm resume; their nationally recognized experience in successfully litigating securities fraud claims; their preparation of the detailed Complaint in this matter, their Motion papers, and the strong oral argument of Attorney Lieberman before this Court.  The Court therefore approves the Bruder Group's selection of Pomerantz LLP to serve as lead counsel.  *Armstrong v. Med. Properties Tr., Inc.,* 2024 WL 3784445, at *5 (S.D.N.Y. Aug. 13, 2024).

## IV.  CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that the Motion of David Bruder and Randy Slipher for Consolidation, appointment as co-lead Plaintiffs, and approval of Pomerantz LLP as lead counsel (Dkt. No 17) is hereby **GRANTED**; and it is further

**ORDERED**, that the Court will sign and docket separately the Bruder Group's Proposed Order (Dkt. No. 17-1) consolidating the related actions, appointing co-lead Plaintiffs, and approving lead counsel; and it is further

**ORDERED,** that the remaining motions for consolidation, appointing lead or co-lead Plaintiff (*Adote* Dkt. Nos. 11, 13, 14, 15, & 16; *Lee* Dkt. No. 12) are hereby **DENIED,** and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

**SO ORDERED**.

Dated:   November 22, 2024
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

- 17 -