UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE PLUG POWER INC. SECURITIES LITIGATION | Case No. 1:24-cv-00406-MAD-DJS |
| | <u>CLASS ACTION</u> |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

OPPOSITION OF DAVID BRUDER AND RANDY SLIPHER TO APPEALS
FROM MAGISTRATE JUDGE'S ORDER APPOINTING LEAD PLAINTIFFS

Court-appointed Lead Plaintiffs David Bruder and Randy Slipher (together, "Bruder and Slipher") respectfully submit this memorandum of law in opposition to the Appeals from the Magistrate Judge's Order appointing Bruder and Slipher as Lead Plaintiffs in the above-captioned action (the "Action") (Dkt. No. 43), respectively filed by (i) Hoa Quoc Vuong and Nancy Vuong (collectively, the "Vuongs") (Dkt. No. 48) and (ii) Scott Keenan and Jose Martinez (collectively, "Keenan and Martinez") (Dkt. No. 49).

## PRELIMINARY STATEMENT

On November 22, 2024, following three rounds of motion briefing and oral argument, the Honorable Daniel J. Stewart, U.S.M.J., entered an Order granting Bruder and Slipher's motion for appointment as Lead Plaintiffs in this consolidated action pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and denying the competing motions respectively filed by the Vuongs and Keenan and Martinez (Dkt. No. 43).  In concluding that Bruder and Slipher met the PSLRA's criteria for appointment as Lead Plaintiffs, Judge Stewart specifically found that: (i) Bruder and Slipher had alleged the "largest financial interest" within the meaning of the PSLRA, assessed in terms of their investment losses in connection with Class Period purchases of Plug Power Inc. ("Plug Power") securities, calculated on a last-in, first-out ("LIFO") basis; and (2) Bruder and Slipher comprised a permissible movant group under the PSLRA, such that their investment losses were appropriately considered in the aggregate. *See id.* at 10-15.

On December 6, 2024, both the Vuongs and Keenan and Martinez filed their Appeals pursuant to Federal Rule of Civil Procedure 72(a) ("Rule 72(a)"), with the Vuongs arguing that Judge Stewart had erred in finding Bruder and Slipher to be an appropriate movant group (*see generally* Dkt. No. 48), and Keenan and Martinez arguing that Judge Stewart had erred in assessing

1

Bruder's and Slipher's losses on a LIFO basis rather than via an alternative methodology proposed by Keenan and Martinez (*see generally* Dkt. No. 49).

As discussed below, neither the Vuongs nor Keenan and Martinez has demonstrated that reversal of any part of Judge Stewart's Order is "clearly erroneous or . . . contrary to law" such that reversal is warranted under Rule 72(a), and the Court should deny both of the Appeals.

## ARGUMENT

### I.    LEGAL STANDARD

Rule 72(a) requires a district judge to "modify or set aside any part of" an order entered by a U.S. Magistrate Judge "that is clearly erroneous or is contrary to law."

> A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.  An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure.

> This standard is highly deferential, as magistrate judges are afforded broad discretion in resolving [non-dispositive motions] and reversal is appropriate only if their discretion is abused.  A court abuses its discretion when its decision rests on an error of law or on a clearly erroneous factual finding, or when its decision— through not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions.

*Walker v. Bellnier*, 17-CV-1008 (GTS/CFH), 2020 WL 7226533, at *2 (N.D.N.Y. Aug. 7, 2020) (internal citations and quotations omitted).  In the context of lead plaintiff motions under the PSLRA, "courts have broad discretion under Rule 23 to determine the adequacy of a proposed lead plaintiff."  *Guo v. Tyson Foods, Inc.*, 21-CV-552 (AMD) (JRC), 2023 WL 3765052, at *2 (E.D.N.Y. June 1, 2023).

### II.    JUDGE STEWART DID NOT ERR IN FINDING BRUDER AND SLIPHER TO BE A PERMISSIBLE MOVANT GROUP UNDER THE PSLRA

Contrary to the Vuongs' insistence, "the overwhelming majority of case law" does ***not*** "hold that unrelated groups of investors" are ineligible to serve as lead plaintiffs in PSLRA actions

2

(Dkt. No. 48-1 at 1), and Judge Stewart's finding that Bruder and Slipher comprised a permissible movant group under the PSLRA was neither clearly erroneous nor contrary to law.

