# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
ARMAND EVANGELISTA,                     :

                                     :

                Plaintiff,   :

                                     :         <u>MEMORANDUM AND ORDER</u>

      -against-              :

                                     :        24-CV-5292 (KAM)(MMH)

LATE STAGE ASSET MANAGEMENT,     :
LLC, *et al.*,                    :

                                     :

                  Defendants.  :
-------------------------------------------------------------- x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff Armand Evangelista ("Evangelista"), on behalf of himself and other similarly situated investors in Defendant Late Stage Asset Management, LLC ("Late Stage"), brought this securities class action against Late Stage and others, alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* (the "PSLRA"), the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77a *et seq.*, and related regulations. (*See generally* Compl., ECF No. 1.)[1] Plaintiff alleges that Late Stage and its co-defendants fraudulently offered and sold retail investors purportedly "no-fee" unregistered securities through Late Stage's investment funds that included equity interests in private companies before these companies went public ("pre-IPO shares"). (*Id*. ¶ 2.)

Before the Court are the competing motions of co-movants Jack Dean Pitman, Stephen Stewart, and Adam Uttley (collectively, the "Investor Group") and Evangelista to be appointed

---

[1] All citations to documents filed on ECF refer to the ECF document number and pagination "____ of ___" unless otherwise indicated.

as lead plaintiff—and their respective attorneys as lead counsel—pursuant to Section 27(a)(3) of the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D(a)(3) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA. (Inv. Grp. Mot., ECF No. 8; Evangelista Mot., ECF No. 10.) For the reasons stated below, the Investor Group's motion is **granted in part and denied in part**; Pitman is appointed sole lead plaintiff, and The Rosen Law Firm, P.A. ("Rosen Law") is appointed lead counsel. Evangelista's motion is **denied**.

## I.   BACKGROUND[2]

### A.   The Parties

Late Stage is a Delaware limited liability company formed in 2015 that maintained private investment funds (the "Late Stage Funds"), and never registered with the Securities and Exchange Commission ("SEC"). (Compl., ECF No. ¶ 10.) Defendants Prior 2 IPO Inc. ("Prior 2 IPO") and Pre IPO Marketing Inc. ("Pre IPO Marketing") formed in 2017 (New Jersey) and 2018 (New York), respectively, and solicited investors for pre-IPO investments through the Late Stage Funds. (Id. ¶¶ 11–12.) Similarly, Defendant JL Rivera Enterprises ("JLRE"), a New York corporation, operated as a branch office for Late Stage and solicited investors. (Id. 13.) Defendant Capital Truth Holdings LLC ("Capital Truth") held the shares of pre-IPO companies out of which the Late Stage Funds offered investments. (See id. ¶ 16.) Evangelista invested in pre-IPO shares through Late Stage. (Id. ¶ 9.)

Defendant Raymond J. Pirrello, Jr. ("Pirrello") was a founder and owner of Prior2IPO, an unofficial founder of Late Stage, and owned Defendant Valeo Capital Corporation ("Valeo Capital"). (Id. ¶¶ 14, 19.) Pirrello also founded and was a major shareholder in Defendant

---

[2] The facts are taken from the Complaint and are assumed to be true for the purposes of this motion.

Green Life Farms, Inc., which purportedly used hydroponic growing techniques to grow vegetables. (*Id.* ¶ 17.) From 1996 to 2016, Pirrello was a registered representative associated with various SEC-registered broker-dealers. (*Id.* ¶ 36.) In 2019, a jury found Pirrello liable for insider trading, in violation of the Exchange Act, and the SEC barred him from associating with brokers and other securities professionals, among other restrictions. (*Id.* ¶ 37.)

