UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ETE ADOTE, Individually and on Behalf
of All Others Similarly Situated,

                                 Plaintiff,

        vs.                                                    1:24-CV-0406
                                                               (MAD/DJS)

PLUG POWER INC., ANDREW MARSH,
and PAUL B. MIDDLETON,

                                 Defendants.

_____

APPEARANCES:                             OF COUNSEL:

POMERANTZ LLP                            JEREMY A. LIEBERMAN, ESQ.
600 Third Avenue, 20th Floor             JOSEPH A. HOOD, II, ESQ.
New York, New York 10016                 TAMAR A. WEINRIB, ESQ.
Attorneys for Plaintiff Ete Adote, and
Co-Lead Plaintiffs David Bruder and
Randy Slipher

THE ROSEN LAW FIRM, P.A.                 PHILLIP KIM, ESQ.
275 Madison Avenue, 40th Floor
New York, New York 10016
Attorney for Hoa Quoc Vuong and
Nancy Vuong

PAWAR LAW GROUP P.C.                     VIKRANT PAWAR, ESQ.
20 Vesey Street, Suite 1410
New York, New York 10007
Attorney for Hoa Quoc Vuong and
Nancy Vuong

LEVI & KORSINSKY, LLP                    GREGORY M. NESPOLE, ESQ.
33 Whitehall Street, 17th Floor          ADAM M. APTON, ESQ.
New York, New York 10004
Attorneys for Scott Keenan and
Jose Martinez

Mae A. D'Agostino, U.S. District Judge:

1

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On November 22, 2024, following multiple rounds of motion briefing and oral argument, Magistrate Judge Daniel J. Stewart granted co-lead Plaintiffs David Bruder and Randy Slipher's (collectively, the "Bruder Group") motion for consolidation, appointment as co-lead Plaintiffs, and approval of Pomerantz LLP as lead counsel, which was brought pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* Dkt. No. 43. Magistrate Judge Stewart consequently denied competing motions filed by, *inter alia*, Hoa Quoc Vuong and Nancy Vuong (collectively, the "Vuongs") and Scott Keenan and Jose Martinez (collectively, the "Martinez Group"). *See id.* Presently before the Court are the Vuongs' and the Martinez Group's objections to Magistrate Judge Stewart's decision, to the extent the Bruder Group was appointed co-lead Plaintiffs, Pomerantz LLP was confirmed as lead counsel, and the Vuongs' and Martinez Group's respective motions to be appointed lead plaintiffs were denied. *See* Dkt. Nos. 48, 49. For the reasons stated below, the Vuongs' and the Martinez Group's motions are denied.

**II. BACKGROUND**

The Court assumes the parties' familiarity with the background of this action, which is detailed in Magistrate Judge Stewart's comprehensive Memorandum-Decision and Order and will not be repeated here. *See* Dkt. No. 43 at 3-4.

**III. DISCUSSION**

**A.    Legal Standard**

"A magistrate judge's decision to grant or deny a motion to appoint lead plaintiff or approve lead counsel is non-dispositive." *Guo v. Tyson Foods, Inc.*, No. 21-CV-552, 2023 WL

2

3765052, *2 (E.D.N.Y. June 1, 2023).  Thus, the Court reviews Magistrate Judge Stewart's

Memorandum-Decision and Order under the standards contemplated by Rule 72(a) of the Federal

Rules of Civil Procedure.

Under Rule 72(a), a district judge reviewing a magistrate judge's order on a non-

dispositive motion must "consider timely objections and modify or set aside any part of the order

that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. §

636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been

shown that the magistrate judge's order is clearly erroneous or contrary to law").  "An order is

clearly erroneous if, based on all the evidence, a reviewing court 'is left with the definite and firm

conviction that a mistake has been committed.'"  *Storms v. United States*, No. 13-CV-0811, 2014

WL 3547016, *4 (E.D.N.Y. July 16, 2014) (quoting *United States v. Murphy*, 703 F.3d 182, 188

(2d Cir. 2012)).  "An order is contrary to law when it fails to apply or misapplies relevant statutes,

case law, or rules of procedure."  *Weiner v. McKeefery*, No. 11-CV-2254, 2014 WL 2048381, *3

(E.D.N.Y. May 19, 2014) (quoting *Weiss v. La Suisse,* 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001))

(internal quotation marks omitted).  "This standard is highly deferential, imposes a heavy burden

on the objecting party, and only permits reversal where the magistrate judge abused his

discretion."  *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015) (quoting

*Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010)) (internal quotation marks

omitted).

