UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------- x
                                 :

ETE ADOTE, Individually and on Behalf of All
Others Similarly Situated,
                                 :

             Plaintiff,          :   Case No. 1:24-cv-00406 (MAD) (DJS)

                                 :

         v.                    :

PLUG POWER INC., ANDREW MARSH,
PAUL B. MIDDLETON, and SANJAY K.
SHRESTHA,
                                 :

           Defendants.        :

------------------------------------------- x

### MEMORANDUM OF LAW IN SUPPORT OF ALL DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT

Of Counsel:

Yan Grinblat*
yan.grinblat@us.dlapiper.com
DLA PIPER LLP (US)
444 W. Lake Street
Chicago, Illinois 60606
(312) 368-4000

* Admitted *pro hac vice*

DLA PIPER LLP (US)
John J. Clarke, Jr. (Bar Roll No. 705346)
john.clarke@us.dlapiper.com
Steven Rosato (Bar Roll No. 703375)
steven.rosato@us.dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4500

*Counsel for*
 *Defendant Plug Power Inc.*

BOIES SCHILLER FLEXNER LLP
George F. Carpinello (Bar Roll No. 103750)
gcarpinello@bsfllp.com
30 South Pearl Street
Albany, New York 12207-3427
(518) 434-0600

October 28, 2025

*Counsel for Individual Defendants*
 *Andrew Marsh, Paul B. Middleton,*
 *and Sanjay Shrestha*

Table of Contents

Page

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ................................................................................................................... 2

      A.     The Parties ..................................................................................................... 2

      B.     Plug Power's Business and the Georgia Liquid Hydrogen Plant ........................... 3

      C.     Alleged Public Statements ............................................................................... 4

           1.     May and June 2023 Updates ..................................................................... 4

           2.     August 2023 Updates ................................................................................. 5

           3.     October and November 2023 Updates ........................................................ 6

           4.     January 23, 2024 Press Release: Liquid Hydrogen Being Produced ......... 6

           5.     Risk Disclosures Concerning Component Suppliers ................................. 7

      D.     The Claims Asserted ...................................................................................... 7

LEGAL STANDARDS ........................................................................................................ 8

ARGUMENT: THE AMENDED COMPLAINT SHOULD BE DISMISSED ............................ 8

I.     Plaintiffs Have Not Alleged an Actionable Misstatement or Omission ........................... 8

      A.     The PSLRA Safe Harbor Applies ..................................................................... 8

           1.     The Challenged Statements Were Forward-Looking ................................. 9

           2.     The Statements Were Qualified by Meaningful Cautionary
                  Language ................................................................................................ 10

           3.     The "Actual Knowledge" Prong of the Safe Harbor Also Applies ......... 12

      B.     Statements About the Georgia Plant Also Are Inactionable Opinions ............... 13

      C.     Plaintiffs Have Not Alleged Falsity for Other Risk Disclosures ....................... 13

      D.     The Amended Complaint Fails to Plausibly Allege "Scheme" Liability ............ 16

II.    Plaintiffs Have Not Pleaded the Requisite Strong Inference of Scienter ........................ 16

      A.     The Amended Complaint Does Not Attempt to Allege Any Motive to
           Defraud ...................................................................................................... 17

      B.     The Amended Complaint Does Not Plead Circumstantial Evidence of
           Scienter ..................................................................................................... 17

           1.     Unidentified "Former Employee" Allegations Do Not Plead
                  Scienter ............................................................................................... 18

           2.     Plaintiffs Do Not Allege Actual Knowledge of Falsity for
                  Challenged Forward-Looking Statements ........................................... 19

           3.     Plaintiffs Do Not Allege Conscious Misbehavior or Recklessness ........ 21

                                                                                              Page

            4.      No "Corporate Scienter" or Scienter Based on "Core Operations".........23

III.    The Amended Complaint Does Not Establish Loss Causation for Challenged
        Statements Regarding Material Availability.......................................................23

IV.     The "Controlling Person" Claim Also Should Be Dismissed.........................................25

CONCLUSION.................................................................................................................. 25

Table of Authorities

Page(s)

Cases

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)...................................................................................................24

*Amalgamated Bank v. Facebook, Inc.*,
87 F.4th 934 (9th Cir. 2023) ................................................................................................14

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
827 F.3d 1229 (10th Cir. 2016) ...........................................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................2, 8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................................................................................................8

*Bondali v. Yum! Brands, Inc.*,
620 F. App'x 483 (6th Cir. 2015) ........................................................................................14

*Born v. Quad/Graphics, Inc.*,
521 F. Supp. 3d 469 (S.D.N.Y. 2021)..............................................................................23, 24

*Campo v. Sears Holdings Corp.*,
635 F. Supp. 2d 323 (S.D.N.Y. 2009), *aff'd*,
371 F. App'x 212 (2d Cir. 2010) ....................................................................................18, 23

*City of Dearborn Heights Act 354 Police & Fire R v. Axonyx, Inc.*,
374 F. App'x 83 (2d Cir. 2010) ...........................................................................................19

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ................................................................................................13

*Constr. Lab. Pens. Tr. v. Marriott Int'l, Inc.*,
31 F.4th 898 (4th Cir. 2022) ...............................................................................................14

*ECA, Loc. 134 IBEW Joint Pens. Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)...........................................................................................16, 17

*Firefighters Pens. & Relief Fund of the City of New Orleans v. Bulmahn*,
53 F. Supp. 3d 882 (E.D. La. 2014)......................................................................................15

*Gaines v. Guidant Corp.*,
2004 WL 2538374 (S.D. Ind. Nov. 8, 2004) ........................................................................23

Page(s)

*Glaser v. The9, Ltd.*,
    772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................18, 23

*IKB Int'l S.A. v. Bank of Am.*,
    2014 WL 1377801 (S.D.N.Y. Mar. 31, 2014),
    *aff'd*, 584 F. App'x 26 (2d Cir. 2014)...............................................................21, 22

*In re AppHarvest Sec. Litig.*,
    684 F. Supp. 3d 201 (S.D.N.Y. 2023)......................................................................19

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013),
    *aff'd*, 566 F. App'x 93 (2d Cir. 2014)....................................................................15

*In re Barrick Gold Sec. Litig.*,
    2015 WL 1514597 (S.D.N.Y. Apr. 1, 2015)...............................................9, 12, 20

*In re Barrick Gold Corp. Sec. Litig.*,
    341 F. Supp. 3d 358 (S.D.N.Y. 2018)................................................................10, 11

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
    658 F. Supp. 3d 220 (S.D.N.Y. 2023)......................................................................18

*In re ChannelAdvisor Corp. Sec. Litig.*,
    2016 WL 1381772 (E.D.N.C. Apr. 6, 2016),
    *aff'd*, 671 F. App'x 111 (4th Cir. 2016)..................................................................14

*In re FBR Inc. Sec. Litig.*,
    544 F. Supp. 2d 346 (S.D.N.Y. 2008)................................................................14, 15

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
    667 F.3d 1331 (10th Cir. 2012) ...............................................................................20

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014),
    *aff'd*, 604 F. App'x 62 (2d Cir. 2015)....................................................................19

*In re MELA Scis., Inc. Sec. Litig.*,
    2012 WL 4466604 (S.D.N.Y. Sept. 19, 2012).........................................................17

*In re Meta Materials Inc. Sec. Litig.*,
    2023 WL 6385563 (E.D.N.Y. Sept. 29, 2023) .......................................................12

