UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
      :
ETE ADOTE, Individually and on Behalf of All  :
Others Similarly Situated,     :
      :
      :
     Plaintiff,    :
      :
      :
   v.     :   Case No. 1:24-cv-00406 (MAD) (DJS)
      :
PLUG POWER INC., ANDREW MARSH,  :
PAUL B. MIDDLETON, and SANJAY K.  :
SHRESTHA,     :
      :
     Defendants.  :
      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## <u>ALL DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Of Counsel:

Yan Grinblat*
yan.grinblat@us.dlapiper.com
DLA PIPER LLP (US)
444 W. Lake Street
Chicago, Illinois 60606
(312) 368-4000

\* Admitted *pro hac vice*

DLA PIPER LLP (US)
John J. Clarke, Jr. (Bar Roll No. 705346)
john.clarke@us.dlapiper.com
Steven Rosato (Bar Roll No. 703375)
steven.rosato@us.dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4500

*Counsel for*
 *Defendant Plug Power Inc.*

BOIES SCHILLER FLEXNER LLP
George F. Carpinello (Bar Roll No. 103750)
gcarpinello@bsfllp.com
30 South Pearl Street
Albany, New York 12207-3427
(518) 434-0600

December 23, 2025

*Counsel for Individual Defendants*
 *Andrew Marsh, Paul B. Middleton,*
 *and Sanjay Shrestha*

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................................. 1

I.    Plaintiffs Have Not Alleged an Actionable Misstatement or Omission ........................... 3

      A.    The PSLRA Safe Harbor Applies ....................................................................... 3

            1.    The Challenged Statements Were Forward-Looking .............................. 3

            2.    The Statements Were Qualified by Meaningful
                  Cautionary Language ............................................................................... 4

            3.    The "Actual Knowledge" Prong of the Safe Harbor
                  Also Applies ............................................................................................ 5

      B.    Statements About the Georgia Plant Also
            Are Inactionable Opinions ................................................................................. 5

      C.    Risk Disclosures About Inflation and Material Availability
            Were Not False ................................................................................................... 6

II.   Plaintiffs Have Not Pleaded the Requisite Strong Inference of Scienter ......................... 8

      A.    Plaintiffs Concede Their Failure to Allege a Motive to Defraud .......................... 8

      B.    The Complaint Does Not Plead Strong Circumstantial Evidence
            of Conscious Misbehavior ................................................................................. 9

            1.    Former Employee" Allegations Are Entitled to
                  No Weight ................................................................................................ 9

            2.    Plaintiffs Do Not Allege Actual Knowledge of Falsity .......................... 10

            3.    The "Magnitude of the Delay" Provides No Basis to Infer Scienter ....... 11

            4.    The "Core Operations" Doctrine Provides No Basis to Infer
                  Scienter and Is Inapplicable in Any Event ............................................. 12

III.  Plaintiffs Have Not Plausibly Alleged Loss Causation for
      Challenged Statements Regarding Material Availability ............................................... 13

IV.   The "Controlling Person" Claim Also Should Be Dismissed ........................................ 14

V.    Dismissal Should Be with Prejudice ............................................................................ 15

      CONCLUSION ........................................................................................................ 15

<u>Table of Authorities</u>

Page(s)

<u>Cases</u>

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)........................................................................................................14

*Ark Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ...........................................................................................................9

*Baum v. Harman Int'l Indus., Inc.*,
575 F. Supp. 3d 289 (D. Conn. 2021)............................................................................................4

*Born v. Quad/Graphics, Inc.*,
521 F. Supp. 3d 469 (S.D.N.Y. 2021)....................................................................................13, 15

*Campo v. Sears Holding Corp.*,
371 F. App'x 212 (2d Cir. 2010) ...................................................................................................9

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
752 F.3d 173 (2d Cir. 2014)..........................................................................................................15

*City of Providence v. Aeropostale, Inc.*,
2013 WL 1197755 (S.D.N.Y. Mar. 25, 2013) ..............................................................................4

*ECA, Loc. 134 IBEW Joint Pens. Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)....................................................................................................12, 14

*Finger v. Pearson PLC*,
2019 WL 10632904 (S.D.N.Y. Sept. 16, 2019)..........................................................................11

*Frederick v. Mechel OAO*,
475 F. App'x 353 (2d Cir. 2012) .................................................................................................12

*Gissin v. Endres*,
739 F. Supp. 2d 488 (S.D.N.Y. 2010).......................................................................................3, 4

*In re AppHarvest Sec. Litig.*,
684 F. Supp. 3d 201 (S.D.N.Y. 2023)............................................................................................9

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014).........................8

*In re Bristol-Myers Squibb Co. CVR Sec. Litig.*,
658 F. Supp. 3d 220 (S.D.N.Y. 2023)....................................................................................9, 13

ii

Page(s)