In reaching his conclusion, Judge Stewart's Order relied upon a robust body of apposite Second Circuit case law as summarized in *Cushman v. Fortress Biotech, Inc.*, 20-CV-5767 (KAM), 2021 WL 7449182 (E.D.N.Y. Mar. 24, 2021), correctly finding that "many courts in this Circuit have appointed lead plaintiff groups comprised of individual investors assembled by their lawyers" and that "[c]ourts approve these lead plaintiff groups upon finding other indicia that demonstrate the group's ability to effectively demands of litigation." Dkt. No. 43 at 11 (quoting *Fortress Biotech*, 2021 WL 7449182, at *6). Applying that standard to the facts before the Court, which included a "joint declaration from [Bruder and Slipher] detailing their background, and their readiness to be co-lead plaintiffs in an effective manner[,]" (Dkt. No. 43 at 9), Judge Stewart concluded that Bruder and Slipher "have sufficiently established to the Court . . . [a] workable methodology for proceeding forward in the best interests of the class. In particular, the proposed small group of two sophisticated and substantial investors represents a grouping that is both motivated and manageable." Dkt. No. 43 at 11-12. Moreover, Judge Stewart specifically acknowledged that he duly "considered the concerns expressed by the Vuong sisters regarding *ad hoc* groupings" before "reject[ing]" their "argument to disqualify" Bruder and Slipher. *Id.* Judge Stewart's decision was thus "robust, comprehensive, and adheres to the rigorous procedures set forth by the PSLRA." *Tyson Foods*, 2023 WL 376502, at *3 (denying Rule 72(a) motion seeking reversal of Magistrate Judge's order denying a lead plaintiff motion in a PSLRA action).

In arguing that Judge Stewart "made a clear error" in reaching his conclusions (Dkt. No. 48-1 at 5), the Vuongs wrongly claim that "Magistrate Judge Stewart did not address the fact that [Bruder and Slipher] belatedly filed a boilerplate joint declaration"—that is, that Judge Stewart

3

did not consider either the timing or the contents of the Joint Declaration, both of which the Vuongs consider problematic—when he found Bruder and Slipher to comprise an adequate movant group under the PSLRA.  Yet Judge Stewart expressly *did* consider both the timing and contents of the Joint Declaration.  His Order acknowledged that Bruder and Slipher's Joint Declaration was filed on June 11, 2024, when "additional memoranda were submitted in support of [the movants'] respective motions", rather than with Bruder and Slipher's initial motion papers on May 21, 2024. Dkt. No. 43 at 8-9.  Likewise, his Order plainly considered the contents of the Joint Declaration. As set forth above, Judge Bruder reviewed the Joint Declaration and found that it "detail[ed] [Bruder and Slipher's] background, and their readiness to be co-lead plaintiffs in an effective manner[,]" (Dkt. No. 43 at 9), and that it demonstrated to the Court that Bruder and Slipher comprised a "small group of two sophisticated and substantial investors", the "grouping [of whom] is both motivated and manageable".  *Id.* at 11-12.  The Vuongs cannot credibly claim that Judge Stewart reached his decision without addressing the timing or contents of the Joint Declaration.

Nor did Judge Stewart commit any legal error in declining to find the Joint Declaration to be "boilerplate" and filed "belatedly", as the Vuongs argued.  The Vuongs cite several cases in which courts denied motions by lead plaintiffs movant groups whose members submitted similar joint declarations (*see* Dkt. No. 48-1 at 7), yet in a litany of other cases—cited in Bruder and Slipher's motion papers, as well as in the Court's Order—courts in the Second Circuit found that substantively identical Joint Declarations *were* sufficient to demonstrate a movant group's cohesiveness and adequacy and granted the group's motion.  *See*, *e.g.*, *Fortress Biotech*, 2021 WL 1526172, at *7, aff'd*, 2021 WL 1526172 (E.D.N.Y. Apr. 19, 2021); *In re Sequans Comms. S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 424 (E.D.N.Y. 2018); *Peters v. Jinkosolar Holding Co., Ltd.*, No. 11 Civ. 7133(JPO), 2012 WL 946875, at *7-8 (S.D.N.Y. Mar. 19, 2012); *In re Blue Apron*

*Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017).

"Courts have broad discretion under Rule 23 to determine the adequacy of a proposed lead plaintiff." *Tyson Foods*, 2023 WL 376502, at *2. The Vuongs have at most established that, in exercising that discretion, the courts of the Second Circuit have reached different conclusions regarding the persuasiveness of joint declarations submitted in support of such groups' motions. Judge Stewart's own finding in this respect was thus well within the "range of permissible decisions" under Second Circuit case law. *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

As for the Vuongs' argument as to the timing of the Joint Declaration—*i.e.*, that the Court should not credit it simply because it was filed with Bruder and Slipher's opposition papers, rather than with their initial motion papers—the Vuongs have not cited a single case supporting their position, because "the PSLRA does not require that any such evidence be submitted with the initial motion." *Blue Apron*, 2017 WL 6403513, at *4 (finding adequate and appointing as lead plaintiff movant group that submitted a joint declaration with its opposition papers, finding "the timing of [its] submission [to be] too thin a reed for this decision to turn on.").