The remaining individual defendants partnered with Pirrello and/or his businesses. Defendant Marcello Follano was a co-founder, Managing Partner, and President of Late Stage and the Late Stage Funds and owned Defendant Vero Enterprise Holdings LLC ("Vero Enterprise"). (*Id.* ¶¶ 15, 20.) Defendant John Nittolo was a fund manager at Late Stage. (*Id.* ¶ 21.) Defendant Joshua Cilano was the President and Managing Member of Capital Truth. (*Id.* ¶ 22.) Defendants Robert Cassino and Anthony Ditucci co-owned Pre IPO Marketing, and Defendant Joseph Rivera owned JLRE. (*Id.* ¶¶ 23–25.) Defendant Jean Halle, also known as John Halle, was the Chairman and CEO of Green Life Farms and Defendants Earth to Energy, Inc. and its affiliate American Biocarbon, LLC (collectively, "Earth to Energy"), private companies that used plant waste products to produce a soil supplement. (*Id.* ¶¶ 18, 26.)[3]

### B. The Alleged Investment Scheme

From at least March 2019 through March 2023, individual Defendants Pirrello, Follano, Nittolo, Cassino, Ditucci, Rivera, Cilano and corporate Defendants Late Stage, Prior2IPO, Pre IPO Marketing, JLRE, Valeo Capital, Vero Enterprise, Capital Truth, Earth to Energy, and Green Life Farms (these individual and corporate Defendants collectively, the "Scheme

---

[3] As of March 2019, Follano, Cassino, Ditucci, and Rivera were not licensed or registered with the SEC. (*See* Compl., ECF No. 1 ¶¶ 20, 23–25.)

Defendants") operated a "boiler room" scheme with a network of sales offices across the country that fraudulently solicited investors to invest in pre-IPO shares offered through the Late Stage Funds.  (*See* Compl., ECF No. 1 ¶¶ 39, 100–110.)  Under the scheme, Late Stage acquired rights to shares in pre-IPO companies through its affiliate Capital Truth and operated as "the central investment center" that offered unregistered shares of pre-IPO companies.  (*See id.* ¶ 40.)  Pirrello controlled the sales efforts for Late Stage through Prior2IPO and its affiliates Pre IPO Marketing and JLRE by, for example, directing Prior2IPO agents to falsely inform investors that there were no upfront fees, to avoid mentioning commissions, and to portray themselves as "marketers."  (*See id.* ¶¶ 40–41, 48.)  The false statements were included in investor calls, letters to and agreements with investors, social media posts, and websites.  (*See id.* ¶¶ 42, 48–60.)

The Offering Defendants, consisting of a subset of the Scheme Defendants,[4] bought pre-IPO shares for less than their stated investment value and charged a substantial markup.  (*Id.* ¶ 42.)  Late Stage received the funds and transferred them to Capital Truth, who distributed the markup to the Offering Defendants.  (*Id.* ¶¶ 43–44.)  Capital Truth paid Vero Enterprise for Follano, and Valeo Capital for Pirrello; Pirrello then paid the remaining Offering Defendants volume-based commissions.  (*Id.* ¶ 44.)  Evangelista alleges that the Offering Defendants received over $119 million in undisclosed markups from Late Stage investors.  (*See id.* ¶¶ 3, 45.)

---

[4] The Offering Defendants are Pirrello, Follano, Nittolo, Cassino, Ditucci, Rivera, Prior2IPO, Late Stage, Pre IPO Marketing, and JLRE.  (*See* Compl., ECF No. 1 ¶ 29.)

The Offering Defendants falsely implied credibility by claiming affiliation with well-known companies, such as Marqeta and Instacart.  (*See id.* ¶¶ 78–80.)   After investors purchased pre-IPO shares of these companies, the Offering Defendants marketed more obscure companies like Green Life Farms and Earth to Energy as companies on the verge of IPOs. (*See id.* ¶ 81.)   However, despite selling pre-IPO shares of Instacart, Late Stage failed to transfer Instacart shares to investors after Instacart's public offering.  (*See id.* ¶¶ 74–77.)  The Offering Defendants also misrepresented that they were unaffiliated with Green Life Farms and Earth to Energy.  (*See id.* ¶¶ 5, 85–87.)  Neither company has ever conducted an IPO and investors have not received any return on their investments in these companies.  (*See id.* ¶¶ 80–88.)  Finally, Pirrello's partners deliberately omitted his name and history of insider trading from documents related to Late Stage Funds and their sales of unregistered securities.  (*See id.* ¶ 67.)