**B.    The PSLRA**

Congress enacted the PSLRA to "reduce abusive and meritless suits by imposing unique

requirements and limitations on private class actions alleging securities fraud."  Wright & Miller,

Securities Class Actions–Special Requirements, 7B Fed. Prac. & Proc. Civ. § 1806 (3d ed.).  In an

3

action subject to the PSLRA, "the court . . . shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA establishes a rebuttable presumption that the most appropriate lead plaintiff is the person or group of persons that "(aa) has either filed the complaint or made a motion in response to a notice . . . ; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). A class member can rebut this presumption "only upon proof" that the movant for appointment as lead plaintiff "will not fairly and adequately protect the interests of the class; or. . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Upon consideration of five competing motions for appointment as lead plaintiff, Magistrate Judge Stewart determined that the members of the Bruder Group were the proper co-lead Plaintiffs. *See* Dkt. No. 43 at 5-16.

## C.    The Vuongs' Motion

The Vuongs argue that Magistrate Judge Stewart's decision is clearly erroneous because he permitted "unrelated groups to aggregate their losses for lead plaintiff appointment," in contravention with the "majority of courts in the Second Circuit." Dkt. No. 48-1 at 7. Thus, the Vuongs request that this Court reverse Magistrate Judge Stewart's order and appoint the Vuongs as lead plaintiffs instead of the Bruder Group. *See id.* at 11. The Vuongs have not met their burden under Rule 72(a).

Under the statutory standard, Magistrate Judge Stewart determined that the two members of the Bruder Group are the presumptive co-lead plaintiffs and that the Vuongs failed to rebut

4

such presumption. *See* Dkt. No. 43 at 5-16. In conducting this inquiry, Magistrate Judge Stewart relied on a robust body of Second Circuit caselaw which permits the aggregation of claims for purposes of appointment of lead counsel, as discussed by the Eastern District in *Cushman v. Fortress Biotech, Inc.*, No. 20-CV-5767, 2021 WL 7449182 (E.D.N.Y. Mar. 24, 2021). *See id.* at 11.

First, the Vuongs' argument that Magistrate Judge Stewart improperly permitted the Bruder Group to aggregate Mr. Bruder and Mr. Slipher's claims, *see* Dkt. No. 48-1 at 5-6, is belied by clear precedent in this Circuit. The Vuongs' pre-litigation relationship as sisters, *see id.* at 5 n.1, does not mean that Magistrate Judge Stewart was required to find them to be a more proper group than the Bruder Group. Although "some courts have expressed skepticism where groups of movants collectively seek to be appointed lead plaintiff without a 'pre-existing relationship or where the incurred losses of the separate institutional investors [do not] individually exceed the losses of any other,'" *Cushman*, 2021 WL 7449182, at *4 (quoting *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 119 (E.D.N.Y. 2012)), courts in this Circuit often appoint groups comprised of unrelated investors, who share no preexisting relationship, as lead plaintiffs, *see id.* at *6 ("[M]any courts in this Circuit have appointed lead plaintiff groups comprised of individual investors assembled by their lawyers") (collecting cases); *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 424 (E.D.N.Y. 2018) ("It is not the case that where there are co-lead plaintiffs there must be some pre-existing, pre-litigation relationship between them").

In accordance with this body of caselaw, Magistrate Judge Stewart observed that the Bruder Group consists of a "small group of two sophisticated and substantial investors [which] represents a grouping that is both motivated and manageable." Dkt. No. 43 at 11-12; *see Cushman*, 2021 WL 7449182, at *6 ("Courts approve these lead plaintiff groups upon finding

5

other indicia that demonstrate the group's ability to effectively manage the demands of litigation")
(collecting cases).  Thus, Magistrate Judge Stewart correctly rejected the Vuongs' argument that
the Bruder Group should be disqualified from appointment as a lead plaintiff group because Mr.
Bruder and Mr. Slipher did not have a pre-litigation relationship.  *See* Dkt. No. 43 at 9-12.

Second, the Vuongs argue that Magistrate Judge Stewart failed to take into account the
belated timing and insufficient contents of the joint declaration submitted by the Bruder Group
when considering whether Mr. Bruder and Mr. Slipher comprise an adequate movant group under
the PSLRA.  *See* Dkt. No. 48-1 at 9-11.[1]  As for the timing of the Bruder Group's joint
declaration, the Vuongs present no precedent that requires a joint declaration be submitted with a
proposed lead plaintiff group's initial moving papers.  To the contrary, "the PSLRA does not
require that any such evidence be submitted with the initial motion." *In re Blue Apron Holdings,
Inc. Sec. Litig.*, No. 17-CV-4846, 2017 WL 6403513, *4 (E.D.N.Y. Dec. 15, 2017) (appointing
lead plaintiff group upon consideration of joint declaration submitted only in response papers).