*In re N. Telecom Ltd. Sec. Litig.*,
    116 F. Supp. 2d 446 (S.D.N.Y. 2000)......................................................................17

Page(s)

*In re Noah Educ. Hldgs., Ltd. Sec. Litig.*,
   2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ...........................................................................14

*In re Signet Jewelers Ltd. Sec. Litig.*,
   2019 WL 3001084 (S.D.N.Y. July 10, 2019) ............................................................................23

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
   625 F. Supp. 3d 164 (S.D.N.Y. 2022)............................................................................. *passim*

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009).........................................................................................................9

*Janbay v. Canadian Solar, Inc.*,
   2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013),
   *aff'd mem.*, No. 13-1681 (2d Cir. 2013) ...................................................................................19

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005)................................................................................................23, 24

*Long Miao v. Fanhua, Inc.*,
   442 F. Supp. 3d 774 (S.D.N.Y. 2020).......................................................................................18

*Mangrove Partners Master Fund, Ltd. v. Bristol-Myers Squibb Co.*,
   2025 WL 1420914 (2d Cir. May 16, 2025) .................................................................................9

*Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*,
   576 F.3d 172 (4th Cir. 2009) .....................................................................................................22

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)........................................................................................................................8

*N.Y. City Pub. Pens. Funds v. Coupang, Inc.*,
   2025 WL 2613650 (S.D.N.Y. Sept. 10, 2025).........................................................................23

*Nat'l Jr. Baseball League v. Pharmanet Dev. Grp. Inc.*,
   720 F. Supp. 2d 517 (D.N.J. 2010) ..........................................................................................12

*Nath v. Lightspeed Commerce Inc.*,
   2025 WL 606108 (E.D.N.Y. Feb. 25, 2025)............................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)....................................................................................................................13

v

Page(s)

*Oneida Indian Nation v. Phillips*,
　360 F. Supp. 3d 122 (N.D.N.Y. 2018),
　*aff'd*, 981 F.3d 157 (2d Cir. 2020) .......................................................................................8

*Pipefitters Loc. No. 636 Defined Ben. Plan v. Tekelec*,
　2013 WL 1192004 (E.D.N.C. Mar. 22, 2013) ......................................................................23

*Plumber & Steamfitters Loc. 773 Pens. Fund v. Danske Bank A/S*,
　11 F.4th 90 (2d Cir. 2021) ...................................................................................................16

*Rombach v. Chang*,
　355 F.3d 164 (2d Cir. 2004)............................................................................................20, 22

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
　573 F.3d 98 (2d Cir. 2009)....................................................................................................22

*S.E.C. v. SolarWinds Corp.*,
　741 F. Supp. 3d 37 (S.D.N.Y. 2024)....................................................................................15

*Schaffer v. Horizon Pharma PLC*,
　2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) .........................................................................21

*Shreiber v. Synacor, Inc.*,
　832 F. App'x 54 (2d Cir. 2020) .............................................................................................13

*Slayton v. Am. Express Co.*,
　604 F.3d 758 (2d Cir. 2010)........................................................................................ *passim*

*Tellabs, Inc. v. Makor Issues & Rts. Ltd.*,
　551 U.S. 308 (2007).................................................................................................... *passim*

*Tobia v. United Grp. of Cos., Inc.*,
　2016 WL 5417824 (N.D.N.Y. Sept. 22, 2016) .....................................................................24

*Tongue v. Sanofi*,
　816 F.3d 199 (2d Cir. 2016).....................................................................................................3

*Turner v. MagicJack VocalTec, Ltd.*,
　2014 WL 406917 (S.D.N.Y. Feb. 3, 2014)............................................................................17

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
　723 F. App'x 20 (2d Cir. 2018) .............................................................................................21

*Wochos v. Tesla, Inc.*,
　985 F.3d 1180 (9th Cir. 2021) ......................................................................10, 12, 19, 20

Page(s)

*Woolgar v. Kingstone Companies, Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020) ...................................................................13

## Statutes, Regulations, and Rules

15 U.S.C. § 78j(b)..........................................................................................................7

15 U.S.C. § 78u-4(b)............................................................................... *passim*

15 U.S.C. § 78u-5(c)(1) .......................................................................... *passim*

15 U.S.C. § 78t(a) .......................................................................................................7

17 C.F.R. § 240.10b-5................................................................................................7

Fed. R. Civ. P. 9(b) ...................................................................................................8

Fed. R. Civ. P. 12(b)(6)........................................................................................2, 8

## Legislative History

H.R. Conf. Rep. No. 104-369 (1995)........................................................................9

S. Rep. No. 104-98 (1995) ........................................................................................9

## PRELIMINARY STATEMENT

This is a putative class action claiming "securities fraud."  It was filed soon after Plug Power Inc., a leading hydrogen energy company, announced the completion of its first liquid hydrogen production plant in Woodbine, Georgia.  Plaintiffs claim Plug Power and three of its senior officers lied in discussing the Georgia plant between May 9, 2023 and January 16, 2024, because it turned out the facility did not begin full production until the end of that period – seven months later than "the originally promised date[.]"  Compl. ¶ 106.  That is "fraud by hindsight," and it is inactionable.[1]

The amended complaint fails to meet the demanding pleading requirements established by the Private Securities Litigation Reform Act of 1995 ("PSLRA") in several critical respects.  *First*, most of the challenged statements concern the future completion of the Georgia production facility.  Those statements are shielded from securities liability by the safe harbor enacted in the PSLRA, which protects forward-looking statements when, as here, they are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially[.]"  15 U.S.C. § 78u-5(c)(1)(A).  Plug Power repeatedly warned that key risks facing its business included "the risk that delays in or not completing our . . . hydrogen plant construction goals may adversely affect our revenue and profitability."  Exh. 1 at 3.  The safe harbor applies.

*Second*, the amended complaint does not allege facts giving rise to the required "strong inference" of scienter, or fraudulent intent.  15 U.S.C. § 78u-4(b)(2)(A).  There are no plausible allegations that any defendant had a motive to commit fraud: no stock sales are alleged, much less suspicious ones; and no other facts are alleged suggesting anyone had a reason to lie.  Nor have

---

[1] Citations to "Compl." refer to paragraphs in the amended complaint, ECF No. 61. Citations to "Exh." refer to exhibits to the accompanying Declaration of John J. Clarke, Jr. dated October 28, 2025.

plaintiffs alleged contemporaneous facts, known to any defendant, that conflicted with the challenged statements when they were made.  Unattributed allegations from purported former employees do not suggest any challenged statement was false, much less fraudulent.

*Third*, plaintiffs' separate contention that Plug Power allegedly was not paying suppliers during the purported class period does not amount to a securities fraud claim for a number of reasons, including because there is no loss causation.  15 U.S.C. § 78u-4(b)(4).  There are no allegations connecting any alleged investor loss with revelations about an alleged inability to pay vendors; the issue is not mentioned in any public statement alleged in the amended complaint.

When reviewed holistically, as the federal securities laws require, *see Tellabs, Inc. v. Makor Issues & Rts. Ltd.*, 551 U.S. 308, 326 (2007), the amended complaint alleges that Plug Power successfully completed the construction and commissioning of a new liquid hydrogen plant – the largest green hydrogen production facility in the U.S. – in around eighteen months, which was far faster than the three-to-four-year industry average for similar projects.  Even still, Plug Power repeatedly cautioned about the risk of delays and provided regular updates about the progress in bringing the plant's new hydrogen production online.