*In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*,
2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) ...............................................................................13

*In re Citigroup S'holder Deriv. Litig.*,
2009 WL 2610746 (S.D.N.Y. Aug. 25, 2009) ...........................................................................15

*In re EVCI Colleges Holding Corp. Sec. Litig.*,
469 F. Supp. 2d 88 (S.D.N.Y. 2006) ...........................................................................................5

*In re FBR Inc. Sec. Litig.*,
544 F. Supp. 2d 346 (S.D.N.Y. 2008) ..........................................................................................7

*In re Henry Schein, Inc. Sec. Litig.*,
2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019) ............................................................................5

*In re Kandi Techs. Grp., Inc. Sec. Litig.*,
2019 WL 4918649 (S.D.N.Y. Oct. 4, 2019) .............................................................................13

*In re Lululemon Sec. Litig.*,
14 F. Supp. 3d 553 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015)............................9

*In re Philip Morris Int'l Inc.*,
89 F.4th 408 (2d Cir. 2023) ....................................................................................................5, 6

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816
F.3d 199 (2d Cir. 2016)................................................................................................................6

*In re Signet Jewelers Ltd. Sec. Litig.*,
2019 WL 3001084 (S.D.N.Y. July 10, 2019) ...........................................................................14

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
625 F. Supp. 3d 164 (S.D.N.Y. 2022)........................................................................................10

*In re Virtu Fin., Inc. Sec. Litig.*,
770 F. Supp. 3d 482 (E.D.N.Y. 2025) ........................................................................................5

*Institutional Invs. Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009).........................................................................................................2

*Janbay v. Canadian Solar, Inc.*,
2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013), *aff'd*, No. 13-1681 (2d Cir.
Dec. 20, 2013)..............................................................................................................................9

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)........................................................................................10

iii

Page(s)

*Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*,
    576 F.3d 172 (4th Cir. 2009) ...................................................................................12

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
    455 F. App'x 10 (2d Cir. 2011) ................................................................................13

*Okla. L. Enf't Ret. Sys. v. Telefonaktiebolaget LM Ericsson*,
    2020 WL 127546 (S.D.N.Y. Jan. 10, 2020) ............................................................12

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015)....................................................................................................2

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)......................................................................................12

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
    573 F.3d 98 (2d Cir. 2009)........................................................................................11

*S.E.C. v. SolarWinds Corp.*,
    741 F. Supp. 3d 37 (S.D.N.Y. 2024)...........................................................................7

*Schaffer v. Horizon Pharma PLC*,
    2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ............................................................10

*Set Cap. LLC v. Credit Suisse Grp. AG*,
    996 F.3d 64 (2d Cir. 2021).....................................................................................5, 7

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010).............................................................................2, 8, 12

*Tobia v. United Grp. of Cos., Inc.*,
    2016 WL 5417824 (N.D.N.Y. Sept. 22, 2016) ........................................................14

*Wang v. Cloopen Grp. Holding Ltd.*,
    661 F. Supp. 3d 208 (S.D.N.Y. 2023).........................................................................5

*Woolgar v. Kingstone Cos.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020).......................................................................10

## Statutes

15 U.S.C. § 78u-4(b)........................................................................................................8

15 U.S.C. § 78u-5(c)(1) ...................................................................................................8

iv

**PRELIMINARY STATEMENT**

Plaintiffs' opposition only underscores their failure to plead any actionable claim of securities fraud against Plug Power Inc. and several senior officers. The claims center around the announcement in January 2024 that the Company's first-ever liquid hydrogen plant, in Woodbine, Georgia, had begun producing liquid hydrogen – around seven months later than previously estimated. That was significant because liquid hydrogen can be transported in trucks, not pipelines, and because it is much harder to liquify hydrogen than to produce it in gaseous form.

Plaintiffs would prefer not to focus on these basic facts, all of which are based on their own allegations. They gloss over the distinction between gaseous hydrogen and liquid hydrogen, because the amended complaint concedes that the newly built Georgia facility was "producing gaseous hydrogen" by Q2 2023, the original target for commissioning the plant. Compl. ¶ 81. They downplay the difficulty in liquifying hydrogen – which requires cooling hydrogen molecules to temperatures approaching absolute zero, a process that the Company explained was one of the reasons for the delay. *Id.* ¶¶ 88, 93, 101. And they admit that Plug Power provided regular updates about the Company's efforts to begin producing liquid hydrogen as it encountered setbacks and addressed them. *See id.* ¶¶ 78, 81, 88, 93, 96. Even with the seven-month delay, plaintiffs concede, Plug Power still reached full production of liquid hydrogen at its newly built plant in less than half the time expected based on the industry average. *Id.* ¶ 33.