Finally, the Vuongs incorrectly claim that "appointing [Bruder and Slipher] as lead plaintiffs would defeat the purposes of the PSLRA", which the Vuongs inaccurately claim "specifically calls for class members"—*i.e.*, individual class members—"with the largest losses to control the litigation." Dkt. No. 48-1 at 8. Not so. As set forth above, the PSLRA—the actual text of which the Vuongs carefully avoid quoting in relevant part—actually provides that the presumptive lead plaintiff is the "person or **group of persons** that", *inter alia*, "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis

5

added).  Both the U.S. Supreme Court and the Ninth Circuit Court of Appeals have expressly affirmed that the PSLRA permits the appointment of investor groups as Co-Lead Plaintiffs.  *See China Agritech, Inc. v. Resh*, 584 U.S. 732, 742 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups."); *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) ("the [PSLRA] expressly allows a 'group of persons' to move for appointment" as lead plaintiff."). Here, Bruder and Slipher are the "group of persons" with the "largest financial interest" in the relief sought by the Class, with investment losses of roughly $675,663 calculated on a LIFO basis. The Vuongs have not so much as argued otherwise, let alone explained how Judge Stewart has "defeated the purposes" of the PSLRA by applying its statutory instructions to the letter.

The Vuongs have thus failed to carry their heavy burden to demonstrate that, in finding Bruder and Slipher to comprise a permissible movant group under the PSLRA, Judge Stewart's Order was either "clearly erroneous" or "contrary to law", as Rule 72(a) requires.

## III.   JUDGE STEWART DID NOT ERR IN HIS FINANCIAL INTEREST DETERMINATIONS

Separately, Keenan and Martinez's Appeal argues that Judge Stewart "disregarded . . . precedent" in calculating the competing movants' investment losses on a LIFO basis and declining to adopt Keenan and Martinez's preferred loss-calculation methodology, which ostensibly derives from loss causation principles articulated in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  Under such a methodology, Keenan and Martinez claim that they, not Bruder and Slipher, have the largest financial interest in this litigation.  *See generally* Dkt. No. 49-1 at 2-4.

Keenan and Martinez are wrong.  In concluding that Bruder and Slipher had alleged the largest financial interest within the meaning of the PSLRA, Judge Stewart duly considered Keenan and Martinez's arguments with respect to "the correct methodology" for determining "what they call 'recoverable loss'" and expressly stated his "disagree[ment]" with their position.  Dkt. No. 43

6

at 14.  Judge Stewart's finding was informed in part by the specific allegations "in this particular case," which involved multiple corrective disclosures revealing the Defendants' alleged fraud, and in part by his skepticism about the sincerity of Keenan and Martinez's position, noting that the duo had "changed their loss methodology throughout the course of Motion practice."  *Id.* at 13-14.

> As an initial point, the changing numbers and methodologies employed by [Keenan and Martinez] is a significant concern for the Court.  As noted by Judge Mann "[p]resenting new methodologies, loss calculations, or substantive allegations only in opposition, after the PSLRA deadline for moving to be appointed lead [p]laintiff has closed, is the type of opportunism that is generally unfavored in appointing lead plaintiffs" and "[t]his fact alone counsels in favor of adopting the LIFO methodology."  *Marquez v. Bright Health Grp., Inc.*, 2022 WL 1314812, at \*6 (E.D.N.Y. Apr. 26, 2022).  Second, and as noted by counsel for both the Vuongs and [Bruder and Slipher], there are not one, but four separate correctives that are at issue in this case, and that mitigates against the proposed [Keenan and Martinez] methodology.

*Id.* at 14.  Judge Stewart's decision to apply a LIFO analysis, the methodology that courts most frequently use to assess financial interest for purposes of lead plaintiff appointment, thus rested upon a "robust" and "comprehensive" assessment of both the facts of the case and the competing movants' arguments (as well as their credibility).  *Tyson Foods*, 2023 WL 3765052, at \*3.  *See also City of Riviera Beach Gen. Emples. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18 Civ 3608, 2019 WL 364570, at \*5 n.8 (S.D.N.Y. Jan. 30, 2019) (acknowledging that courts generally use a LIFO methodology "in assessing loss for purposes of the appointment of lead plaintiff."); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005) (same).