Plaintiff alleges that he and the class members reasonably relied on Defendants' false statements and omissions and that these statements were material to their decisions to purchase pre-IPO shares through Late Stage.  (*See id.* ¶¶ 95–96.)  The Complaint alleges that Plaintiff and the class were damaged by: "(i) the loss in value on various Pre-IPO shares that were sold to investors at artificially inflated prices, (ii) Late Stage's failure to deliver investors' shares in companies that actually went public through IPOs, (iii) their inducement to invest in potentially worthless companies affiliated with convicted fraudsters, and (iv) the millions of dollars stolen in undisclosed markup fees."  (*Id.* ¶ 98.)

**C.      Procedural History**

Evangelista filed this action on July 29, 2024, seeking to recover compensable and rescissory damages caused by Defendants' alleged violations of the Securities Act and the

5

Exchange Act. (*See generally id.*)  The purported class consists of "the other investors in Late Stage who were harmed by Defendants' actions" alleged in the Complaint, excluding Defendants and their immediate family members.  (*Id.* ¶ 111.)  On August 1, 2024, notice for the class action was posted on *PRNewswire*.  (Schirripa Decl. Ex. A (*PRNewswire* Article), ECF No. 12-1.)

Thereafter, on September 30, 2024, one individual and one group of putative class members moved to be appointed as lead plaintiff(s) and for the Court to approve their chosen counsel as lead counsel: (1) Evangelista and his counsel Hach Rose Schirripa & Cheverie LLP (ECF Nos. 10–12); and (2) the Investor Group and its counsel Rosen Law (ECF Nos. 8–9). On October 15, 2024, Evangelista and the Investor Group filed oppositions to each other's motions.  (ECF Nos. 13–15.)

## II.    DISCUSSION

### A.    Appointment of Lead Plaintiff

The PSLRA directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members" in securities class actions.   15 U.S.C. § 78u-4(a)(3)(B)(i).  Congress, in enacting the PSLRA, sought to "prevent lawyer-driven litigation, and to ensure that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel."   *Somogyi v. Organogenesis Holdings Inc.*, No. 21-CV-6845 (DG)(MMH), 2022 WL 3654646, at *2 (E.D.N.Y. Aug. 25, 2022) (citation omitted).

In determining which individual or group is best suited to serve as lead plaintiff(s), courts adopt a two-step inquiry. *Darish v. N. Dynasty Minerals Ltd.*, Nos. 20-CV-5917 (ENV)(RLM) & 20-CV-6126 (ENV)(RLM), 2021 WL 1026567, at *5 (E.D.N.Y. Mar. 17, 2021); *see also David v. Brit. Am. Tobacco P.L.C.*, No. 24-CV-517 (AMD)(MMH), 2024 WL 4351311, at *3 (E.D.N.Y. Sept. 30, 2024). First, the PSLRA establishes a rebuttable presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Second, if the court is satisfied that there is a presumptively adequate lead plaintiff, it may then determine whether this presumption of adequacy has been rebutted "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u–4(a)(3)(B)(iii)(II).

### 1. Notice and Timely Filing

Under the PSLRA, a plaintiff who files a securities class action must publish:

> in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported class—(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

*Id.* § 78u-4(a)(3)(A)(i). Even though no movant has objected to the adequacy of the notice in this case, "in deciding a motion for the appointment of lead plaintiff under the PSLRA, courts have an independent duty to scrutinize the published notice and ensure that the notice comports

with the objectives of the PSLRA." *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886 (LDH)(SJB), 2020 WL 8225336, at *3 (E.D.N.Y. Dec. 22, 2020) (citing *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05-CV-1898 (SAS), 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005)).