As for the contents of the joint declaration, the Vuongs contend that it is "precisely the
type of boilerplate declaration[] courts in the Second Circuit have deemed insufficient."  Dkt. No.
48-1 at 9.  However, Magistrate Judge Stewart found that, in addition to demonstrating that they
had the largest financial interests, the Bruder Group submitted "a joint declaration from both
investors detailing their background, and their readiness to be co-lead plaintiffs in an effective
manner." Dkt. No. 43 at 8-9; *see* Dkt. No. 28-2.

Other courts in this Circuit have found joint declarations with similar evidence of cohesion
sufficient to demonstrate that a group is able to adequately represent the putative class.  *See, e.g.,*

---

[1]  The Court does not reach whether the Martinez Group's joint declaration was sufficient, as the
Martinez Group was not selected as co-lead plaintiffs.  *See* Dkt. No. 48-1 at 9.

*In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d at 424 (finding sufficient cohesion between two members where they "submitted a Joint Declaration that evidences that they are 'like-minded investors'; ha[d] participated in joint conference calls to discuss litigation strategy; and elect[ed] to have" the same counsel); *Cushman*, 2021 WL 7449182, at *7 ("The members of the AA Group having discussions with their counsel and a conversation with each other is sufficient involvement at this point in order to be able to adequately represent the putative class"); *Peters v. Jinkosolar Holding Co.*, No. 11-CV-7133, 2012 WL 946875, *6-8 (S.D.N.Y. Mar. 19, 2012) (concluding that a group of four members with no pre-existing relationship presented sufficient evidence that it would be able to function cohesively via a joint declaration which attested that, *inter alia*, each member of the group participated in a conference call, "is a 'knowledgeable and active investor,'" would work cohesively, and understood their responsibilities).

Third, the Vuongs are incorrect that the appointment of the Bruder Group "defeat[s] the purpose of the PSLRA." Dkt. No. 48-1 at 10.[2] The PSLRA does not require that the individual class member with the largest losses control the litigation; the statute states, among other relevant considerations, that the presumptive lead plaintiff is the "person or ***group of persons*** that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). Magistrate Judge Stewart's consideration of the proposed groups' collective

---

[2]  The Vuongs do not appear to take issue with Magistrate Judge Stewart's calculation and methodology for assigning loss attributable to each proposed co-lead plaintiff group.  However, the Court notes that the Vuongs separate Mr. Bruder's and Mr. Slipher's losses (of $368,883 and $306,829, respectively) to demonstrate that they have a larger *collective* loss of $490,334.18.  *See* Dkt. No. 48-1 at 9.  On the other hand, the Vuongs conveniently omit from their motion the fact that both Mr. Bruder and Mr. Slipher incurred a significantly greater individual loss than one of the two members of the Vuongs.  *See* Dkt. No. 43 at 7 (listing Nancy My Vuong's loss, as presented by the Vuongs, to be $72,623).

losses was in-line with the plain text of the PSLRA. *See In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d at 423 ("The majority of courts permit unrelated investors to join together as a group, and evaluate a motion to do so on a case-by-case basis, evaluating whether the grouping best serves the interest of the class") (citation omitted).

Finally, the supplemental authority, submitted by the Vuongs on June 5, 2025, *see* Dkt. No. 54, does not persuade the Court. The Vuongs argue that *Evangelista v. Late Stage Asset Mgmt., LLC*, No. 24-CV-5292, 2025 WL 1513447 (E.D.N.Y. May 28, 2025) "is persuasive authority as it addresses the issue of how to treat unrelated, lawyer-driven groups seeking to aggregate their losses for lead plaintiff appointment." Dkt. No. 54 at 1.

As the Bruder Group points out, the facts in *Evangelista* are distinguishable. Dkt. No. 55 at 2-4. In *Evangelista*, the court focused on the fact that the proposed group members never "communicated with each other before seeking lead plaintiff status in this action." *Evangelista*, 2025 WL 1513447, at *5. The court emphasized that "there is no evidence that the three members have actually discussed the instant litigation with each other or have had anything other than cursory involvement in the case." *Id.* Here, Mr. Bruder and Mr. Slipher stated in their joint declaration that they "discuss[ed] this case with each other . . . *before* the filing of [their] Lead Plaintiff Motion." Dkt. No. 28-2 at ¶ 4 (emphasis added). Moreover, the Bruder Group consists of only two individuals, not three—a fact that Magistrate Judge Stewart expressly found compelling in determining that the Bruder Group was cohesive and adequately demonstrated that they could represent the putative class. *See* Dkt. No. 43 at 11-12 ("[T]he Bruder [G]roup . . . ha[s] sufficiently established to the Court both a significant financial interest, as well as the workable methodology for proceeding forward in the best interests of the class. In particular, the proposed small group of two sophisticated and substantial investors represents a grouping that is both

8

motivated and manageable").  Simply because another court, analyzing distinct facts, found that a proposed group did not demonstrate its adequacy to proceed as lead plaintiff does not compel the conclusion here that Magistrate Judge Stewart abused his discretion in appointing the Bruder Group.