These allegations do not add up to securities fraud.  What they plead instead is that being in business can present challenges, especially when large-scale infrastructure projects and emerging technologies are involved.  The amended complaint should be dismissed with prejudice.

**BACKGROUND**[2]

**A.      The Parties**

Plaintiffs allege they purchased shares of Plug Power common stock.  Compl. ¶¶ 7, 12-15. Plug Power is a hydrogen energy company based in Latham, New York that develops,

---

[2] Well-pleaded factual allegations are assumed true solely for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  The Court also may consider "other sources courts

manufactures, and services hydrogen fuel cell systems and electrolyzers and produces and delivers hydrogen fuel. *Id.* ¶¶ 1, 16. During the alleged class period, defendant Andrew Marsh was chief executive officer, defendant Paul B. Middleton was chief financial officer, and defendant Sanjay K. Shrestha was chief strategy officer. *Id.* ¶¶ 17-20.

**B.    Plug Power's Business and the Georgia Liquid Hydrogen Plant**

According to the amended complaint, Plug Power's business historically focused on long-term agreements to provide fuel cells and hydrogen fuel to power equipment used in warehouses and distribution centers. *Id.* ¶ 1. Plug Power allegedly needed to purchase liquid hydrogen from third-party suppliers to supply its hydrogen fuel cell projects, resulting in operating losses. *Id.*

In 2019, the company embarked on an ambitious vertical integration plan to increase profitability and insulate its business from volatility in the price and availability of hydrogen. *Id.* ¶ 25. Plug Power allegedly decided to develop its own hydrogen production capacity by manufacturing more electrolyzers, which convert water into hydrogen, and by building several liquid hydrogen production facilities of its own. *Id.* ¶¶ 25-28.

The amended complaint alleges that in 2021, Plug Power announced plans for the construction of the first of these production facilities – the Georgia plant that is the focus of the amended complaint. *Id.* ¶ 27. That facility allegedly would be "a cornerstone of" Plug Power's vertical integration plan where the Company anticipated producing 15 tons per day of liquid hydrogen using power from renewable energy sources. *Id.* But producing and liquifying hydrogen is a complex process, and the schedule for bringing that new liquid hydrogen production capacity online was never set in stone.

---

ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322; *see Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016).

In its annual report filed on March 31, 2023, the Company cautioned that "*the risk that delays in or not completing our . . . hydrogen plant construction goals may adversely affect our revenue and profitability*." Exh. 1 at 3 (emphasis added). The report also warned:

> ***We may be unable to successfully execute and operate our green hydrogen production projects and such projects may cost more and take longer to complete than we expect.***
>
> As part of our vertical integration strategy, the Company is developing and constructing green hydrogen production facilities at locations across the United States and Europe. Our ability to successfully complete and operate these projects is not guaranteed. These projects will impact our ability to meet and supplement the hydrogen demands for our products and services, for both existing and prospective customers. Our hydrogen production projects are dependent, in part, upon the Company's ability to meet our internal demand for electrolyzers required for such projects. Electrolyzer demand by external customers may concurrently affect the Company's ability to meet the internal electrolyzer demand from our hydrogen production projects. The timing and cost to complete the construction of our hydrogen production projects are subject to a number of factors outside of our control and such projects may take longer and cost more to complete and become operational than we expect.

*Id.* at 16. This cautionary language was incorporated by reference into each of the challenged statements about the Georgia plant. *See* Compl. ¶¶ 62-97.

## C.    Alleged Public Statements

Plaintiffs assert two different categories of claims: first, based on disclosures about the completion of the Georgia plant, *id.* ¶¶ 66-74, 78-89, 93-97; and second, based on a paragraph discussing risks associated with the Company's supply chain, *id.* ¶¶ 64, 77, 92.

### 1.    May and June 2023 Updates

In an earnings release issued on May 9, 2023, Plug Power stated that its "Georgia Liquid Green Hydrogen Plant Will Complete Commissioning and Continue to Ramp to Liquid Production throughout Q2" and that the Company "plans to begin [liquid hydrogen] production in the second quarter of 2023." *Id.* ¶ 66. Plug Power also disclosed that "[b]ased on learnings in Georgia,

4

presently it takes six months to get plants from commissioning to full production." *Id.*; *see* Exh. 3 at 4. During an analyst call, Mr. Marsh reiterated the expectation that the Georgia plant could be producing hydrogen "by the end of June." Compl. ¶ 69. Mr. Marsh called this a "significant achievement" and highlighted the Company's "ability to construct green hydrogen plants" far more quickly than other companies' usual estimate of "4 years [for] a project of this scale." *Id.*; *see* Exh. 4 at 5. Plaintiffs elsewhere challenge a statement by Mr. Marsh at an analyst day on June 14, 2023, that "Georgia will be putting out liquid at the end of the month, and I can't wait." *See* Compl. ¶ 72; Exh. 6 at 5.

Plaintiffs contend these statements falsely "portrayed Plug's operations at the Georgia Plant in an unrealistic and overly optimistic light," Compl. ¶ 70, and "assured investors that full production by June 2023 was imminent when, in fact, the plant would not begin producing liquid hydrogen until January 2024, seven months later," *id.* ¶ 73.

### 2. August 2023 Updates

On August 9, 2023, Plug Power issued an earnings release for Q2 2023, which included a disclosure that the Georgia plant was "currently under unplanned maintenance" but "[f]inal commissioning activities are underway" with an expectation of "production on site during Q3 2023." *Id.* ¶ 78; *see* Exh. 9 at 1, 4. In a call that day, Mr. Marsh allegedly answered a question about the status of the facility by stating "[w]e're not producing liquid today, but we are essentially ramping up the electrolyzer on path to be able to produce that liquid," and "we feel very confident that we're going to be producing liquid in Q3." *Id.* ¶ 81; *see* Exh. 10 at 12.

On August 23, 2023, securities analysts toured the Georgia facility with Plug Power management. *Id.* ¶ 83. A press release that day allegedly disclosed that "[a]s the Georgia plant's hydrogen production ramps up, it is anticipated to improve Plug's fuel margin meaningfully from Q2 to Q4 2023." *Id.* ¶¶ 84, 85; *see* Exh. 11 at 17, Exh. 12 at 14.

Plaintiffs allege these statements were false because the Company purportedly was "continuing to experience delays at the Georgia Plant due to shortages of supplies and faulty mechanical components." Compl. ¶ 79; *see id.* ¶¶ 82, 86.

### 3.    October and November 2023 Updates

On October 11, 2023, Plug Power hosted its annual symposium, where Mr. Marsh allegedly provided further updates on the Georgia plant. *Id.* ¶ 88. His remarks allegedly explained that "[i]t hasn't been easy" to begin producing liquid hydrogen at the facility; "[w]e're drying out [cold] boxes" – "[i]t's a $100 million piece of equipment" and "[w]e really want to make sure it's done right," adding "I wish I could tell you, Georgia was putting out liquid today" but he expected that to happen "somewhere between 11/15 and 12/31, when the . . . [cold] box is finally commissioned[.]" *Id.*; *see* Exh. 13 at 10; *see also* Exh. 14.

On November 9, 2023, Plug Power issued an earnings release for Q3, which allegedly included a disclosure that "[w]e are completing the final step of the commissioning process for the liquefiers/cold box" and "[l]iquid production is anticipated between November 15th and year-end." Compl. ¶ 93; *see* Exh. 16 at 2. In an analyst call that day, Mr. Marsh allegedly said "we are finishing the last step in the construction process [of the Georgia plant], commissioning the liquefier. We expect the plant to be online by year-end." *Id.* ¶ 96; *see* Exh. 17 at 4.