Given these allegations – or one might better describe them as concessions – it is hardly surprising that the amended complaint falls so far short of the required pleading standards. *First*, plaintiffs' securities fraud claims run headlong into the PSLRA safe harbor for forward-looking statements, which applies to almost all of the challenged statements. Plug Power repeatedly warned that the "construction of our hydrogen production projects . . . may take longer and cost more to complete and become operational than we expect." Exh. 1 at 16. That is dispositive. It

does not matter that some challenged statements referred to present facts, as plaintiffs contend. Any present statement here, "when read in context, cannot meaningfully be distinguished from the future projection of which they are a part.'" *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009).  Nor can plaintiffs stave off dismissal with ungrounded assertions that the cautionary statements were inadequate.  When read fairly and in context, the risk disclosures warned of the exact risk that is the basis for plaintiffs' claims – the possibility of unexpected delays in beginning production of liquid hydrogen.

*Second*, the opposition does not refute points showing plaintiffs' other failures to plead falsity.  Plaintiffs are wrong in contending that challenged statements were not "opinions" for purposes of *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015).  They were.  Separately, the words actually used in challenged disclosures demonstrate that Plug Power disclosed its actual experience, not just "hypothetical" risks, in discussing impacts of inflation, material availability, and labor shortages.

*Finally*, no inference of scienter, much less a "strong" one, can be drawn from plaintiffs' allegations.  The opposition essentially concedes plaintiffs' failure to allege any motive to defraud. Nor does the opposition identify any specific fact known by a defendant at the time that rendered Plug Power's stated commissioning goals impossible to achieve.  That precludes any inference of recklessness, and falls even farther short of the "actual knowledge" required for any claim based on forward-looking statements.  *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010).

The first amended complaint should be dismissed with prejudice.

I.      **Plaintiffs Have Not Alleged an Actionable Misstatement or Omission.**

   A.      **The PSLRA Safe Harbor Applies.**

      1.      **The Challenged Statements Were Forward-Looking.**

Plaintiffs are mistaken in contending that the safe harbor does not apply because portions of certain challenged statements are not forward-looking. *See* Opp. at 9-11 [ECF No. 67]. *First*, "plaintiffs do not actually contest the veracity of any present tense portion of defendants' statements[.]" *Gissin v. Endres*, 739 F. Supp. 2d 488, 505 (S.D.N.Y. 2010). According to the complaint, only quoted text that is "italicized and bold" "denote[s] false and/or misleading statements," while text in the quoted statements without those indicators "is not alleged to be false or misleading." Compl. ¶ 62 n.1. Yet the opposition relies on excerpts that were *not* emphasized to support plaintiffs' safe harbor argument. Opp. at 9 (quoting Compl. ¶ 66 ("The plant has been brought online in less than a year"); *id.* ¶ 69 ("our plants already producing gases hydrogen for our customers"); *id.* ¶ 76, 91 ("Recent Developments" and "Material Availability"); *id.* ¶ 81 ("we're essentially wrapping up the plant at this point in time")).

Plaintiffs do not dispute that Mr. Marsh toured the Georgia plant, for example (a statement of present fact); the complaint challenges his opinion after that tour about the plant's anticipated completion date (a forward-looking statement). Compl. ¶ 72. Similarly, plaintiffs do not dispute that Plug Power was "ramping up electrolyzers"; their claims are based on the projected timeframe "to produce . . . liquid" hydrogen. *Id.* ¶ 81. Plaintiffs also do not dispute that the Georgia plant already was "producing gaseous hydrogen"; their claims concern the anticipated "liquid" hydrogen production date (a future prediction). *Id.* Finally, the complaint does not challenge that the Company was in the process of "commissioning" the "cold box" but only stated forecasts about when the commissioning would be completed. *Id.* ¶ 93; *see id.* ¶¶ 84, 88, 96 (similar).

3

*Second*, the present tense statements plaintiffs point to "refer to the present only as a means for gauging future possibilities and, 'when read in context, cannot meaningfully be distinguished from the future projection of which they are a part.'" *Gissin*, 739 F. Supp. 2d at 505 (quoting *Avaya*, 564 F.3d at 255). Those portions of the statements "say[] only that, whatever that situation is, it makes the future projection attainable" – "an assertion [that] is necessarily implicit in every future projection." *Gissin*, 739 F. Supp. 2d at 506 (quoting *Avaya*, 564 F.3d at 255).[1]

### 2.     The Statements Were Qualified by Meaningful Cautionary Language.

Plaintiffs also mistakenly assert that challenged statements were not accompanied by "*meaningful* cautionary language," Opp. at 10-11, but they do not even attempt to show how specific cautionary language was not "meaningful." Instead, plaintiffs broadly assert that the risk disclosures were too "generic[]." Opp. at 10. The disclosures themselves show otherwise. The Company cautioned that its "green hydrogen production projects" may "take longer to complete than we expect" and listed numerous factors – including "internal demand for electrolyzers" – that may cause the projects to "take longer and cost more to complete and become operational than we expect." Defs. Mem. at 4 [ECF No. 65]. These are not "generic" disclaimers. Defendants' citations found similar cautionary language sufficient to invoke the safe harbor. *See id.* at 12.