Indeed, Judge Stewart's rejection of Keenan and Martinez's argument was informed in part by the fact that their arguments regarding the appropriate calculation of investment losses changed over the course of motion practice.  First, in their opposition papers, Keenan and Martinez argued that Bruder and Slipher had overstated their losses because they "should have offset their claimed losses by the gains they realized during the Class Period" with respect to certain transactions in

7

Plug Power securities. Dkt. No. 29 at 8. Yet Judge Stewart specifically found that "the Bruder Group has established to the Court's satisfaction . . . that their loss calculations ***did***, in fact, take into account any profits mad during the relevant period, and their numbers were ***not*** in error." Dkt. No. 43 at 14 (emphases added). Then, as Judge Stewart noted, "[i]t was [at] this point"— specifically, at oral argument on the competing motions—"that [Keenan and Martinez] argued that the correct methodology should be based upon what they call 'recoverable loss' which they now interpret to mean any loss [that] occurred after November 9, 2023." *Id.* In finding Keenan and Martinez's "changing numbers and methodologies" to be a "significant concern for the Court[,]" Judge Stewart cited Second Circuit case law describing such changes in position as "'the type of opportunism that is generally unfavored in appointing lead plaintiffs'". *Id.* (quoting *Bright Health*, 2022 WL 1314812, at *6).

Moreover, even if Keenan and Martinez had made these arguments in their opposition brief, there is no authority requiring Judge Stewart to apply the supposedly *Dura*-derived methodology that Keenan and Martinez have belatedly proposed. Rather, "the appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute." *Cook v. Allergn PLC*, 8 Civ. 12089 (CM) *et al.*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (declining to apply *Dura* principles at the lead plaintiff appointment stage). In *Allergn*, the court's analysis noted that application of *Dura*-derived methodologies was particular inapposite for cases—like this one—in which the "allegations of fraud in the complaint suggest that the 'fraud premium' may have varied throughout the Class Period as a result of, *inter alia*, partial corrective disclosures of Allergan's malfeasance." *Id.* Accordingly, the court found "it would be unwise to embrace" a *Dura*-derived methodology "at the expense of . . . considerably more straightforward [LIFO] calculations." *Id.* Here, as in *Allergn*, Judge Stewart found that "there are not one, but

8

*four* separate correctives that are at issue in this case, . . . [which] mitigates against" applying Keenan and Martinez's proposed methodology. Judge Stewart found instead that "the LIFO analysis is appropriate" and, assessing the respective movants' investment losses on this basis, correctly determined that Bruder and Slipher, not Keenan and Martinez, had alleged the largest financial interest among the competing movants. *See* Dkt. No. 43 at 14.

Accordingly, Keenan and Martinez have failed to demonstrate that, in finding that Bruder and Slipher had alleged the "largest financial interest" in this litigation within the meaning of the PSLRA, Judge Stewart's Order was either "clearly erroneous" or "contrary to law", as Rule 72(a) requires.

## CONCLUSION

As discussed above, Judge Stewart's Order was "robust, comprehensive, and adhered to the rigorous procedures set forth by the PSLRA", *Tyson Foods*, 2023 WL 3765052, at *3, and it plainly falls within the "range of permissible decisions" regarding both the appointment of Lead Plaintiff movant groups and the calculation of their financial interest. *Zervos*, 252 F.3d at 169. Neither the Vuongs nor Keenan and Martinez have carried their heavy burdens to demonstrate that reversal of any part of Judge Stewart's Order is warranted under Rule 72(a).

For the foregoing reasons, Bruder and Slipher respectfully request that the Court issue an Order denying the Appeals respectively filed by (i) the Vuongs and (ii) Keenan and Martinez.

Dated: December 20, 2024        Respectfully submitted,

POMERANTZ LLP

*/s/ J. Alexander Hood II*
J. Alexander Hood II (Bar Number: 700865)
Jeremy A. Lieberman (Bar Number: 700864)
Tamar A. Weinrib (Bar Number: 705932)
600 Third Avenue, 20th Floor
New York, New York 10016

9

Telephone: (212) 661-1100
Facsimile: (917) 463-1044
ahood@pomlaw.com
jalieberman@pomlaw.com
taweinrib@pomlaw.com

*Counsel for Lead Plaintiffs David Bruder and
Randy Slipher and Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for David Bruder*

**PROOF OF SERVICE**

I hereby certify that on December 20, 2024, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ J. Alexander Hood II*
J. Alexander Hood II

11