The Court finds that the published notice meets the PSLRA's requirements. The notice was filed in *PRNewswire* on August 1, 2024, three days after the Complaint was filed. (Schirripa Decl. Ex. A (*PRNewswire* Article), ECF No. 12-1 at 2–3.) The notice summarizes the allegations in the Complaint, defines the relevant class period, and advises any potential lead plaintiffs to "move the Court no later than September 30, 2024." (*Id.* at 3.) Courts in this circuit have found that publication of the required notice in *PRNewswire* serves as sufficient notice for the purposes of the PSLRA. *See, e.g.*, *Hiebert v. Virtu Fin., Inc.*, No. 23-CV-3770 (NGG)(PK), 2023 WL 8096927, at *2 n.5 (E.D.N.Y. Nov. 21, 2023); *Gloster v. Standard Lithium Ltd.*, No. 22-CIV-507 (EK)(VMS), 2022 WL 22910716, at *3 (E.D.N.Y. Apr. 27, 2022); *City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2019 WL 364570, at *5 (S.D.N.Y. Jan. 30, 2019) (noting that *PRNewswire* is "a widely-circulated national business-oriented wire service"). Further, both Evangelista and the Investor Group filed the instant motions by the relevant deadline, September 30, 2024, in response to the notice. 15 U.S.C. § 78u-4(a)(3)(A)(i); *Chitturi*, 2020 WL 8225336, at *3.

Accordingly, the Court finds that publication of the notice is sufficient, and that movants' applications are timely.

### 2. Largest Financial Interest

The Investor Group, consisting of three individuals, seeks to be named lead Plaintiff based on its alleged largest financial interest, which Evangelista opposes. (*See* Inv. Grp. Mem.,

8

ECF No. 9 at 2; Evangelista Opp., ECF No. 14 at 9–10.) The Court first considers whether the Investor Group's members have properly aggregated their shares to claim the largest financial interest.

### a. Aggregation

"Where a group of investors seeks appointment as lead plaintiff[,] '[t]he overarching concern is whether the related members of the group can function cohesively and effectively manage the litigation apart from their lawyers.'" *Tan v. NIO Inc.*, No. 19-CV-1424 (NGG)(VMS), 2020 WL 1031489, at *3 (E.D.N.Y. Mar. 3, 2020) (quoting *Int'l Union of Operating Eng'rs Loc. No. 478 Pension Fund v. FXCM, Inc.*, No. 15-CV-3599 (KMW), 2015 WL 7018024, at *2 (S.D.N.Y. Nov. 12, 2015)). In deciding whether to allow a group of individual shareholders to be appointed as lead plaintiff, courts consider "(1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa." *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 345 (E.D.N.Y. 2018) (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). "The proposed plaintiff group bears the burden of proving aggregation is appropriate." *May v. Barclays PLC*, No. 23-CV-2583 (LJL), 2023 WL 5950689, at *9 (S.D.N.Y. Sept. 13, 2023) (citing *Nakamura v. BRF S.A.*, No. 18-CV-2213 (PKC), 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018)).

9

Applying the *Varghese* factors, the Court finds that the Investor Group fails to satisfy its burden to establish that aggregation is proper.[5]  *First*, "like many similar declarations that courts have found insufficient," the Investor Group's "Joint Declaration does not provide any information regarding how these apparent strangers from different states found each other." *Tan*, 2020 WL 1031489 at *4 (internal quotation marks and alteration omitted).  Instead, the joint declaration states that Pitman lives in North Carolina, while Stewart and Uttley live in California.  (Joint Decl., ECF No. 9-4 ¶¶ 2–4.)  Nothing in the record supports a finding that the members of the Investor Group knew or communicated with each other before seeking lead plaintiff status in this action.

*Second*, "[v]ague discussions of general communication protocols . . . do little to show the group['s] involvement in the litigation." *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019).  Though the joint declaration states that the three Investor Group members "have discussed the requirements and responsibilities of being lead plaintiff with counsel" and "understand that it is [their] responsibility to keep informed regarding the status and progress of this action," there is no evidence that the three members have actually discussed the instant litigation with each other or have had anything other than cursory involvement in the case.  (Joint Decl., ECF No. 9-4 ¶ 5.)

*Third*, the Investor Group's "boilerplate assurances are 'insufficient proof that a group of unrelated investors will be able to effectively manage the litigation." *Jakobsen v. Aphria, Inc.*, No. 18-CIV-11376 (GBD), 2019 WL 1522598 (S.D.N.Y. Mar. 27, 2019) (quoting *Int'l*

---

[5] As to the fourth *Varghese* factor, the Investor Group establishes its members' sophistication: each is a long-time investor with advanced professional degrees, licenses (Uttley), and accounting and business experience (Stewart, Uttley).  (*See* Joint Decl., ECF No. 9-4 ¶¶ 2–4.)