Magistrate Judge Stewart was vested with "broad discretion under Rule 23 to determine the adequacy of a proposed lead plaintiff." *Guo*, 2023 WL 3765052, at *2 (citing Fed. R. Civ. P. 23(d)).  The Vuongs have failed to meet their heavy burden of demonstrating that Magistrate Judge Stewart's decision to appoint the Bruder Group as co-lead plaintiffs was either "clearly erroneous" or "contrary to law," as required by Rule 72(a).

## D.     The Martinez Group's Motion

In their objections, the Martinez Group takes issue with the methodology used to calculate which group had the largest financial interest in the litigation.  *See* Dkt. No. 49-1 at 2.  According to the Martinez Group, Magistrate Judge Stewart "ignored precedent" when he used the "Last-In-First-Out" ("LIFO") method to calculate the competing movant groups' investment losses instead of an alternative methodology articulated in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  *Id.* at 2-4.  The Bruder Group and the Vuongs both filed oppositions to the Martinez Group's objections.  *See* Dkt. No. 51 at 7-9; Dkt. No. 52 at 1-3.  The Court finds that the Martinez Group has not met their heavy burden under Rule 72(a).

Magistrate Judge Stewart noted that although the Martinez Group "acknowledge[d] that the courts in this Circuit generally utilize the LIFO methodology," they argued the court "should consider what they deem 'recoverable losses.'"  Dkt. No. 43 at 9.  In determining the methodology to use in this case, Magistrate Judge Stewart observed that "the Martinez Group has changed their loss methodology throughout the course of [m]otion practice."  *Id.* at 13.  After the Bruder Group

9

established they sustained the largest loss under the LIFO method, the Martinez Group "argued that the correct methodology should be based upon what they call 'recoverable loss' which they now interpret to mean any loss occurred after November 9, 2023." *Id.* at 14. Magistrate Judge Stewart rejected the "recoverable loss" methodology and held that the LIFO method was appropriate in this case for, *inter alia*, two reasons: (1) the Martinez Group's changing numbers and methodologies "'is the type of opportunism that is generally unfavored in appointing lead plaintiffs' and '[t]his fact alone counsels in favor of adopting the LIFO methodology,'" *id.* (quoting *Marquez v. Bright Health Grp., Inc*, 2022 WL 1314812, *6 (E.D.N.Y. Apr. 26, 2022)); and (2) "there was not one, but four separate corrective notices that are at issue in this case," which counsels against the proposed Martinez Group methodology, *id.* (citing *Pack v. LuxUrban Hotels Inc.*, 2024 WL 3046258, *6 (S.D.N.Y. June 18, 2024)).

The argument that utilizing the calculation methodology most often used by courts in this Circuit to determine the party with the largest financial interest is clearly erroneous or contrary to law is, at best, strained. Although some courts have used the methodology derived from *Dura*, *see, e.g.*, *Armstrong v. Med. Props. Tr., Inc.*, No. 23-CV-8597, 2024 WL 3784445, *3 (S.D.N.Y. Aug. 13, 2024), the propriety of this so-called "recoverable loss" analysis has been called into question, *see Cook v. Allergn PLC*, No. 18-CV-12089, 2019 WL 1510894, *3 (S.D.N.Y. Mar. 21, 2019) ("[T]he appropriateness of employing *Dura* analysis at the lead plaintiff stage is subject to considerable dispute") (footnote omitted). Thus, the Court finds that the Martinez Group has failed to meet their burden under Rule 72(a).[3]

---

[3] As Magistrate Judge Stewart properly concluded that the Bruder Group has a larger financial interest than the Martinez Group under the LIFO method, the Court need not reach the arguments raised by the Vuongs, *i.e.* that the Martinez Group is otherwise improper and atypical. *See* Dkt. No. 52.

## IV. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that the Vuongs' and the Martinez Group's motions to reverse Magistrate Judge Stewart's Memorandum-Decision and Order pursuant to Rule 72(a) of the Federal Rules of Civil Procedure (Dkt. Nos. 48 & 49) are **DENIED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 11, 2025
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

11