Plaintiffs assert these statements were false because unspecified "critical commissioning remained unfinished, and the Georgia Plant did not begin producing liquid hydrogen until January 2024, seven months past the original deadline." Compl. ¶ 89; *see id.* ¶¶ 94, 97.

### 4.    January 23, 2024 Press Release: Liquid Hydrogen Being Produced

On January 23, 2024, Plug Power issued a press release allegedly disclosing that it "has started operation of" the Georgia plant, "the largest liquid green hydrogen plant in the U.S. market," which was "designed to produce 15 tons per day (TPD) of liquid electrolytic hydrogen."

6

Exh. 18 at 1; *see* Compl. ¶ 37.  Notwithstanding commissioning delays, the Company "finished the plant at a rapid pace of 18 months, more than two times faster than the three-year industry standard for hydrogen plants."  Exh. 18 at 2; *see* Compl. ¶ 33 (alleging "industry standard" of "approximately four years").

### 5.    Risk Disclosures Concerning Component Suppliers

Separately, plaintiffs challenge as allegedly fraudulent three "recent development" disclosures unrelated to the Georgia plant that were included in Forms 10-Q filed on May 9, August 9, and November 9, 2023.  Compl. ¶¶ 64, 76, 91.  The disclosures warned about risks from inflation, material availability, and labor shortages.  *See id.*; *see also* Exhs. 2, 8, 15.  Plaintiffs allege that the disclosures were fraudulent by omission because they "said nothing" about parts "shortages" allegedly due to Plug Power "not paying its suppliers."  Compl. ¶¶ 65, 77, 92.  None of the allegedly "corrective" disclosures discuss parts shortages or a failure to pay suppliers.

### D.    The Claims Asserted

Plaintiffs assert claims on behalf of a putative class consisting of all persons who purchased or otherwise acquired Plug Power common stock between May 9, 2023 and January 16, 2024. *Id.* ¶¶ 7, 124.  The amended complaint asserts claims against all defendants under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. *Id.* ¶¶ 130-38.  It also asserts a "controlling person" claim against the individual defendants under section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  *Id.* ¶¶ 139-44.[3]

---

[3] A similar hindsight securities case already was pending against Plug Power and its officers in the District of Delaware when this action was filed.  That case asserts claims regarding the status of construction and the anticipated date of commissioning of the Georgia liquid hydrogen plant and the Company's supply chain, among other matters, during an alleged class period between January 19, 2022 and March 1, 2023.  The district court granted defendants' motion to dismiss the first amended class action complaint with leave to amend.  *See In re Plug Power Inc.*, 2025 WL 388705 (D. Del. Feb. 4, 2025).  A motion to dismiss plaintiffs' second amended complaint is fully briefed and pending.  *In re Plug Power Inc. Sec. Litig.*, Case No. 1:23-cv-0409-JLH (D. Del.).

7

## LEGAL STANDARDS

To be actionable, a claim under section 10(b) requires (1) a material misrepresentation or omission; (2) scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citation omitted); *see Oneida Indian Nation v. Phillips*, 360 F. Supp. 3d 122, 131 (N.D.N.Y. 2018) (plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully"), *aff'd*, 981 F.3d 157 (2d Cir. 2020).

Securities fraud claims also must satisfy Federal Rule 9(b) and the heightened pleading requirements of the PSLRA, including the requirement to plead facts supporting a strong inference of scienter. 15 U.S.C. § 78u-4(b)(1)-(2); *see Tellabs*, 551 U.S. at 324 (inference of scienter "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent"); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

## ARGUMENT

### THE AMENDED COMPLAINT SHOULD BE DISMISSED

The amended complaint should be dismissed because it does not plausibly allege several different elements required for a claim of securities fraud: falsity, scienter, and loss causation.

I.     **Plaintiffs Have Not Alleged an Actionable Misstatement or Omission.**

A.     **The PSLRA Safe Harbor Applies.**

All of the challenged statements concerning the expected timing for the completion of the Georgia plant and commencement of liquid hydrogen production there were forward-looking statements protected from liability by the PSLRA safe harbor. *See* Compl. ¶¶ 66, 69, 72, 78, 81, 84-85, 88, 93, 96. That statutory safe harbor shields from liability any forward-looking statement

8

that is *either* "accompanied by meaningful cautionary language" *or* made without "actual knowledge" that it was false.  15 U.S.C. § 78u-5(c)(1); *see Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010).  The congressional purpose for enacting the provision was to "encourage[] companies to disclose forward-looking information," S. Rep. No. 104-98 (1995), without "fear" of "securities fraud lawsuits" if their "projections do not materialize," H.R. Conf. Rep. No. 104-369 (1995) – the type of opportunistic litigation this action exemplifies.

### 1.    The Challenged Statements Were Forward-Looking.

All of the challenged statements concerning the Georgia plant were forward-looking, and each statement was identified as forward-looking.[4]  A "'forward-looking statement' is broadly defined" to include "the plans and objectives of management for future operations, including plans or objectives relating to the products or services of the issuer," and "any statement of the assumptions underlying or relating to" such plans.  *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009) (quoting 15 U.S.C. § 78u-5(i)(1)(A)-(D)); *see Mangrove Partners Master Fund, Ltd. v. Bristol-Myers Squibb Co.*, 2025 WL 1420914, at *3 (2d Cir. May 16, 2025).

The challenged statements here fall squarely within these categories.  For example, statements that a construction project is "on track" are quintessentially forward-looking.  *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 208 (S.D.N.Y. 2022); *see Avaya*, 564 F.3d at 255 (same).  So are statements regarding the planned date for "production ramp-up" of a project and the anticipated timeline for resource production.  *Turquoise Hill*, 625 F. Supp. 3d at 184, 254-55 (statements about mine's construction timeline and planned start of operations were forward-looking); *In re Barrick Gold Sec. Litig.* ("*Barrick I*"), 2015 WL 1514597, at *7-8

---

[4] *See* Exh. 3 at 14; Exh.4 at 4, Exh. 5 at 2; Exh. 7 at 2; Exh. 9 at 16-17; Exh. 10 at 4; Exh. 11 at 2; Exh. 12 at 2; Exh. 14 at 2; Exh. 16 at 11; Exh. 17 at 4; Exh. 18 at 2.

(S.D.N.Y. Apr. 1, 2015) (construction and production estimates for mining project were "statement of the plans and objectives of management for future operations" covered by safe harbor); *see Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021) ("goal to produce 5,000 vehicles per week is unquestionably a 'forward-looking statement' under § 21E, because it is a 'plan[]' or 'objective[] of management for future operations'").

In this case, as in these prior decisions, the challenged statements discussed goals for completion of the Georgia facility, the anticipated start date for liquid hydrogen production, and anticipated improvements in the Company's margins as hydrogen production increased. *See* Compl. ¶ 66 (goal for when plant "will complete commissioning" and "plans to begin [hydrogen] production"); ¶ 69 ("full production" expected "end of June"); ¶ 72 (similar); ¶ 78 ("production" expected "during Q3" with "notable improvement in fuel margin beginning in the second half of the year"); ¶ 81 ("we feel very confident that we're going to be producing liquid in Q3"); ¶ 84 ("anticipated" margin improvements "from Q2 to Q4"); ¶ 85 (same); ¶ 88 (liquid hydrogen production projected "somewhere between 11/15 and 12/31, when the . . . [cold] box is finally commissioned"); ¶ 93 (same); ¶ 96 ("we expect the plant to be online by year-end").