Plaintiffs are also wrong in suggesting that risk factors were deficient because the risk "had already materialized." Opp. at 11. The first challenged statement allegedly was made on May 9, 2023. Compl. ¶ 63. Plug Power's Form 10-K, which contained the cautionary statements at issue, was issued six weeks earlier, on March 31, 2023. *See* Exh. 1 at 1, 3, 16. There are no allegations

---

[1] Plaintiffs' cited cases challenged different types of statements. *See City of Providence v. Aeropostale, Inc.*, 2013 WL 1197755, at \*13 (S.D.N.Y. Mar. 25, 2013) (statements that defendants already took certain "steps" to address an existing "inventory problem" not forward-looking); *Baum v. Harman Int'l Indus., Inc.*, 575 F. Supp. 3d 289, 297 (D. Conn. 2021) (statement about what "senior management" had previously "determined" not forward-looking).

4

that any defendant knew in March about any existing delays to the anticipated commissioning of the Georgia plant.[2]

### 3.     The "Actual Knowledge" Prong of the Safe Harbor Also Applies.

Plaintiffs do not dispute, and therefore concede, that the "actual knowledge" prong of the safe harbor *independently* applies and requires dismissal even absent meaningful cautionary language.  Defs. Mem. at 12.  For reasons defendants have explained, the complaint does not plausibly allege that any defendant *actually knew* that any challenged forward-looking statement was false or misleading.  *See* Defs. Mem. at 12, 19-21; *infra* at 10-11.

### B.     Statements About the Georgia Plant Also Are Inactionable Opinions.

Plaintiffs' argument that challenged opinion statements were not opinions because they did not include "any belief-related moniker" misstates the law.  Opp. at 12-13.  "[L]anguage like 'we believe' or 'we think' is *sufficient* - not *necessary* - to render a statement one of opinion rather than fact."  *In re Philip Morris Int'l Inc.*, 89 F.4th 408, 418 (2d Cir. 2023).  Any "inherently subjective . . . assessment" is a "pure opinion."  *Id.* (quoting *Omnicare, Inc.*, 575 U.S. at 186).[3]

The complaint does not meet *Omnicare*'s more demanding standard for claims based on opinion statements that: (1) defendants did not hold the stated belief; (2) the opinions contained

---

[2] Plaintiffs' citations involving risks that already had materialized therefore are inapposite. *See Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 86 (2d Cir. 2021) (warnings "remained unchanged for nearly a decade despite three [prior] episodes" of similar events); *In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 515 (E.D.N.Y. 2025) (defendants "concede[d]" cautionary statements insufficient); *Wang v. Cloopen Grp. Holding Ltd.*, 661 F. Supp. 3d 208, 228 (S.D.N.Y. 2023) (disclosure insufficient based on allegations of a "then-existing but undisclosed fact"); *In re EVCI Colleges Holding Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 103 (S.D.N.Y. 2006) (similar).

[3] Plaintiffs' reliance on *In re Henry Schein, Inc. Sec. Litig.*, 2019 WL 8638851, at *13 (E.D.N.Y. Sept. 27, 2019) misses the mark.  In that case, defendants' statements that they operated in a "competitive" market were actionable because plaintiffs plausibly alleged defendants were engaged in price fixing at the time those statements were made.  *Id.*  To the extent the court believed that opinion statements *must* contain phrases such as "I think" or "I believe," the Second Circuit has since clarified that there is no such requirement.  *See In re Philip Morris*, 89 F.4th at 418.

embedded statements of untrue fact; or (3) defendants omitted known material facts that conflicted with the opinion. *See* Opp. at 13. There is no allegation here that any speaker disbelieved any statement. The conclusory assertion that defendants "could not have believed their stated timelines" is not enough. Opp. at 13; *see In re Philip Morris*, 89 F.4th at 420 ("the *possibility* of contrary *opinions*" insufficient; executives are entitled "to be confident about their stewardship and the prospects of the business") (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)). Nor have plaintiffs pointed to allegations **of fact** that would support their contention that the complaint "alleges that former employees stated *facts,* contemporaneously known to Defendants, which demonstrated that the published deadlines had no reasonable basis and were, indeed, unattainable." Opp. at 14 (emphasis in original). There are none.