10

*Union of Operating Eng'rs* , 2015 WL 7018024, at *4)).  While the Investor Group "does not anticipate that any disagreements will arise" between its members and have a "shared interest in prosecuting the case in a collaborative and likeminded manner" (Joint Decl., ECF No. 9-4 ¶¶ 7, 11), that is not sufficient given their lack of a prior relationship.  *See Tan*, 2020 WL 1031489 at *4 ("'[C]ourts have typically required that plaintiffs lacking [a pre-litigation] relationship present a more compelling showing that they will be able to work cohesively for the benefit of the class.") (quoting *Jakobsen*, 2019 WL 1522598, at *3 (quoting in turn *Elstein v. Netl UEPS Techs., Inc.*, No. 14-CV-9100 (ER), 2014 WL 3687277, at *5 (S.D.N.Y. July 23, 2014))).

*Finally*, the Investor Group does not state whether it chose its counsel and not vice versa.  A stronger inference is that counsel chose the investors: more than three months before the Investor Group's motion, their New York-based counsel Rosen Law issued nearly 30 press releases soliciting potential plaintiffs for this action.  (*See* Baylet Decl. Ex. A, ECF No. 15-1.)[6]  "While the language of the PSLRA permits a 'group of persons' to be appointed as lead plaintiff, it is a long-standing rule in this and other circuits that 'pastiche plaintiffs whose grouping appears to be solely the product of the litigation' are generally not suitable to serve as lead plaintiff." *Tan*, 2020 WL 1031489, at *3 (quoting *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015)).

Accordingly, the Court concludes that aggregation of the Investor Group's losses is not appropriate.

---

[6] The Schall Law Firm, characterized as "additional counsel" for the class (*see* Inv. Grp. Mot., ECF No. 8 at 3), also issued nearly a dozen press releases during the same period.  (*See* Baylet Decl. Ex. A, ECF No. 15-1.)

### b.    Individual Interests

Although the Court declines to appoint the Investor Group as Lead Plaintiff, the Court may consider its individual members as potential lead plaintiffs.[7]  *See, e.g.*, *Berdeaux v. Onecoin Ltd.*, No. 19-CV-4074 (VEC), 2019 WL 3815147, at *1 (S.D.N.Y. July 11, 2019) (after rejecting aggregation, considering one group member as lead plaintiff individually); *Kniffin*, 379 F. Supp. 3d at 265 (noting "the longstanding practice in this district of considering the largest shareholder of a rejected group 'as if he had moved to be appointed as lead plaintiff alone'") (citing *Varghese*, 589 F. Supp. 2d at 394); *accord City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc.*, No. 19-CV-5530 (FB)(RLM), 2019 WL 13167890, at *5 (E.D.N.Y. Dec. 23, 2019) ("[E]ven if this Court were to uncouple the [proposed lead plaintiff group], one of its members would nonetheless have the largest financial interest within the meaning of the PSLRA.").

To do so, the Court considers the second requirement to support the most adequate plaintiff presumption: whether the movant "in the determination of the court, has the largest financial interest in the relief sought by the class[.]"  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). While the PSLRA does not enumerate the factors courts must consider when assessing whether a movant has the largest financial interest, courts in this circuit generally look to:

> (1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received

---

[7] Evangelista argues that no individual member of the Investor Group should be considered as a lead plaintiff because none of them moved to be considered individually as lead plaintiffs. (*See* Evangelista Opp., ECF No. 14 at 14 n.12.)  However, the Investor Group made this request in their opposition to Evangelista's motion. (*See* Inv. Grp. Opp., ECF No. 13 at 9.)

for the sale of shares during the class period); and (4) the approximate losses suffered.