### 2.    The Statements Were Qualified by Meaningful Cautionary Language.

The challenged statements also were accompanied by meaningful cautionary language identifying "important factors that could cause actual results to differ materially." 15 U.S.C. § 78u-5(c)(1)(A)(i). Those cautionary statements were "substantive and tailored to the specific future projections, estimates or opinions . . . the plaintiffs challenge." *In re Barrick Gold Corp. Sec. Litig.* ("*Barrick II*"), 341 F. Supp. 3d 358, 376 (S.D.N.Y. 2018) (quoting *Avaya*, 564 F.3d at 256). The safe harbor plainly applies.

The statutory protection against liability "does not demand clairvoyance of defendants," and cautionary statements "need not predict the precise manner in which [potential] risks will

10

manifest themselves" for the safe harbor to apply. *Barrick II*, 341 F. Supp. 3d at 377-78 (cleaned up; collecting cases). A defendant "need not include the particular factor that ultimately causes its projection not to come true in order to be protected by the meaningful cautionary language prong of the safe harbor[.]" *Slayton*, 604 F.3d at 773. Further, "cautionary language need not directly precede or follow the forward-looking statement" and it "may be incorporated by reference." *Turquoise Hill*, 625 F. Supp. 3d at 213, 215 (collecting cases).

Plaintiffs challenge statements concerning the Georgia plant based on allegedly undisclosed "delays" attributed to "shortages of supplies and faulty mechanical components." Compl. ¶¶ 67, 79, 86; *see id.* ¶ 70 ("Georgia Plant was behind schedule" for unstated reason); ¶¶ 73, 81 (unidentified "critical construction and commissioning steps at the Georgia Plant remained incomplete"); ¶¶ 89, 94, 97 (similar). But that risk was addressed in the Company's risk factor disclosures, which warned that "delays in or not completing our . . . hydrogen plant construction goals may adversely affect our revenue and profitability." Exh. 1 at 3; *see id.* at 16.[5]

Several challenged statements provided additional risk disclosures about the Georgia facility. *See, e.g.*, Exh. 3 at 14 (warnings about "the expected timing, output, and benefits of its liquid hydrogen plant in Georgia"); Exh. 9 at 15-16 ("the achievement of expected outputs at Plug's newly commissioned Georgia plant and the expectation that it will cut Plug's fuel margin loss"); Exh. 11 at 2 (the "timely construction and completion of hydrogen generation projects, which may be delayed due to the Company's inexperience with these project types, supply chain issues, and federal, state, and local permitting and regulatory issues"); Exh. 12 at 2 (same); Exh. 14 at 2 (risks associated with the Company's "manufacturing capabilities, and the planned expansion

---

[5] Each challenged statement referenced and incorporated the risk disclosures in Plug Power's Form 10-K for 2022. *See* Exh. 3 at 14; Exh. 4 at 4, Exh. 5 at 2; Ex. 7 at 2; Exh. 9 at 16-17; Exh. 10 at 4; Exh. 11 at 2; Exh. 12 at 2; Exh. 14 at 2; Exh. 16 at 11; Exh. 17 at 4; Exh. 18 at 2.

of Plug's hydrogen network"); and Exh. 16 at 11 ("the timing and achievement of expected outputs at Plug's Georgia and Tennessee facilities").

Courts have applied the safe harbor based on substantially similar cautionary statements. *See In re Meta Materials Inc. Sec. Litig.*, 2023 WL 6385563, at *13 (E.D.N.Y. Sept. 29, 2023) (warnings about "the scalability of the Company's production ability" and "ability to accelerate commercialization plans"); *Turquoise Hill*, 625 F. Supp. 3d at 213 (warnings that "[i]t is common in mining operations and in the development, construction, or expansion of existing facilities to experience unexpected problems and delays during such activities, which may cause delays in the commencement or expansion of mineral production or sustainable production"); *Barrick I*, 2015 WL 1514597, at *8 (warning about "operating or technical difficulties in connection with mining or development activities"); *see also Tesla*, 985 F.3d at 1194 n.3 (warning about "risk of delays in the manufacture, production, delivery and/or completion of our vehicles"); *Nat'l Jr. Baseball League v. Pharmanet Dev. Grp. Inc.*, 720 F. Supp. 2d 517, 536 (D.N.J. 2010) (risk factor "alert[ed] shareholders to the specific sources of that risk – such as loss or delay of projects, changes in the scope of projects, outright cancellation, and variations in timing and progress.").

### 3.    The "Actual Knowledge" Prong of the Safe Harbor Also Applies.

"The safe harbor is written in the disjunctive; that is, a defendant is not liable if the forward-looking statement is identified and accompanied by meaningful cautionary language *or* is immaterial *or* the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton*, 604 F.3d at 766; *see* 15 U.S.C. § 78u-5(c)(1)(B)(i). Plaintiffs have failed to plausibly allege that any of the defendants had "actual knowledge" that any of the challenged forward-looking statements was false or misleading – a more demanding pleading standard than even the "strong inference" standard generally applicable to allegations of scienter. *See infra* at 19-21. This provides an independent ground for dismissal.

**B.      Statements About the Georgia Plant Also Are Inactionable Opinions.**

The statements about planned commissioning of the Georgia plant "were quintessential opinion statements" because they expressed the speakers' "expectations." *Shreiber v. Synacor, Inc.*, 832 F. App'x 54, 57 (2d Cir. 2020). Such statements are not actionable unless (1) the speaker did not actually hold the stated belief; (2) they contained "embedded statements of fact" that were untrue; or (3) the speaker omitted known material facts that "conflict with what a reasonable investor would take from the statement[.]" *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184-89 (2015). Plaintiffs argue that the statements omitted material facts, but prevailing on this theory is "no small task for an investor." *Id.* at 194.

Plaintiffs do not identify any specific facts that conflicted with stated commissioning goals for the Georgia plant, especially since those goals were repeatedly updated during the putative class period as events developed. And allegations attributed to unnamed former employees do not fill this glaring hole. These undated assertions are not a basis to "plead contemporaneous falsity." *Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 221 (S.D.N.Y. 2020). Moreover, allegations that former employees purportedly had different opinions about the plant's anticipated completion do not render defendants' opinions actionably misleading. *Omnicare*, 575 U.S. at 190 (opinion statement not "misleading" just because one employee had a different view, even if their "position ultimately proved correct"); *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170-71 (3d Cir. 2014) (internal "difference of opinion" does not show a lack of reasonable basis).

**C.      Plaintiffs Have Not Alleged Falsity for Other Risk Disclosures.**

Plaintiffs separately fail to allege falsity based on three challenged statements unrelated to the Georgia plant, concerning the risks of inflation, material availability, and labor shortages, including risks associated with key "component suppliers and manufacturing vendors" contained in Plug Power's Forms 10-Q for the first, second, and third quarters of 2023. Plaintiffs allege

13

those risk disclosures fraudulently omitted to disclose "that Plug [Power] was actively experiencing shortages and, at that, due to not paying its suppliers." Compl. ¶¶ 64, 65, 76, 77, 91.