Plaintiffs also do not identify any statements of "embedded fact." Statements that the Georgia project was "about to be completed," Opp. at 13, are "expectations for the future rather than presently existing, objective facts." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016). Finally, plaintiffs do not identify any specific facts that conflicted with stated commissioning goals for the Georgia plant at the time those statements were made, especially since those goals were repeatedly updated during the putative class period as events developed. Defs. Mem. at 13, 21-23; *see infra* at 10-11.

### C. Risk Disclosures About Inflation and Material Availability Were Not False.

For several reasons, plaintiffs are mistaken in arguing that risk disclosures concerning inflation, material availability, and labor shortages in Plug Power's Forms 10-Q for the first three quarters of 2023 are actionable. Opp. at 14-16.

*First*, plaintiffs cannot distinguish defendants' citations rejecting securities fraud claims based on arguments that risk disclosures should have said identified risks "'are' affecting financial results rather than 'may' affect financial results[.]" Defs. Mem. at 14 (quoting *In re FBR Inc. Sec.*

*Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008)); *see* Opp. at 15.   Contrary to plaintiffs' arguments, Plug Power "never claimed that the company . . . had no outstanding" issues with its supply chain. *See FBR*, 544 F. Supp. 2d at 362.  The challenged disclosures ***expressly did*** disclose existing challenges.  Compl. ¶ 76 ("Recent cost pressures from global energy prices and inflation ***have negatively impacted*** access to our key raw materials.") (emphasis added); *id.* ¶ 91 (emphasis added) ("the Company ***has experienced*** inflationary increases in . . . parts" and was "continuing discussions with suppliers to modify terms of our supply agreements, which may impact the timing of when we receive shipments of certain supplies or result in other supply chain issues").

For the same reason, plaintiffs rely in error on the decision in *Set Capital*.  *See* Opp. at 14. Unlike here, the issuer in *Set Capital* said it had "***no reason to believe***" hedging activity "could" or "may" impact prices even though defendants knew with "virtual certainty" that it would after "three episodes of market volatility[.]"  *Set Capital*, 996 F.3d 64 at 86 (emphasis added).  The allegations in this case are not at all similar.  Plug Power's disclosures about inflation, labor, and material availability did not discuss the Georgia plant or its anticipated completion date, Opp. at 15, but in other disclosures at the same time, the Company specifically warned it could not guarantee completion of any of its "green hydrogen production projects," including the Georgia plant, by a date certain.  *See supra* at 4-5; Defs. Mem. at 10-12.  Plug Power "did not have a duty to disclose" any additional information.  *S.E.C. v. SolarWinds Corp.*, 741 F. Supp. 3d 37, 93 (S.D.N.Y. 2024).

*Second*, it is not "a fact-intensive truth on the market argument" for defendants to show that it is demonstrably false that the challenged disclosures did ***not*** characterize the risk of supply shortages "as hypothetical."  Compl. ¶ 77; *see* Opp. at 14-15.  On their face, the risk disclosures disclosed that the Company had been "negatively impacted" by "cost pressures" and already "ha[d] experienced inflationary increases in" supply costs.  Compl. ¶¶ 76, 91.  Those disclosures were

7

"broad enough to cover [the] specific risk" that plaintiffs now assert, in hindsight, should have been disclosed. *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014). That renders the statements inactionable without reference to *any other* information in the marketplace – which is the kind of information cited in a "truth on the market" argument.[4]

## II.     Plaintiffs Have Not Pleaded the Requisite Strong Inference of Scienter.

Separately, the complaint also should be dismissed based on plaintiffs' failure to allege facts giving rise to the required "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2)(A). Plaintiffs neither allege any motive to commit securities fraud nor plead strong circumstantial evidence of conscious misbehavior. They certainly do not allege "actual knowledge" of falsity – as required to sue based on forward-looking statements. *Slayton*, 604 F.3d at 766; *see* 15 U.S.C. § 78u-5(c)(1)(B).

### A.     Plaintiffs Concede Their Failure to Allege a Motive to Defraud.

The complaint does not allege any motive to commit securities fraud. There are no allegations that any defendant "benefitted" in a "concrete and personal way" (such as through suspiciously timed stock sales). Defs. Mem. at 17 (quoting *ECA, Loc. 134 IBEW Joint Pens. Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009)). Plaintiffs' only response is that "motive is not required." Opp. at 17. But even if it is not ***categorically*** required, when there is no motive "the circumstantial evidence of conscious misbehavior 'must be correspondingly

---

[4] In a one-sentence footnote, plaintiffs contend they can predicate a "scheme" claim under Rule 10b-5(a) and (c) solely on "public disclosures." Opp. at 16 n.3. To the contrary, a scheme claim "requires something *beyond* misstatements and omissions," *S.E.C. v. Rio Tinto plc*, 41 F.4th 47, 53 (2d Cir. 2022) (emphasis in original), and that is all plaintiffs have alleged here.

greater.'" *Ark Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022). Plaintiffs fall far below this high bar.