*Yang v. Trust for Advised Portfolios*, No. 21-CV-1047 (FB)(MMH), 2022 WL 970772, at *3 (E.D.N.Y. Mar. 31, 2022) (quoting *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 112 (E.D.N.Y. 2012)). "Most crucial to the Court's determination is the fourth factor—the approximate financial loss suffered." *Parot v. Clarivate Plc*, No. 22-CV-1371 (ARR)(RLM), 2022 WL 1568735, at *5 (E.D.N.Y. May 18, 2022); *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, No. 22-CV-9174 (JPC)(SLC), 2023 WL 1879525, at *3 (S.D.N.Y. Feb. 10, 2023) ("[C]ourts have consistently held that the fourth [factor], the magnitude of the loss suffered, is most significant.") (citation omitted).

The Court finds that Pitman has the largest financial interest in the litigation. Pitman alleges that, during the relevant period, he purchased 404,742 shares of pre-IPO companies and incurred approximately $2,320,371.42 in losses as a result of Defendants' alleged acts, misrepresentations and/or omissions, as set forth in Table 1 below:

*Table 1: Pitman Loss Chart*

| Pre-IPO Company | Dates Purchased[8] | Total Pre-IPO Shares | Total Losses |
|---|---|---|---|
| Uber Technologies, Inc. | 03/15/2019 | 500 | $32,500 |
| Addepar, Inc. | 11/13/2019, 11/26/2019, 12/18/2019 | 120,000 | $300,000 |
| Green Life Farms | 02/19/2020, 03/26/2020, 04/10/2020, 05/04/2020, 05/29/2020 | 150,000 | $600,000 |
| Palantir Technologies, Inc. | 04/12/2020, 06/23/2020 | 41,000 | $317,500 |
| Social Finance, Inc. | 11/23/2020, 12/21/2020 | 50,742 | $598,871.42 |
| Marqeta | 03/01/2021 | 2,500 | $97,500 |
| Triller | 06/11/2021 | 8,000 | $100,000 |
| Orbital Insight | 08/24/2021 | 24,000 | $120,000 |
| Tanium | 09/10/2021 | 8,000 | $154,000 |

(*See* Inv. Grp. Mem., ECF No. 9 at 5; Loss Chart, ECF No. 9-3 at 2.) By contrast, Evangelista purchased only 24,812 shares (approximately 6% of Pitman's purchases) and claims only $380,995.00 in net losses, set forth in Table 2 below:

*Table 2: Evangelista Loss Chart*

| Pre-IPO Company | Dates Purchased[9] | Total Pre-IPO Shares | Total Losses |
|---|---|---|---|
| Marqeta | 02/25/2021 | 650 | $25,350 |
| Instacart | 02/25/2021 | 80 | $10,000 |
| Green Life Farms | 02/26/2021, 09/21/2021 | 18,367 | $250,202 |
| Earth to Energy | 03/10/2021 | 5,715 | $100,012.50 |
| Marqeta – sale | 11/03/2022 | (650) | ($4,569.50) |

(*See* Compl. Ex. A, ECF No. 1-2 at 3.)

---

[8] Pitman purchased pre-IPO shares at various prices on the relevant purchase dates.

[9] Evangelista also purchased pre-IPO shares at various prices on the relevant purchase dates, and includes in his calculations the sale of 650 shares of Marqeta for net shares of 24,162 and a gain of $4,569.50. (*See* Compl. Ex. A, ECF No. 1-2 at 3.)

14

Accordingly, the Court finds that Pitman has the largest financial interest in the litigation of any putative lead plaintiff.

### 3. Rule 23 Requirements

The Court must also determine whether the proposed lead plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc); *see Darish*, 2021 WL 1026567 at *6. "In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied." *Yang*, 2022 WL 970772, at *3 (quoting *Chitturi*, 2020 WL 8225336, at *5); *see also Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 30 (E.D.N.Y. 2019) (noting a requirement of "only . . . a preliminary showing of typicality and adequacy at this stage of the litigation") (internal quotation marks omitted).

"'Lead plaintiffs' claims are typical where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *David*, 2024 WL 4351311, at *5 (quoting *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-CV-4420 (PAE), 2020 WL 5548856, at *5 (S.D.N.Y. Sept. 16, 2020)). "Courts in this circuit have clarified, however, that a lead plaintiff's claims need not be identical to the claims of the class, and that similarity of legal theory may control even in the face of differences of fact." *Brady*, 324 F. Supp. 3d at 350 (internal quotation marks omitted). Pitman meets this requirement because he alleges that, like all members of the purported class, his claims arise from purchasing unregistered pre-IPO securities from Defendants during the class period based on Defendants' material misrepresentations and omissions. (*See* Inv. Grp. Mem., ECF No. 9 at 6.) "That 'is all that is required to demonstrate typicality at this stage.'"