*First*, risk disclosures are not actionable based on an alleged omission of *existing* facts because they "are inherently *prospective* in nature" – they "warn an investor of what harms *may* come to their investment" and "are not meant to educate investors on what harms are currently affecting the company." *Bondali v. Yum! Brands, Inc.*, 620 F. App'x 483, 491 (6th Cir. 2015) (emphasis in original). For that reason, a number of courts have dismissed similar claims asserting "defendants should have disclosed risk factors 'are' affecting financial results rather than 'may' affect financial results[.]" *In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) (quotation marks omitted; collecting cases); *see also In re Noah Educ. Hldgs., Ltd. Sec. Litig.*, 2010 WL 1372709, at *8 (S.D.N.Y. Mar. 31, 2010) ("the lengthy, forward-looking recitation of risks facing Noah did not imply that none of these risks, at least to some extent, would affect Noah's most recent fiscal quarter").[6]

Other courts have recognized that "risk disclosures generally also lack materiality because" they are prospective and "a reasonable investor would be unlikely to infer anything from them about the company's current state of affairs." *Constr. Lab. Pens. Tr. v. Marriott Int'l, Inc.*, 31 F.4th 898, 904 n.2 (4th Cir. 2022) (cleaned up); *see In re ChannelAdvisor Corp. Sec. Litig.*, 2016 WL 1381772, at *6 (E.D.N.C. Apr. 6, 2016) ("it is unlikely that a reasonable investor would, from that cautionary language, infer anything about ChannelAdvisor's current contracts."), *aff'd*,

---

[6] The Ninth Circuit has taken a different approach. *See, e.g., Amalgamated Bank v. Facebook, Inc.*, 87 F.4th 934, 949 (9th Cir. 2023) (plaintiffs adequately alleged risk factor discussing risk of third parties accessing user data was misleading because that already had occurred). Even under the Ninth Circuit standard, however, the challenged disclosures here are not actionable because the amended complaint does not include factual allegations showing any contemporaneous conflict with the disclosures they actually included about the Company's reliance on key "component suppliers and manufacturing vendors." *See id.*

671 F. App'x 111 (4th Cir. 2016); *Firefighters Pens. & Relief Fund of the City of New Orleans v. Bulmahn*, 53 F. Supp. 3d 882, 915 (E.D. La. 2014) ("No reasonable investor would interpret this list as an assurance of compliance with regulations intended to manage the included risks").

*Second*, Plug Power's warnings about potentially adverse effects if it lost access to key "component suppliers and manufacturing vendors" did not claim that the Company had no payment issues with any of its suppliers. As a result, those statements would not have been misleading even if there were support for plaintiffs' accusation that vendors were withholding shipments for non-payment. *See FBR*, 544 F. Supp. 2d at 362 ("defendants never claimed that the company was in 'full compliance with all regulations, or that it had no outstanding regulatory issues'") (quoting *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 904 (N.D. Ill. 2001)).

*Third*, Plug Power actually disclosed issues it was encountering in its supply chain at the time, as the amended complaint acknowledges. In its Forms 10-Q on May 9 and August 9, 2023, the Company disclosed that "[r]ecent cost pressures from global energy prices and inflation ***have negatively impacted*** access to our key raw materials." Compl. ¶ 76 (emphasis added). In its Form 10-Q on November 9, 2023, Plug Power disclosed that it "***has experienced*** inflationary increases in . . . parts" and was "continuing discussions with suppliers to modify terms of our supply agreements, which may impact the timing of when we receive shipments of certain supplies or result in other supply chain issues." *Id.* ¶ 91 (emphasis added). The amended complaint does not allege facts suggesting those disclosures were misleadingly incomplete. *See S.E.C. v. SolarWinds Corp.*, 741 F. Supp. 3d 37, 93 (S.D.N.Y. 2024) (where company "already warned investors" it was "'vulnerable to damage or interruption' from a variety of cyberattacks," it "did not have a duty to disclose the fact of individual cyber intrusions or attacks" that already occurred); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013) ("[W]here there is

15

disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk."), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).

  **D.**  **The Amended Complaint Fails to Plausibly Allege "Scheme" Liability.**

  To the extent plaintiffs assert a "scheme" claim under Rule 10b-5(a) and (c), *see* Compl. ¶¶ 98, 131-35, that claim should be dismissed because "[a]t no point do [plaintiffs] articulate with precision the contours of an alleged scheme to defraud investors, or which specific acts were conducted in furtherance of it." *Plumber & Steamfitters Loc. 773 Pens. Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021). Further, scheme claims require "something beyond misstatements and omissions," and yet the claims in this case are limited to the contents of public disclosures. *See S.E.C. v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022) (dismissing scheme claim).

**II.**  **Plaintiffs Have Not Pleaded the Requisite Strong Inference of Scienter.**

  The amended complaint also should be dismissed because it does not allege facts giving rise to a "strong inference" of scienter; that is, there is nothing pleaded in the amended complaint to suggest that deception was intended by anyone in making the challenged statements. 15 U.S.C. § 78u-4(b)(2)(A). In evaluating scienter allegations, courts must weigh the "plausible, nonculpable explanations for the defendant's conduct" against the "inferences favoring the plaintiff." *Tellabs, Inc.*, 551 U.S. at 310.

  To be "strong," an inference that a defendant acted with the intention to deceive must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314. In the Second Circuit, that requires factual allegations of "motive and opportunity" to commit fraud and "strong circumstantial evidence of conscious misbehavior or recklessness." *ECA, Loc. 134 IBEW Joint Pens. Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). And for forward-looking statements, an even more demanding standard applies, requiring "actual knowledge" of falsity. *Slayton*, 604 F.3d at 766; *see* 15 U.S.C. § 78u-5(c)(1)(B).

16

**A.      The Amended Complaint Does Not Attempt to Allege Any Motive to Defraud.**

The amended complaint makes no serious attempt to allege that *any* defendant had a personal motive to commit fraud.   There are no allegations of suspicious or unusual stock transactions, nor are there allegations that any defendant "benefitted" in a "concrete and personal way from" the alleged misstatements. *JP Morgan Chase*, 553 F.3d at 198.  A conclusory assertion, attributed to an unnamed former employee, that defendants "prioritized substantial quarterly bonuses," does not plead motive.  Compl. ¶ 42.  Even if such factually unmoored speculation could be credited, "[m]otives that are common to most corporate officers, such as . . . the desire to . . . increase officer compensation, do not constitute 'motive' for purposes of" pleading scienter. *JP Morgan Chase*, 553 F.3d at 198 (collecting cases).

There are no allegations that any of the defendants, "all high-ranking executives at the Company," sold any stock during the alleged class period, which by itself "rebuts an inference of scienter." *Turner v. MagicJack VocalTec, Ltd.*, 2014 WL 406917, at *11 (S.D.N.Y. Feb. 3, 2014); *see In re MELA Scis., Inc. Sec. Litig.*, 2012 WL 4466604, at *5 (S.D.N.Y. Sept. 19, 2012) (absence of alleged stock sales is "inconsistent with an intent to commit fraud"); *In re N. Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 462 (S.D.N.Y. 2000) ("The absence of stock sales by insiders, or any other evidence of pecuniary gain by company insiders at shareholders' expense, is inconsistent with an intent to defraud shareholders.").

**B.      The Amended Complaint Does Not Plead Circumstantial Evidence of Scienter.**

Given the lack of motive allegations, allegations supporting an inference of "circumstantial evidence of fraud" must be "correspondingly greater." *Slayton*, 604 F.3d at 776.  The amended complaint falls far short of the required standard on that front too.