> **B.    The Complaint Does Not Plead Strong Circumstantial Evidence of Conscious Misbehavior.**

> **1.    "Former Employee" Allegations Are Entitled to No Weight.**

Plaintiffs' scienter arguments rely heavily on allegations attributed to six former employees, but none of them "ever interacted with any" individual defendant. *In re Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d 220, 233 (S.D.N.Y. 2023). The most plaintiffs can say is that two vice presidents who allegedly did have such direct interaction passed on "second-hand information" about another unidentified employee's allegedly sharing their view about the Georgia plant timeline with Messrs. Marsh and Middleton. *Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *8 (S.D.N.Y. Mar. 28, 2013), *aff'd*, No. 13-1681 (2d Cir. Dec. 20, 2013); *see* Opp. at 12, 19; Compl. ¶¶ 53-55. That is not sufficient. *See, e.g.*, *Campo v. Sears Holding Corp.*, 371 F. App'x 212, 217 (2d Cir. 2010).

Plaintiffs next contend that the alleged former employees "did not need to have worked at the Georgia Plant to know about financial and operational difficulties generally plaguing" the Company. Opp. at 20. But that does not address the point that courts regularly disregard opinions from unidentified witnesses who lack personal knowledge, because such allegations "do not establish what specific contradictory information the makers of the statements had and the connection (temporal or otherwise) between that information and the statements at issue." *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 581 (S.D.N.Y. 2014), *aff'd*, 604 F. App'x 62 (2d Cir. 2015); *see In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 245 (S.D.N.Y. 2023).

Finally, plaintiffs are again mistaken in their assertion that they need not "allege the exact date and time when defendants became aware of [contrary] information." Opp. at 18. Courts

reject confidential witness allegations that are "entirely unmoored in time," which plaintiffs'

allegations are here.  *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 803 (S.D.N.Y. 2020); *see, e.g.*, *Woolgar v. Kingstone Cos.*, 477 F. Supp. 3d 193, 221 (S.D.N.Y. 2020) (rejecting "vague references as to timing" of FE allegations as insufficient).

### 2.      Plaintiffs Do Not Allege Actual Knowledge of Falsity.

Unable to dispute that the PSLRA safe harbor applies, *see supra* 3-5, plaintiffs insist that

defendants had "actual knowledge" that the challenged forward-looking statements were false or

misleading.  Opp. at 17-20.  Plaintiffs assert that "actual knowledge" can be inferred based on

allegations that certain defendants visited the Georgia plant, that the Company set a "goal that

historically had never been accomplished in the industry," and from "current data."  Opp. at 20;

*see id.* at 17-19.  But as defendants previously explained, courts have rejected substantially

identical allegations as insufficient to support the required "strong inference" of scienter.  *See* Defs.

Mem. at 19-21 (citing, *inter alia*, *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021); *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 237 (S.D.N.Y. 2022)).

No allegation supports an inference that visits to the Georgia plant or "current data"

conflicted with the Company's statements, including that Plug Power was in the process of drying

out the "cold box," a "$100 million piece of equipment" that lowers the temperature of gaseous

hydrogen and is essential to liquification.  *See* Compl. ¶¶ 88, 93, 96.  Plaintiffs do not explain how

site visits would or did reveal any contrary facts.  Opp. at 17.  Allegations about visits do not

support any inference of scienter.  *Turquoise Hill*, 625 F. Supp. 3d at 237; *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *12 (S.D.N.Y. Jan. 18, 2018).

Similarly, the purported "current data" cited by plaintiffs is confined to allegations

attributed to FE6, who allegedly said "the team faced significant challenges getting the Cold Box

operational at the Georgia plant."  Compl. ¶ 60.  But the complaint acknowledges the defendants

provided repeated updates about that issue.  Those allegations do not support any inference of scienter either.  Equally lacking in substance is plaintiffs' assertion that the defendants "would have stayed apprised . . . as to the status of construction given their lofty promises to accomplish a goal that historically had never been accomplished in the industry."  Opp. at 20.  The complaint admits the Company did achieve its goal: construction was "drastically shorter than the acknowledged four-year industry standard for completing comparable facilities."  Compl. ¶ 74; *see id.* ¶ 106; Exh. 18 at 2.