15

*In re Hebron Tech. Co.*, 2020 WL 5548856, at *5 (quoting *In re Petrobas Sec. Litig.*, 104 F. Supp. 3d 618, 624 (S.D.N.Y. 2015)).

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the [proposed lead plaintiff and] class [have] a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Yang*, 2022 WL 970772, at *4 (alterations in original) (quoting *Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-864 (SLT)(RER), 2011 WL 3511057, at *4 (E.D.N.Y. May 31, 2011), *adopted by* 2011 WL 3511045 (E.D.N.Y. Aug. 10, 2011)).

Pitman also meets the adequacy standard. First, Pitman's selected counsel, Rosen Law, has demonstrated that it is qualified and has substantial experience litigating securities fraud cases and serving as lead counsel. (*See* Inv. Grp. Mem. Ex. 5, ECF No. 9-5 at 19–23 (listing multiple securities class action cases in which Rosen Law is currently serving as lead counsel).) Second, "there is no reason to believe that [Pitman's] claims would be subject to any unique defenses" that would make his interests antagonistic to the interests of other class members. *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 362–63 (S.D.N.Y. 2019). Third, Pitman, a sophisticated investor, indicates his willingness to serve as a representative for the class. (*See* Inv. Grp. Mem. Ex. 2, ECF No. 9-2 at 1.) Finally, because Pitman has the largest financial stake in the outcome of this litigation, he will be motivated to vigorously pursue recovery on behalf of all class members. *See Atanasio*, 331 F.R.D. at 30. Pitman has made a sufficient showing at this stage of his adequacy to represent the proposed class.

Therefore, because Pitman has the largest financial interest and satisfies the PSLRA

Rule 23 requirements, he is entitled to the PSLRA rebuttable presumption as the most adequate

lead plaintiff. *Id.* at 30–31.

### 4. Rebuttal of the Presumption

The presumption in favor of the most adequate plaintiff "may be rebutted only upon

proof by a member of the purported plaintiff class that the presumptively most adequate

plaintiff—(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject

to unique defenses that render such plaintiff incapable of adequately representing the class."

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Glick v. Arqit Quantum Inc.*, 666 F. Supp. 3d 222, 231

(E.D.N.Y. 2023).

Evangelista primarily argues that Pitman (as part of the Investor Group) will not protect

the interests of the class because Pitman fails to account for any gains from sales of shares or

the shares' post-IPO valuation, rendering his loss calculations deficient. (*See* Evangelista

Opp., ECF No. 14 at 15–16, 18.)[10] He also submits that Pitman may have earned net profits if

he had sold his post-IPO shares at their peak market prices, notwithstanding the losses he

suffered through Defendants' fraudulent scheme. (*See id.* at 16; Baylet Decl. Ex. B, ECF No.

15-2 at 2 (listing Pitman's "alternative" loss calculations).)

The record does not support Evangelista's inferences. Pitman certifies only that he

purchased pre-IPO shares, despite the certification's section allowing him to include sales of

those securities. (*See* Inv. Grp. Mem. Ex. 2, ECF No. 9-2 at 2–4.) Evangelista's assumptions

---

[10] The Court does not address Evangelista's other argument that the "lawyer driven construction of the [Investor Group]" will not adequately represent absent class members (Evangelista Opp., ECF No. 14 at 19) because only Pitman is designated as the presumptive lead plaintiff (*see* § II.A.2., *supra*).

regarding Pitman's ability to "time the market" and sell the public shares at their highest price are speculative at best, and therefore insufficient to rebut Pitman's status as presumptive lead plaintiff.  *Accord Schaffer v. Horizon Pharma Plc*, No. 16-CIV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) ("[T]o rebut the presumption in favor of the movant with the greatest financial loss, there must be 'proof' of a *non-speculative* risk that the movant will not be adequate.") (emphasis added).