17

### 1.    Unidentified "Former Employee" Allegations Do Not Plead Scienter.

Allegations attributed to six "former employees" (one an alleged consultant) do not support an inference of scienter. *See* Compl. ¶¶ 39-61. None is "alleged to have ever interacted with" any of the individual defendants on *any* matter – much less the issues raised in the amended complaint. *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 233 (S.D.N.Y. 2023). That, "alone, [is] fatal." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011); *see Nath v. Lightspeed Commerce Inc.*, 2025 WL 606108, at *6 (E.D.N.Y. Feb. 25, 2025); *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 779 n.19 (S.D.N.Y. 2020); *Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 335 (S.D.N.Y. 2009), *aff'd*, 371 F. App'x 212 (2d Cir. 2010).

In addition, the "former employee" allegations deal with irrelevant issues, lack foundation, or both. None of these supposed "witnesses" worked on the Georgia plant, even if they allegedly had opinions about it. For example, "FE3" allegedly was a floor supervisor "at the Vista Plant" – in *New York* – until "March 2023" – before the alleged class period *began*. Compl. ¶¶ 7, 48. FE3's alleged opinion that later purported delays at the Georgia facility were due "to funding issues and insufficient infrastructure" have no apparent basis in fact. *Id.* ¶ 50.

The reliability of "FE4" is similarly dubious. Plaintiffs allege FE4 was an administrative assistant at a different facility who allegedly "believed that CEO Marsh and CFO Middleton made promises about hydrogen production quantities from the Georgia and Tennessee plants that they could not keep." Compl. ¶¶ 53-54. That opinion was based on hearsay from other, unidentified alleged Plug Power employees. *Id.* ¶¶ 54-55. Other "former employee" allegations are similar. *See id.* ¶ 42 (unsupported speculation about what defendants "prioritized"); *id.* ¶¶ 44-47 (former consultant opining on alleged "cash flow problems" unrelated to Georgia plant); *id.* ¶¶ 56-58 (discussing hydrogen fuel cell project in California not addressed in any challenged public statement); *id.* ¶¶ 59-61 (finance manager opining on "quality and engineering issues").

None of these alleged witnesses "had any special knowledge of the [defendants'] decision making." *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 245 (S.D.N.Y. 2023). Their unsupported opinions about "various [operational] issues experienced by the company" "do not establish what specific contradictory information the makers of the statements had and the connection (temporal or otherwise) between that information and the statements at issue." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 583 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015). What's more, these uninformed opinions are mostly based on "second-hand information," which is another pleading tactic courts regularly reject as insufficient. *Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *8 (S.D.N.Y. Mar. 28, 2013), *aff'd* No. 13-1681 (2d Cir. 2013); *see, e.g.*, *City of Dearborn Heights Act 354 Police & Fire R v. Axonyx, Inc.*, 374 F. App'x 83, 85 (2d Cir. 2010).

### 2. Plaintiffs Do Not Allege Actual Knowledge of Falsity for Challenged Forward-Looking Statements.

"[T]he scienter requirement for forward-looking statements is stricter than for statements of current fact" and "attaches only upon proof of knowing falsity." *Slayton*, 604 F.3d at 773 (quoting *Avaya*, 564 F.3d at 269). To allege scienter for a forward-looking statement, a plaintiff must allege "actual knowledge" of falsity, requiring specific factual allegations showing "[d]efendants *knew* their . . . goal was *impossible* to achieve." *Tesla*, 985 F.3d at 1194 (emphasis in original); *see* 15 U.S.C. § 78u-5(c)(1)(B). To do so, a plaintiff must "allege 'what specific contradictory information the makers of the statements had and the connection (temporal or otherwise) between that information and the statements at issue.'" *Turquoise Hill*, 625 F. Supp. 3d at 238 (quoting *In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *28 (S.D.N.Y. Apr. 2, 2020)).

In this case, the amended complaint does not plausibly allege that any challenged statement regarding the anticipated completion date or commencement of liquid hydrogen production at the

19

Georgia facility was knowingly false.  Plaintiffs do not allege any ***specific, undisclosed*** facts showing the Company's goals for completion and commissioning of the Georgia plant were impossible.  Allegations of actual knowledge of falsity "are particularly necessary, here, where the allegations relate to [a] development project being built at a slower rate than scheduled . . . – facts that would not necessarily have been plainly visible to someone visiting the [project site]." *Turquoise Hill*, 625 F. Supp. 3d at 238.

Rather than pleading such facts, the amended complaint offers unsupported conclusions that "[d]efendants . . . knew or recklessly disregarded" that "the accelerated schedule" for construction "was not feasible."  Compl. ¶ 33; *see* ¶ 62 (conjecture that "[d]efendants knew or recklessly disregarded that the projected timeline was not feasible"); ¶ 110 (suggesting without support that "[d]efendants had reliable, real-time information about [the Georgia plant's] status"); ¶ 113 (claiming existence of unspecified contrary "facts that existed when [d]efendants made [the challenged] statements").  That is not sufficient.  *Turquoise Hill*, 625 F. Supp. 3d at 237; *Barrick I*, 2015 WL 1514597, at *10; *see Tesla*, 985 F.3d at 1194; *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340, 1341 n.9 (10th Cir. 2012).

The amended complaint does not plead "actual knowledge" through FE4's hearsay recollection that another employee allegedly "told both Marsh and Middleton their timelines and targets for hydrogen production at the Georgia Plant [were] unrealistic."  Compl. ¶ 112.  The amended complaint does not say when such an alleged conversation occurred, why the unidentified speaker purportedly disagreed with the schedule, or that either Mr. Marsh or Mr. Middleton "ever accepted" his or her view "that the goal was impossible." *Tesla*, 985 F.3d at 1194; *see Rombach v. Chang*, 355 F.3d 164,174 (2d Cir. 2004) ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future"); *Adient*, 2020 WL 1644018, at *28 (rejecting "vague" allegations about employee "concerns" about meeting targets).

20

Allegations that Mr. Marsh and other "senior executives" "regularly visited the Georgia Plant" also do not support any inference of "actual knowledge" of falsity. Compl. ¶¶ 6, 108, 113. There are no allegations that those alleged visits revealed anything different than was said in the challenged statements. *See Turquoise Hill*, 625 F. Supp. 3d at 237 (allegation that defendants "regularly visited the Mine do not specifically identify any 'contrary facts' that these defendants would have observed") (collecting cases); *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *12 (S.D.N.Y. Jan. 18, 2018) (alleged "visits by Horizon's executives" insufficient to show actual knowledge).

Plaintiffs assert that "the magnitude of the delay, more than half a year beyond the promised date, further supports the fact that [d]efendants knew or recklessly disregarded the infeasibility of the timeline[.]" Compl. ¶ 62. But courts uniformly reject such allegations as just another iteration of "fraud by hindsight." *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*, 723 F. App'x 20, 22 (2d Cir. 2018); *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1247 (10th Cir. 2016). As plaintiffs admit, the Georgia plant was completed and began production of liquid hydrogen far faster than the industry average. *See* Compl. ¶ 33.