### 3.    The "Magnitude of the Delay" Provides No Basis to Infer Scienter.

Plaintiffs also are incorrect in contending that the seven-month "delay" in commissioning the Georgia facility itself supports an inference of scienter.  Opp. at 21.  The opposition cites no previous decision supporting that theory, and any such inference would be strongly outweighed by the fact that Plug Power "finished the plant at a rapid pace of 18 months, more than two times faster than the three-year industry standard for hydrogen plants."  Exh. 18 at 2; *see* Compl. ¶¶ 33, 66, 106.  In context, the alleged seven-month delay does not show an "extreme departure from the standards of ordinary care," as would be required to support a strong inference of scienter. *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009).

Plaintiffs' assertion that the "company failed to take into account information that was available to it," Opp. at 22, also does not support an inference of scienter because they have not alleged any contemporaneous facts contradicting the challenged statements, much less that any defendant was aware of such facts.  This is classic "fraud by hindsight" – an improper effort to transform opinions that later "turned out to be incorrect[]" into a federal securities fraud case. *Finger v. Pearson PLC*, 2019 WL 10632904, at *13 (S.D.N.Y. Sept. 16, 2019).

On the other hand, defendants' consistent, timely updates about the status of the Georgia plant and the reasons for delays in commissioning strongly weigh against any inference of scienter.

11

*See* Compl. ¶¶ 78, 81 ("unplanned maintenance issues"); *id.* ¶¶ 88, 93, 96 (delays in drying out "cold box"). Along the same lines, Plug Power invited securities analysts to tour the Georgia plant themselves, *see id.* ¶¶ 83-85, which is inconsistent with any inference that management was actively lying about the plant's readiness. *Slayton*, 604 F.3d at 777 (periodic updates diminish inference of scienter); *see Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 187 (4th Cir. 2009) (updates "lend weight to an inference that [prior statements] were made in good faith"); *Rombach*, 355 F.3d at 176 (scienter "weakened" by periodic disclosure of "problems").

Plaintiffs offer no citations to support their critique of the updates as somehow untimely. Opp. at 23. The Court is required to weigh competing, non-fraudulent inferences against any inference of scienter, and plaintiffs' claims can proceed ***only if*** "a reasonable person [would] deem the inference of scienter at least as strong as any opposing inference[.]" *JP Morgan Chase*, 553 F.3d at 198. The far more plausible inference here is that the Company set out to achieve an "ambitious," never-before-achieved goal; it worked aggressively to achieve that goal and kept investors apprised of its efforts; and it ultimately completed construction and commissioning of the Georgia plant in record time, albeit slightly behind its "optimistic" schedule. Compl. ¶¶ 33, 70, 74, 106. That is not securities fraud.

### 4. The "Core Operations" Doctrine Provides No Basis to Infer Scienter and Is Inapplicable in Any Event.

The PSLRA does not permit an inference of scienter based on an assertion that the Georgia plant was part of Plug Power's "core operations." Opp. at 22. "There is considerable doubt whether the core operations doctrine survived enactment of the PSLRA, and many courts have held that it is no longer valid." *Okla. L. Enf't Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, 2020 WL 127546, at *7 (S.D.N.Y. Jan. 10, 2020); *see Frederick v. Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012). But even if it has not been rejected entirely, it does not provide an independent

basis to infer scienter. *In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*, 2016 WL 922711, at *9 (S.D.N.Y. Mar. 7, 2016). Generalized "core operations" allegations are not a "substitute" for "specific factual allegations." *In re Kandi Techs. Grp., Inc. Sec. Litig.*, 2019 WL 4918649, at *8 (S.D.N.Y. Oct. 4, 2019).[5] There are no "specific factual allegations" to support any inference, much less a strong one, that any defendant ***actually knew*** that any challenged statement was false when made. The "core operations" doctrine cannot cure this pleading deficiency.

The core operations doctrine also cannot apply because plaintiffs do not, and could not, plausibly allege "that [the Georgia plant] constituted ***nearly all*** of [Plug Power's] business." *Bristol-Myers Squibb Co. CVR Sec. Litig.*, 658 F. Supp. 3d at 234 (cleaned up; emphasis added). At most, the complaint alleges that the Georgia plant "was a core component of Plug's business model and strategy[.]" Compl. ¶ 114. That is a far cry from alleging it comprised "nearly all of" the Company's business, as would be required for the doctrine to apply.[6]

### III. Plaintiffs Have Not Plausibly Alleged Loss Causation for Challenged Statements Regarding Material Availability.

Recognizing that the complaint does not identify ***any*** corrective disclosure "that even remotely suggests that" earlier disclosures about inflation, material availability, and labor shortages were false or misleading, *Born v. Quad/Graphics, Inc.*, 521 F. Supp. 3d 469, 494 (S.D.N.Y. 2021), plaintiffs seek refuge in the pleading standard applicable to loss-causation allegations. Opp. at 23-24. But no amount of pleading deference can cure that defect.