Moreover, even assuming some transactions were not included, Pitman has not created "a material error which strikes at the heart of the PSLRA analysis." (*See* Evangelista Opp., ECF No. 14 at 18 (citing *Karp v. Diebold Nixdorf, Inc.*, No. 19-CIV-6180 (LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019), *adhered to on reconsideration,* No. 19-CIV-6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019), *Rodriguez v. DraftKings Inc.*, Nos. 21-CIV-5739 (PAE) & 21-CIV-6497 (PAE), 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021), and *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019).)  In *Karp*, the court rejected one group of proposed movants as lead plaintiffs because, *inter alia*, they inaccurately double-counted some securities transactions in calculating their losses. *See Karp*, 2019 WL 5587148 at *2, *6.  As noted, Pitman correctly calculated the total number of shares he purchased during the class period (404,742), which far exceeds Evangelista's (24,812). (*See* § II.A.2.b., *supra*.)  Evangelista does not and cannot dispute that he never purchased more pre-IPO shares than Pitman during the relevant period.  In *Rodriguez*, the court found "the slovenliness" of a movant's PSLRA certification "relevant and concerning" because it, *inter alia*, "overstate[d] and cloud[ed] his losses," but also found that the movant's frequent short selling and day trading exposed him to unique defenses that undermined his potential class members' interests. *See Rodriguez*, 2021 WL 5282006, at *5–

6, *10–11.  Here, Evangelista offers no evidence that Pitman is subject to unique defenses that would prevent him from advancing the class's interests.  And the court in *Plaut* disqualified one movant as lead plaintiff because he erred in his certification *and* he belatedly filed an amended complaint 20 days after the deadline for motions to serve as lead plaintiff.  *Plaut*, 2019 WL 4512774, at *5.  Pitman suffers no similar procedural infirmities in this action.

In sum, Evangelista has not submitted sufficient evidence to rebut the presumption that Pitman is the most adequate plaintiff.

## B.       Approval of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  "The lead plaintiff's right to select and retain counsel is not absolute."  *Glick*, 666 F. Supp. 3d at 233 (citation omitted).  However, "[t]he Court generally defers to the plaintiff's choice of counsel, and will only reject the plaintiff's choice . . . if necessary to protect the interests of the class."  *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 211 (E.D.N.Y. 2019); *see also Brady*, 324 F. Supp. 3d at 352 ("Courts have correctly found that the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (internal quotation marks omitted).  "In assessing a plaintiff's selection and retention to represent a purported class, courts give significant weight to counsel's experience."  *Darish*, 2021 WL 1026567, at *8; *see also Varghese*, 589 F. Supp. 2d at 398 (approving lead counsel selection where the firm had "extensive experience in prosecuting securities fraud actions").

Pitman, through the Investor Group, argues that Rosen Law "has an extensive history of bringing significant recoveries to investors and is experienced in the area of securities

litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation." (Inv. Grp. Mem., ECF No. 9 at 8; *see also* Inv. Grp. Mem. Ex. 5, ECF No. 9-5 (Rosen Law's detailed resume containing biographies of its attorneys and the firm's experience with securities class actions).) Accordingly, "[t]his Court concludes, as have other courts in this Circuit, that based on the firm's experience, The Rosen Law Firm, P.A. is qualified to serve as lead counsel in securities law cases." *Sanchez v. Arrival SA*, No. 22-CV-172 (DG)(RLM), 2022 WL 20539729, at \*9 (E.D.N.Y. Apr. 15, 2022) (collecting cases and appointing Rosen Law as lead counsel in Exchange Act class action). The Court therefore approves Pitman's selection of Rosen Law as lead plaintiff's counsel.

## III.    CONCLUSION

For the foregoing reasons, the Investor Group's motion at ECF No. 8 is **granted in part and denied in part**; Pitman is appointed sole lead plaintiff, and The Rosen Law Firm, P.A. is appointed lead counsel. Evangelista's motion at ECF No. 10 is **denied**.

**SO ORDERED.**

Brooklyn, New York
May 28, 2025

 /s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge

20