### 3. Plaintiffs Do Not Allege Conscious Misbehavior or Recklessness.

To the extent the safe harbor is inapplicable to any of the challenged statements, the amended complaint also fails to allege facts supporting a strong inference of conscious, or at least reckless, misconduct. Recklessness in the context of the securities laws is "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *IKB Int'l S.A. v. Bank of Am.*, 2014 WL 1377801, at *20 (S.D.N.Y. Mar. 31, 2014), *aff'd*, 584 F. App'x 26 (2d Cir. 2014). "General allegations" of "misconduct" are not enough. *Id.*

21

There are no allegations suggesting circumstantial evidence of conscious misbehavior for quarterly disclosures about inflation, material availability, and labor shortages. *See* Compl. ¶¶ 64, 77, 92. The amended complaint does not allege that any defendant *knew* Plug Power was experiencing shortages of key components because of payment problems. None of the "former employees" to whom plaintiffs attribute these assertions allege the vendors purportedly encountering payment issues supplied key components, that anyone communicated such information to the defendants, or that the defendants otherwise were aware of such alleged issues. That defeats any inference of scienter. *IKB*, 2014 WL 1377801, at \*21; *see S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 112 (2d Cir. 2009).

To the extent challenged statements concerning the Georgia plant were not forward-looking, the amended complaint similarly fails to plead facts known or available to the defendants that contradicted those statements, as already discussed. *See supra* at 19-21. In addition, and contrary to any inference that the defendants had anything to hide, the amended complaint shows that the defendants provided regular updates about the Georgia plant and the reasons for delays. *See* Compl. ¶¶ 78, 81 ("unplanned maintenance issues" and expectation of "production on site during Q3 2023"); *id.* ¶¶ 88, 93, 96 (delays in drying out "cold box" and "[w]e expect the plant to be online by year-end" once that "last step" is completed). Plug Power also invited securities analysts to tour the Georgia plant themselves. *See id.* ¶¶ 83-85.

In other words, the allegations demonstrate that Plug Power "was endeavoring in good faith to ascertain and disclose" emergent issues, and that defeats any inference of scienter. *Slayton*, 604 F.3d at 777 (periodic investor updates diminish any inference of fraudulent intent) (collecting cases); *see Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 187 (4th Cir. 2009) ("[l]ater disclosures" updating investors "lend weight to an inference that [earlier challenged statements] were made in good faith"); *Rombach v. Chang*, 355 F.3d at 176 (2d Cir. 2004)

(inference of scienter "weakened" by periodic "disclosure" of "problems"); *Pipefitters Loc. No. 636 Defined Ben. Plan v. Tekelec*, 2013 WL 1192004, at *19 (E.D.N.C. Mar. 22, 2013) (updates about "delays . . . militate against an inference of scienter"); *Gaines v. Guidant Corp.*, 2004 WL 2538374, at *16 (S.D. Ind. Nov. 8, 2004) (updates "substantially undercut an inference that Defendants were . . . attempting to mislead" investors).

### 4. No "Corporate Scienter" or Scienter Based on "Core Operations."

Plaintiffs' failure to plead the required "strong inference" of scienter as to any of the individual defendants – or any other senior managers – also defeats any inference of corporate scienter for Plug Power. *Campo*, 371 F. App'x at 217, n.6. Separately, plaintiffs are not entitled to an inference of scienter based on their assertion that the Georgia plant "was a core component of Plug's business model and strategy." Compl. ¶ 114. Even if the plant was a "core operation," which plaintiffs fail to plausibly allege, allegations that challenged statements relate to a company's "'core operations,' standing alone, [are] insufficient to support strong circumstantial evidence of scienter." *N.Y. City Pub. Pens. Funds v. Coupang, Inc.*, 2025 WL 2613650, at *31 (S.D.N.Y. Sept. 10, 2025) (citing *Glaser*, 772 F. Supp. 2d at 595).

### III. The Amended Complaint Does Not Establish Loss Causation for Challenged Statements Regarding Material Availability.

Plaintiffs also fail to plead loss causation – a "causal link between the alleged misconduct" and their alleged "economic harm" – for challenged disclosures covering risks associated with inflation, material availability, and labor shortages. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005); 15 U.S.C. § 78u-4(b)(4). That would require allegations of a "corrective disclosure" – *new* information showing "that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered." *Lentell*, 396 F.3d at 175. Where allegedly corrective disclosures "contain[] no information that even remotely suggests that [d]efendants' prior

23

statements . . . were false or misleading," dismissal is required. *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 494 (S.D.N.Y. 2021) (citing *Lentell*, 396 F.3d at 175 n.4).

There are no allegations connecting declines in Plug Power's stock price to any revelation about allegedly missed payments to suppliers, which is the alleged omission plaintiffs claim made the disclosure materially misleading. Compl. ¶¶ 99-102. Plaintiffs have not plausibly alleged loss causation in those circumstances. *Tobia v. United Grp. of Cos., Inc.*, 2016 WL 5417824, at *15 (N.D.N.Y. Sept. 22, 2016); *see Lentell*, 396 F.3d at 175. Instead, plaintiffs "are reduced to relying on" stock price declines that followed disclosure of unrelated financial news and subsequent "market dissatisfaction." *Born*, 521 F. Supp. 3d at 494. "That is simply not enough." *Id*.

Separately, there can be no inference of loss causation based on the allegation that analyst reports were "corrective." *See* Compl. ¶¶ 103-05. None of the reports alleged in the amended complaint revealed new information about the status of the Georgia plant, nor did they reveal *any* information regarding alleged nonpayment to vendors. Instead, analysts allegedly evaluated the Company's future prospects based on information already available. *See id.* ¶ 103 (repeating Company's public disclosure about Georgia plant timing); ¶ 104 (speculating that disclosed "delays experienced in the Georgia facility indicate that there *might* be unforeseen operational challenges and learning curves that could potentially delay other projects"); ¶ 105 ("a report *reiterating*" prior disclosures and suggesting that "further delays at Plug's green hydrogen production facility in Georgia *could* be announced") (all emphasis added).

Because these reports did not "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the amended complaint, they "cannot serve as [] corrective disclosure[s]." *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 180 & n.70 (2d Cir. 2020) (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010)); *see In re Signet*

24

*Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *17 (S.D.N.Y. July 10, 2019) (report that "merely raised questions and speculation by analysts . . . cannot serve as a corrective disclosure").

**IV.     The "Controlling Person" Claim Also Should Be Dismissed.**

Because plaintiffs do not plead a primary violation of the securities laws, their controlling person claim under section 20(a) of the Exchange Act also should be dismissed. *See Slayton*, 604 F.3d at 778 (affirming dismissal of section 20(a) claim due to dismissal of section 10(b) claim).

## CONCLUSION

The consolidated amended complaint fails to state a claim for violations of the federal securities laws and should be dismissed in its entirety, with prejudice.

Dated: October 28, 2025                    DLA PIPER LLP (US)


Of Counsel:                                By:  */s/ John J. Clarke, Jr.*
                                                John J. Clarke, Jr. (Bar Roll No. 705346)
Yan Grinblat (admitted *pro hac vice*)          john.clarke@us.dlapiper.com
yan.grinblat@us.dlapiper.com                    Steven Rosato (Bar Roll No. 703375)
DLA PIPER LLP (US)                              steven.rosato@us.dlapiper.com
444 W. Lake Street                         1251 Avenue of the Americas
Chicago, Illinois 60606                    New York, New York 10020-1104
(312) 368-4000                             (212) 335-4500

                                           *Counsel for*
                                            *Defendant Plug Power Inc.*

                                           BOIES SCHILLER FLEXNER LLP


                                           By:  */s/ George F. Carpinello*
                                                George F. Carpinello (Bar Roll No. 103750)
                                                gcarpinello@bsfllp.com
                                           30 South Pearl Street
                                           Albany, New York 12207-3427
                                           (518) 434-0600

                                           *Counsel for Individual Defendants*
                                            *Andrew Marsh, Paul B. Middleton,*
                                            *and Sanjay Shrestha*

26