---

[5] Plaintiffs' own cases acknowledge the same. *See New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10 n.3 (2d Cir. 2011).

[6] Finally, plaintiffs concede that they cannot plead Plug Power's corporate scienter unless "scienter is alleged as to any Individual Defendants or other senior managers[.]" Opp. at 23 (collecting cases). Plaintiffs do not even attempt to argue that they alleged any non-defendant's scienter, nor have they plausibly alleged any individual defendant's scienter for any challenged statement.

13

Plaintiffs acknowledge that *none* of the purported "corrective disclosures" identified in the complaint refers to alleged "nonpayment to vendors." The alleged "corrective" disclosures relate to delays in commissioning of the Georgia plant. Opp. at 24; *see* Compl. ¶¶ 99-102. According to plaintiffs, the lack of any reference to their alleged omissions does not defeat loss causation because the delay in completing the Georgia plant was "a materialization of the risk caused in part by" alleged delays in paying vendors. Opp. at 24. But the complaint's loss-causation allegations are premised solely on "corrective disclosures" – not "materialization of the risk." The complaint does not allege a causal connection between alleged delays at the Georgia plant and non-payment of vendors. The only allegations specific to missed vendor payments concern other facilities. *See* Compl. ¶¶ 43-49, 55-58 (Tennessee, Kodak Park, and Vista facilities). The complaint therefore does not "connect[] the [alleged] losses back to" disclosures about vendors. *Tobia v. United Grp. of Cos., Inc.*, 2016 WL 5417824, at *15 (N.D.N.Y. Sept. 22, 2016).

Plaintiffs also concede that analyst reports cited in the complaint did not correct any prior alleged misstatement about vendor payments. Opp. at 24-25. They instead contend, mistakenly, that the reports support their new "materialization of the risk" theory. *Id.* at 24. But not only did the reports not "reveal some then-undisclosed fact with regard to" vendor payments, they did not discuss that issue at all. *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 180 & n.70 (2d Cir. 2020); *see* Compl. ¶¶ 103-05. That *undermines* plaintiffs' theory of loss causation rather than supporting it. Analyst reports that "merely raise[] questions and speculation" about a company's future prospects, as the reports allegedly did here, are not sufficient to plead loss causation. *In re Signet Jewelers Ltd. Sec. Litig.*, 2019 WL 3001084, at *17 (S.D.N.Y. July 10, 2019).

## IV.    The "Controlling Person" Claim Also Should Be Dismissed.

Plaintiffs' failure to allege a primary violation also requires dismissal of the "controlling person" claim under Exchange Act § 20(a). *JP Morgan Chase Co.*, 553 F.3d at 206-07.

14

**V.       Dismissal Should Be with Prejudice.**

The Court should deny plaintiffs' request for still another opportunity to amend their complaint. Opp. at 25. That request was not made in the form of a motion, as required. *See, e.g.*, *In re Citigroup S'holder Deriv. Litig.*, 2009 WL 2610746, at \*13 (S.D.N.Y. Aug. 25, 2009) (rejecting as procedurally improper plaintiffs' request for leave to amend made in opposition brief). Moreover, plaintiffs already were given an opportunity to amend their complaint without success. Because "plaintiffs have identified no additional facts or legal theories . . . they might assert if given leave to amend[,]" they should not be given another opportunity. *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014); *see, e.g.*, *Born*, 521 F. Supp. 3d at 495 (dismissing complaint with prejudice).

## CONCLUSION

The amended complaint should be dismissed in its entirety and with prejudice.

15

Dated: December 23, 2025                          DLA PIPER LLP (US)


                                                  By:  */s/ John J. Clarke, Jr.*
Of Counsel:                                             John J. Clarke, Jr. (Bar Roll No. 705346)
                                                       john.clarke@us.dlapiper.com
Yan Grinblat (admitted *pro hac vice*)                 Steven Rosato (Bar Roll No. 703375)
yan.grinblat@us.dlapiper.com                           steven.rosato@us.dlapiper.com
DLA PIPER LLP (US)                                1251 Avenue of the Americas
444 W. Lake Street                               New York, New York 10020-1104
Chicago, Illinois 60606                          (212) 335-4500
(312) 368-4000

                                                  *Counsel for Defendant Plug Power Inc.*

                                                  BOIES SCHILLER FLEXNER LLP


                                                  By:  */s/ George F. Carpinello*
                                                       George F. Carpinello (Bar Roll No. 103750)
                                                       gcarpinello@bsfllp.com
                                                  30 South Pearl Street
                                                  Albany, New York 12207-3427
                                                  (518) 434-0600

                                                  *Counsel for Defendants Andrew Marsh,*
                                                   *Paul B. Middleton, and Sanjay Shrestha*

16